## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Case No: 5:20-cv-192

| | | |
|---|---|---|
| C.G.A. ("G.A."), by and through his guardian, R.A., and R.A. individually, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) ) | **COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND DECLARATORY RELIEF** |
| Iredell-Statesville School District Board of Education, | ) ) ) ) | |
| Defendants. | ) ) | |

## PRELIMINARY STATEMENT

1. G.A. by and through his guardian, R.A., file this complaint against Defendants for their discriminatory and tortious conduct against Plaintiff G.A.

2. As set forth below, Defendants' actions against G.A. constituted discrimination on the basis of disability in an education program receiving federal funds in violation of Section 504 of the Rehabilitation Act of 1973, § 504(a), 29 U.S.C. 794(a) and Title II of the Americans with Disabilities Act, 42 U.S.C. 12131-12134; 28 CFR 35.

3. Defendants, by and through persons acting under color of state law, deprived G.A. of his federal constitutional rights in violation of 42 U.S.C. § 1983.

4. Plaintiffs were injured and are entitled to recover damages caused by

Defendants' negligence, negligent supervision and training, negligent and intentional infliction of emotional distress, and false imprisonment in accordance with North Carolina State law.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

6. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1343(a), which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

7. Plaintiffs bring this action to redress disability discrimination in accordance with the provisions of Section 504 of the Rehabilitation Act of 1973, § 504(a), 29 U.S.C. 794(a); Title II of Americans with Disabilities Act (ADA) of 1990, § 202, 42 U.S.C. § 12132; as more fully set forth herein.

8. Plaintiffs bring this action to redress deprivation of Plaintiff's constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

9. This Court has supplemental jurisdiction over North Carolina state law claims pursuant to 28 U.S.C. § 1367.

10. Venue is proper pursuant to 28 U.S.C. § 1391(b), because Defendants are located within the Western District of North Carolina and a substantial part

of the acts or omissions giving rise to this complaint arose from events occurring within this judicial district.

## APPLICABLE LAW AND POLICY

11. "[Q]ualified immunity analysis does not require factual findings, because the inquiry is a "purely legal one: whether the facts alleged ... support a claim of violation of clearly established law." *Mitchell v. Forsyth,* 472 U.S. 511, 528 n.9 (1985).

12. School administrators are not entitled to qualified immunity if "(l) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018); *see also Kisela v.Hughes*, 138 S. Ct. 1148, 1152-53 (2018) ("[I]mmunity protects all but the plainly incompetent or those who knowingly violate the law.")

13. Section 504 of the Rehabilitation Act of 1973 ("Section 504") prohibits public entities, including local educational agencies (LEAs), from "exclud[ing] from the participation in, [ ] den[ying] the benefits of, or [ ] subject[ing] to discrimination" any otherwise qualified person with a disability from any program or activity receiving federal financial assistance solely by reason of her or his disability. 29 U.S.C. § 794(a).

14. Section 504 applies to each recipient of federal financial assistance from the Department of Education and to the program or activity that receives such assistance. 34 C.F.R. § 104.2. Defendant Board is a recipient to whom the Section 504 applies. 34 C.F.R. § 104.3(f).

15. Section 504 requires "a recipient that operates a public elementary or secondary education program or activity . . . provide a free appropriate public

education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." 34 C.F.R. § 104.33(a). An "appropriate education" is defined as "the provision of regular or special education and related aids and services that are (i) designed to meet individual educational needs of handicapped persons *as adequately as* the needs of nonhandicapped persons are met and (ii) are based upon adherence to procedures that satisfy the requirements of §§104.34, 104.35, and 104.36." 34 C.F.R. § 104.33(b) (emphasis added).

16. Section 504 mandates school districts place disabled students in "the regular education environment" unless education in the regular education environment "cannot be achieved satisfactorily. . . with the use of supplementary aids and services." 34 C.F.R. § 104.34(a) (emphasis added).

17. Title II of the ADA states "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132.

18. Pursuant to 42 U.S.C. § 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

19. The Fourteenth Amendment to the United States Constitution provides in pertinent part that no State shall "deny to any person within its jurisdiction the equal protection of the laws" or "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

20. "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).

21. Deprivations of constitutionally protected rights may arise due to "governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).

22. "[P]olicy or custom may possibly be inferred from continued inaction in the face of a known history of widespread constitutional deprivations on the part of city employees, *see Wellington v. Daniels*, 717 F.2d 932 (4th Cir. 1983) (police brutality), or, under quite narrow circumstances, from the manifest propensity of a general, known course of employee conduct to cause constitutional deprivations to an identifiable group of persons having a special relationship to the state." *Milligan v. City of Newport News*, 743 F.2d 227 (4th Cir. 1984); *see also Avery v. County of Burke*, 660 F.2d 111 (4th Cir. 1981).

23. There are four (4) ways to allege a policy or custom:

> Through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission . . . that manifest[s] deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*Oliver v. Baity*, 208 F. Supp.3d 681, 689 (M.D.N.C. 2016) (internal quotation marks omitted)

24. Pursuant to 42 U.S.C. § 1983, "persons" acting under color of state law who violate the United States Constitution may be sued. Federal law, not state

law, determines whether a governmental body qualifies as a "person" subject to suit under § 1983.

25. A government actor's conduct may rise to the level of a substantive due process if the conduct is arbitrary or conscience shocking. *Collins v. City of Harker Heights*, 503 U.S. 115 (1992).

26. Section 1983 liability due to failure to train could be established "where it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations involving the exercise of [] discretion, ... [which pattern] could put the municipality on notice that its officers confront the particular situations on a regular basis, and that they often react in a manner contrary to constitutional requirements." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 397 (1989).

27. However, "the unconstitutional consequences of failing to train [can also] be so patently obvious that [an actor] could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

28. A school board may be found to have supervisory liability for a Section 1983 claim if the plaintiff shows "actual or constructive knowledge of a risk of constitutional injury, deliberate indifference to that risk, and 'an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.'" *Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999).

29. Negligence, at common law, contains three elements: (1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach." *Fussell v. N.C. Farm Bureau Mut. Ins. Co.,* 695 S.E.2d 437, 440 (N.C. Sup. Ct. 2010).

30. A defendant is liable for negligent infliction of emotional distress when "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . . , and

(3) the conduct did in fact cause the plaintiff severe emotional distress." *Acosta v. Byrum*, 180 N.C. App. 562, 667 (2006) (*quoting R. Johnson v. Ruark Obstetrics,* 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990)).

31. Public employees are not entitled to immunity from negligence claims and may be liable for negligent acts personally committed during the course of his or her professional duties. *See Isenhour v. Hutto*, 350 N.C. 601, 611 (1999); *Reid v. Roberts*, 112 N.C. App. 222,224,435 S.E.2d 116, 119 (1993); *see also Smith v. Hefner*, 235 N.C. 1, 7 (1952) (Public officials may be liable for negligence if their actions were "corrupt or malicious, or that [they] acted outside of or beyond the scope of [their] duties."); *Grad v. Kaasa*, 312 N.C. 310,313,321 S.E.2d 888, 890 (1984) ("A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another.")

32. A defendant who engages in (1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress is liable for intentional infliction of emotional distress. *Phillips v. Rest. Mgmt. of Carolina, G.A.*, 146 N.C. App. 203, 213 (2001) (*quoting Denning–Boyles v. WCES, Inc.*, 123 N.C. App. 409, 412, 473 S.E.2d 38, 40–41 (1996)).

33. "Conduct is extreme and outrageous when it exceeds all bounds usually tolerated by a decent society." <u>*Phillips v. Rest. Mgmt. of Carolina, L.P.*</u>, 146 N.C. App. 203, 213, 552 S.E.2d 686, 693 (2001) (*quoting* Shreve *v. Duke Power Co.*, 85 N.C.App. 253, 257, 354 S.E.2d 357, 359 (1987).

34. The court in *Wilkerson v. Duke Univ.*, 229 N.C. App. 670, 674 (2013) addressed the standard for claims of false imprisonment as such:

> False imprisonment is the restraint of a person where the restraint is both unlawful and involuntary. *Black v. Clark's Greensboro, Inc.,* 263 N.C. 226, 228, 139 S.E.2d 199, 201 (1964). The elements of false imprisonment include: "(1) the illegal restraint of plaintiff by defendant, (2) by force or implied threat of force, and (3)

against the plaintiff's will." *Rousselo v. Starling,* 128 N.C.App. 439, 449, 495 S.E.2d 725, 732 (1998). "The restraint requirement of this action requires no appreciable period of time, simply sufficient time for one to recognize his illegal restraint. The tort is complete with even a brief restraint of the plaintiff's freedom." *West v. King's Dep't Store, Inc.,* 321 N.C. 698, 703, 365 S.E.2d 621, 624 (1988).

35.  North Carolina General Statute Section 115C-12(21) requires Local Education Agencies (LEAs) to report crimes and acts of violence to the State Board of Education (SBE). *See also* SBE Policy SSCH-000 ("Local Education Agencies (LEAs) shall report the following crimes and offenses within five school days to the State Board of Education via the Department of Public Instruction-approved discipline reporting system").

36.  North Carolina General Statute Section 115C-391.1(c) states "Physical restraint of students by school personnel shall be considered a reasonable use of force when used in the following circumstances:

a)  As reasonably needed to obtain possession of a weapon or other dangerous objects on a person or within the control of a person.
b)  As reasonably needed to maintain order or prevent or break up a fight.
c)  As reasonably needed for self-defense.
d)  As reasonably needed to ensure the safety of any student, school employee, volunteer, or other person present, to teach a skill, to calm or comfort a student, or to prevent self-injurious behavior
e)  As reasonably needed to escort a student safely from one area to another.
f)  If used as provided for in a student's IEP or Section 504 plan or behavior intervention plan.
g)  As reasonably needed to prevent imminent destruction to school or another person's property."

37.  Iredell-Statesville School District's (ISSD) Board Policy 4302- R (G) states:

1. School personnel shall promptly notify the principal or designee of any of the following:

    a. any use of aversive procedures;
    b. any prohibited use of mechanical restraint;
    c. any use of physical restraint resulting in observable physical injury to a student;
    d. any prohibited use of seclusion; or
    e. any seclusion exceeding 10 minutes or the amount of time specified in a student's behavior intervention plan.

2. Notice to Parents

When a principal or designee has personal or actual knowledge of any of the events listed in subsection G.1, above, he or she shall promptly notify the student's parent or guardian and shall provide the name of the school employee whom the parent or guardian may contact regarding the incident. Such notice shall be provided by the end of the workday during which the incident occurred when reasonably possible, but no later than the end of the following workday. Such notice also shall be provided in addition to the written incident report required in subsection G.3, below.

38. ISSD Policy 4335 Criminal Behavior states:

Principals must immediately report to law enforcement the following acts when they have personal knowledge or actual notice from school personnel that such acts have occurred on school property, regardless of the age or grade of the perpetrator or victim: (1) assault resulting in serious personal injury; (2) sexual assault; (3) sexual offense; (4) rape; (5) kidnapping; (6) indecent liberties with a minor; (7) assault involving the use of a weapon; (8) possession of a firearm in violation of the law; (9) possession of a weapon in violation of the law; and (10) possession of a controlled substance in violation of the law. A principal who willfully fails to make a required report to law enforcement will be subject to disciplinary action, up to and including dismissal.

The principal or designee shall notify the superintendent or designee in writing or by e-mail of any report made by the principal to law enforcement. Such notice must occur by the end of the workday in which the incident occurred, when reasonably possible, but not later than the end of the following workday. The superintendent must inform the board of any such reports. In addition, the principal or designee must notify the parents of students who are alleged to be victims of any reported offenses.

39.     ISSD Policy 4240/7312, Child Abuse and Related Threats to Child Safety states:

A school employee who knows or has cause to suspect (1) child abuse, neglect, dependency, or death as a result of maltreatment by a parent, guardian, custodian, or caretaker of the child or (2) that a child has been a victim of human trafficking, involuntary servitude, or sexual servitude by any person is legally required to report the case to the director of social services. The employee also shall immediately report the case to the principal. Any doubt about reporting a suspected situation must be resolved in favor of reporting, and the report must be made immediately.

In addition to the requirements of this policy, any administrator who knows or has reason to believe that a licensed employee has engaged in conduct which involves physical or sexual abuse of a child shall report that information to the State Superintendent of Public Instruction in accordance with subsection C.4 of policy 4040/7310, Staff-Student Relations.

40.     The North Carolina Constitution guarantees that no person shall be denied the equal protection of the laws. N.C. Const. Art. 1, § 19.

## WAIVER OF GOVERNMENTAL IMMUNITY

41. Local Boards are separate corporate bodies that can sue and be sued. N.C. Gen. Stat. § 115C-40, 42.

42. "A school board waives its governmental immunity when it procures excess liability insurance coverage through the [NCSBT] from a licensed commercial insurance carrier." *J.W. v. Johnston Cty. Bd. of Educ.*, No. 5:11-CV-707-D, 2012 WL 4425439 at *10 (E.D.N.C. Sept. 24, 2012)(quoting *Lail ex rel. Jestes v. Cleveland Cty. Bd. of Educ.*, 183 N.C. App. 554, 561 (2007)).

43. The Defendant School Board contracted with the North Carolina School Boards Insurance Trust (NCSBIT), which then contracted with a commercial carrier to provide excess liability insurance coverage to the Defendant School Board. By obtaining this insurance coverage, the School Board has waived its governmental immunity for claims between $150,000.00 and $1,400,000.00.

44. Plaintiffs allege that their actual and compensatory damages in this action are in excess of $150,000.00.

45. Moreover, the School Board cannot assert governmental immunity as a defense to Plaintiffs' 42 U.S.C. § 1983 claims under 42 U.S.C. § 1988 or under the Constitutions of the United States and North Carolina.

46. Defendants Superintendents Johnson and James, Defendant Associate Superintendent Lesane, Defendant Principal Cloer, Defendant Principal Mehall, Defendant Principal Grega and Defendant R. Johnson, as public-school employees, were or are both county employees and State employees as defined by the State Tort Claims Act. N.C. Gen Stat. § 143-300.13 *et seq*. The acts and omissions described in this Complaint were committed by these

public-school employees in the scope and course of the employees' duties as public-school employees.

47. Although the State has not waived sovereign immunity for these individual State employees in the event that there is no commercial liability insurance, the State is responsible for the defense of State employees and for payment up to five hundred thousand dollars ($500,000.00) of any judgment awarded in a court of competent jurisdiction against a State employee minus the first one hundred fifty thousand dollars ($150,000.00) which is paid by the State Board of Education. N.C. Gen. Stat. § 143-300.6.

## PARTIES TO THE COMPLAINT

48. Plaintiff R.A. is the mother of Plaintiff G.A.

49. Plaintiffs R.A. and G.A. currently live in, and at all relevant times hereto were residents of, the County of Iredell, State of North Carolina.

50. Plaintiff G.A. is a nine-year-old male. At the time of the events complained of herein, Plaintiff G.A. was a student attending the schools, Cloverleaf and Pressly Elementary Schools, within the ISSD District, a public educational institution located in the County of Iredell, State of North Carolina.

51. Defendant Iredell-Statesville School District Board of Education ("Defendant Board") is, and at all times relevant to this action was, a body politic and local board of education, as that term is defined in North Carolina General Statute Section 115C, with the responsibility of providing school children, including G.A., full and equal access to the public educational programs and activities offered in Iredell County in accordance with state law and the North Carolina Constitution. As a local governmental unit, Defendant Board is a "person" as defined by 42 U.S.C. § 1983 (2000). Defendant Board is a recipient of federal funds within the meaning of 20 U.S.C. § 1681.

52. Defendant Brady Johnson ("Superintendent Johnson" or "Dr. Johnson") became the Superintendent of the ISS in 2010. As Superintendent, Johnson owed a duty to implement all policies and rules adopted by the Department of Public Instruction and the State Board of Education for the organization and government of the public schools. The Superintendent is directed by the Board to regularly review the administration of student behavior management policies across the school system. The Superintendent is charged with providing training to ISSD staff on and ensuring compliance with federal and state laws. The Superintendent shall notify and inform his board of education, assistant superintendent, principals, assistant principals, and teachers of such polices and rules, and work with all school personnel to achieve the best methods of school government. N.C. Gen. Stat. § 115C-276. Under ISSD Policy 4240 and Policy 4335, Johnson had a duty to report known or suspected child abuse to the appropriate authorities. Defendant Superintendent Johnson is sued in his individual capacity.

53. Dr. Alvera Lesane ("Associate Superintendent Lesane" or "Dr. Lesane") was, at all times relevant to this action, the Associate Superintendent for Human Resources
of the ISSD. As Associate Superintendent, Dr. Lesane owed a duty to implement all policies and rules adopted by the Department of Public Instruction and the State Board of Education for the organization and government of the public schools. Under ISSD Policy 4240 and Policy 4335, Dr. Lesane had a duty to report known or suspected child abuse to the appropriate authorities. Defendant Associate Superintendent Lesane is sued in her individual capacity.

54. Defendant Dr. Alisha Cloer ("Principal Cloer") was, from 2012 until June 2018, the Principal of Cloverleaf Elementary of the ISS. As Principal, Dr. Cloer was responsible for ensuring that all children attending Cloverleaf Elementary

School were afforded equal access to a public education and for carrying out the educational policies created by Defendant Board or mandated by State and Federal law. Principal Cloer was responsible for investigating conduct that violates Board policy or the Code of Student Conduct. Under ISSD Policy 4240 and Policy 4335, Principal Cloer had a duty to report known or suspected child abuse to the appropriate authorities. She is being sued in her individual capacity.

55. Defendant Andrew Mehall ("Principal Mehall") was the Principal of Cloverleaf Elementary of the ISSD beginning in May 2018. As Principal, Mr. Mehall is responsible for ensuring that all children attending Cloverleaf Elementary School are afforded equal access to a public education and for carrying out the educational policies created by Defendant Board or mandated by State and Federal law. Principal Mehall was responsible for investigating conduct that violates Board policy or the Code of Student Conduct. Under ISSD Policy 4240 and Policy 4335, Principal Mehall had a duty to report known or suspected child abuse to the appropriate authorities. He is being sued in his individual capacity.

56. Defendant Robin L. Johnson ("Ms. R. Johnson") was, at all times relevant to this action, a teacher within the ISSD, where the physical and emotional abuse of G.A. as well as the restraint incidents giving rise to this action occurred. Ms. Johnson, on multiple occasions improperly restrained, secluded, physically abused, and emotionally abused G.A. She is being sued in her individual capacity.

57. "Defendants," when used collectively throughout the Complaint, refers to Defendant Board, Superintendent Johnson, Associate Superintendent Lesane, Principal Cloer, Principal Mehall, and, Ms. R. Johnson.

## FACTUAL ALLEGATIONS

58.  Christian "Gage" Andrews (G.A.) is a nine (9) year old student, and his date of birth is December 18, 2010. He resides with his mother, R.A. in Iredell County, North Carolina.

59.  The Iredell-Statesville Public Schools System (ISS) is a local educational agency as defined by the Individuals with Disabilities Education Improvement Act, 20 U.S.C. § 1401.and Section 504, 34 CFR Part 104.3(l)(2)(ii).

60.  G.A. received began receiving special education services in preschool from the ISSD during the 2013-2014 school year due to his speech-language impairment.

61.  G.A. has received the following diagnoses: Autism Spectrum Disorder, Attention-Deficit/Hyperactivity Disorder (ADHD), Speech-Language Impairment, Intermittent Explosive disorder, Sensory Processing Disorder, and Post-Traumatic Stress Disorder.

## EDUCATIONAL HISTORY
### 2017-2018 School Year
### *First Grade*

62.  G.A. enrolled in the Iredell-Statesville School District (ISSD) for the 2017-2018 school year for first grade and attended Cloverleaf Elementary School.

63.  Defendant Board placed G.A. in a fully separate special education setting due to his "academic deficits" and "behavior outbursts."

64.  Through the school year, G.A.'s Exceptional Children (EC) teacher, Ms. R. Johnson, physically and emotionally abused G.A.

65.   On multiple occasions, Ms. R. Johnson restrained G.A., picked him up, and placed him in a trash can/recycle bin from which he was unable to get out. When G.A. attempted to get out, Ms. R. Johnson would push him back in.

66.   Ms. R. Johnson told G.A., "if he acted like trash, [she] would treat him like trash."

67.   On multiple other occasions, Ms. R. Johnson pushed G.A. down on the floor, restrained him, and covered his mouth and nose, so he couldn't scream. Ms. R. Johnson informed G.A.'s mother that she did this to stop him from disturbing the nondisabled students on their hallway.  G.A. was unable to breathe.

68.   Upon information and belief, Ms. R. Johnson used aversive procedures on G.A. in response to his disability-related behaviors.

69.   Upon information and belief G.A. was inappropriately restrained for behaviors his non-disabled peers were not.

70.   Ms. R. Johnson also verbally abused G.A.

71.   Due to Ms. R. Johnson's abuse, G.A. started demonstrating increased maladaptive behaviors and failed to make progress on his IEP goals.

72.   Multiple teachers, including Ms. Jennifer Bender, reported Ms. R. Johnson's abuse to the Cloverleaf administration who in turn reported Ms. R. Johnson to the Human Resources Director, Associate Superintendent Lesane and Superintendent Johnson.

73.   Principal Cloer took no further steps to investigate the abuse allegations or report the abuse to the authorities.

74.   Upon receiving the report from Principal Cloer, Superintendent Johnson took no steps to investigate the abuse allegations or report the abuse to the authorities.

75.   Dr. Lesane similarly, upon receiving the report from Principal Cloer, took no steps to investigate the abuse allegations or report the abuse to the authorities.

76.   Defendant Board ignored these reports, still took no action, and caused G.A. further emotional and educational harm. Upon information and belief, Defendant Board did not even investigate the reported abuse.

77. Upon information and belief, Defendant Board offered no training on the appropriate use of restraint; abstaining from the use of aversive procedures; and reporting child abuse.

78. None of the Defendants ever informed R.A. of the reports of Ms. R. Johnson's abuse of her son.

79. None of these incidents of restraint were documented in G.A.'s official record in PowerSchool, his disciplinary record, nor did his mother ever receive notice of the restraint.

80. Principal Cloer failed to report G.A.'s restraint under state law and ISS Board policy 4302.

81. Principal Cloer failed to notify G.A.'s mother and provide a written report regarding his restraint under state law and Board Policy 4302.

82. Defendant Board and Superintendent Johnson failed to ensure incidents of restraint and aversive procedures were properly documented by Principal Cloer. Moreover, Defendant Board and Superintendent Johnson failed to make accurate reports of the use of restraint in the ISSD to the State Board of Education (SBE) and Office of Civil Rights (OCR) as zero restraints were reported in the 2017-2018 school year.

83. Defendant Board continued to turn a blind eye to the abuse G.A. suffered in the segregated class and took no action to address Ms. R. Johnson's continuing abuse of G.A.

84. Defendant Board failed to supervise its employees as the abuse of G.A. by Ms. R. Johnson continued without any further reporting or remedial actions taken.

85. G.A. continued to suffer emotional and physical harm due to Ms. R Johnson's abuse.

86. Defendants continued to discriminate against G.A. on the basis of his disability by allowing him to be physically and emotionally abused in a segregated setting and, contrary to state law, taking no action to stop the abuse. Instead, Defendants blamed his increasing behaviors due to the abuse for the lack of academic progress.

87.  Principal Cloer left the ISSD and became Executive Director of Human Resources and Auxillary Services for Alexander County Schools on July 30, 2018.

88.  Andrew "Andy" Mehall was appointed the new Principal of Cloverleaf Elementary.

## 2018-2019 School Year

### *Second Grade*

89.  G.A. returned to Cloverleaf Elementary for second grade.

90.  G.A. remained in the separate, segregated EC classroom with Ms. R. Johnson as his teacher.

91.  Ms. R. Johnson continued to physically and emotionally abuse G.A.

92.  Again, on multiple occasions throughout this school year, Ms. R. Johnson restrained G.A., picked him up, and placed him in a trash can/recycle bin from which he was unable to get out. When G.A. attempted to get out, Ms. R. Johnson would push him back in.

93.  Similarly, on multiple occasions throughout second grade, Ms. R. Johnson pushed G.A. down on the floor, restrained him, and covered his mouth so he couldn't scream. G.A. was unable to breathe when this happened.

94.  None of these incidents of restraint were documented in G.A.'s official record in PowerSchool, his disciplinary record, nor did his mother ever receive notice of the restraint.

95.  Upon information and belief G.A. was inappropriately restrained for behaviors his non-disabled peers were not.

96.  Ms. R. Johnson continued to verbally abuse G.A.

97.  G.A. began exhibiting school refusal behaviors and his maladaptive behaviors continued to escalate.

98.  G.A. broke part of his desk when he was having a behavioral meltdown. As a consequence, Ms. R. Johnson refused to give him a desk and required he remain standing all day within a taped area on the floor where his desk had been.

99. G.A. came home that day with his shirt wet from crying. When R.A. asked Ms. R. Johnson what happened, she reported the punishment was necessary to teach him a lesson about respecting school property.

100. Upon information and belief, Ms. R. Johnson used aversive procedures on G.A. in response to his disability-related behaviors.

101. On one occasion, G.A. returned home from school with his hair full of grease and his clothes ruined. When G.A.'s mother asked Ms. R. Johnson what happened, Ms. R. Johnson reported she had accidentally spilled the hot juice and grease from her lunch of collard greens on G.A.'s head after heating it up in the microwave.

102. Multiple staff members reported the abuse to Principal Mehall who in turn reported Ms. R. Johnson to the Human Resources Director, Dr. Lesane, Superintendent Johnson, and Defendant Board.

103. Principal Mehall took no further steps to investigate the abuse allegations or report the abuse to the authorities.

104. Upon receiving the report from Principal Mehall, Superintendent Johnson took no steps to investigate the abuse allegations or report the abuse to the authorities.

105. Dr. Lesane similarly, upon receiving the report from Principal Mehall, took no steps to investigate the abuse allegations or report the abuse to the authorities.

106. Defendant Board ignored these reports, still took no action, and caused G.A. further emotional and educational harm. Upon information and belief, Defendant Board did not even investigate the reported abuse.

107. Upon information and belief, Defendant Board conducted no training on the appropriate use of restraint; abstaining from the use of aversive procedures; and reporting child abuse.

108. None of the Defendants ever informed R.A. of the reports of Ms. R. Johnson's abuse of her son.

109. On September 20, 2018, ISSD school psychologist, Brittany King, completed a psychoeducational evaluation of G.A.

110. G.A.'s performance on the evaluation documented his extreme cognitive, regression between 2016 and 2018.

111. Defendant Board continued to turn a blind eye to the abuse G.A. suffered in the segregated class and took no action to address Ms. R. Johnson's continuing abuse of G.A.

112. Defendant Board failed to supervise its employees as the abuse of G.A. by Ms. R. Johnson continued without any further reporting or remedial actions taken.

113. In February 2019, Ms. R. Johnson held G.A. down on the floor and attempted to smother him.

114. G.A. continued to suffer emotional and physical harm due to Ms. R Johnson's abuse.

115. Defendants continued to discriminate against G.A. on the basis of his disability by allowing him to be physically and emotionally abused in a segregated setting and, contrary to state law, taking no action to stop the abuse. Instead Defendants blamed his increasing behaviors due to the abuse for the lack of academic progress.

**2019-2020 School Year**
*Third Grade*

116. Unaware of the ongoing abuse, G.A.'s mother intended for G.A. to attend Cloverleaf for the third grade.

117. However, two (2) days prior to Open House at Cloverleaf, Defendant Board informed R.A. that Ms. R. Johnson was no longer teaching G.A.'s class.

118. Defendant Board instead moved Ms. R. Johnson to teach a class of non-verbal students who presumably were unable to verify the abuse.

119. Defendant Board relocated G.A.'s segregated class for students with disabilities to Defendant Board's alternative school for students with behavior issues, Pressly School.

120. G.A. attended the Pressly School for third grade.

121. Shortly after G.A. started third grade, and was no longer in Ms. R. Johnson's class, G.A.'s mother spoke to the parent of another student in G.A.'s segregated class, Joseph Benedetti.

122. Mr. Benedetti informed G.A.'s mother that his disabled child had been reporting to his parents that Ms. R. Johnson put students in the trashcan.

123. When R.A. asked G.A. about the abuse, G.A. began recounting the various ways Ms. R. Johnson abused him. G.A. told his mother that Ms. R. Johnson said G.A.'s mother asked her to do these things to him to help with his anger.

124. G.A.'s sister then reported to R.A. that she had seen G.A. abused by Ms. Johnson as well as kicked by the class teaching assistant.

125. Mr. Benedetti went immediately to the Pressly school and reported these concerns to school counselor Ryan Feemster.

126. Mr. Feemster questioned the other students previously in Ms. R. Johnson's class who confirmed the abuse.

127. Mr. Feemster reported the abuse to Superintendent Johnson and the Iredell County Police Department.

128. Upon information and belief, Defendant Board did not suspend Ms. R. Johnson to investigate the complaint or take action against her but continued to allow her to teach nonverbal, disabled students.

129. On September 23, 2019, the IEP team decided G.A. was no longer allowed to attend school on a daily basis due to his maladaptive behaviors and changed G.A.'s placement to "homebound/hospital."

130. Homebound was not an appropriate placement for G.A. ISSD took no steps including but not limited to offering G.A. a behavioral aide or other supports to allow him to access his education in the school building. Instead, the placement was made due to the ISSD's discrimination against G.A. on the basis of his behavioral disability.

131. G.A.'s placement on homebound denied him access to his peers, disabled and non-disabled, as well as caused continued academic and behavioral regression.

132. Due to G.A.'s homebound placement, R.A. was forced to stop working.

133. On October 17, 2019, the Iredell County Police issued a warrant for Ms. R. Johnson's arrest based on her abuse of a handicapped juvenile.

134. Only after the police issued a warrant for her arrest, did Defendant Board take any action to investigate the abuse that had been reported for years.

135. On October 18, 2019, R.A. provided Defendant Board with medical documentation from G.A.'s therapist stating that G.A. was suffering from

school-related trauma as he "was put in trash can by abusive teacher at school."

136. Defendant Board reported to R.A. that Ms. R. Johnson had been placed on administrative leave with pay.

137. G.A. continued to be on homebound and have ongoing behavioral issues due to the trauma of Ms. R. Johnson's abuse. However, rather than address the behavioral issues, Defendant Board just stopped providing services to G.A.

138. On March 3, 2020, Ms. R. Johnson pled guilty in Iredell District Court to two counts of Assault on a Handicapped Person.

139. Ms. R. Johnson's plea agreement placed her on deferred prosecution and supervised probation until September 1, 2021. During this period, she was to have no contact with G.A. or his family.

140. Defendant Board reported to G.A.'s mother that Defendant Board fired Ms. R. Johnson for her actions.

141. On March 16, 2020, the ISS went to remote learning due to the COVID pandemic.

142. Due to his disabilities, G.A. was unable to access remote learning and fell academically more behind his non-disabled peers; yet, Defendant Board took no steps to ensure G.A. could access the curriculum.

**2020-2021 School Year**
*Fourth Grade*

143. While Defendant Board reported to R.A. that Ms. R. Johnson had been fired, Defendant Board, in fact, continued to employ her and allow her access to disabled children.

144. Ms. R. Johnson currently works at Defendant Board's school, Third Creek Middle School, as a special education teacher, while she remains on court-mandated probation due to her abuse of G.A.

## CLAIMS FOR RELIEF

## COUNT I

**Violation of the Fourteen Amendment**
**42 U.S.C. § 1983**
(Defendant Board in its official capacity, and Superintendent Johnson, Associate Superintendent Lesane, Principal Cloer, Defendant Principal Mehall, and Ms. R. Johnson, in their individual capacities)

145. Plaintiff incorporates all preceding paragraphs into this Count by reference as if fully stated herein.

146. Under the Fourteenth Amendment, Plaintiff had the right as a public-school student to personal security, bodily integrity, equal access to an educational environment free from harassment and disability discrimination, and equal protection of the laws.

147. Plaintiff had his bodily integrity violated when he was physically abused by his teacher while in school.

148. Plaintiff was denied equal access to an educational environment free from harassment and disability discrimination when he was restrained for behaviors his non-disabled peers were not.

149. Plaintiff was denied a property right in his education in a North Carolina public school by his repeated removals from academic instruction.

150. Defendants were at all relevant times members of the ISSD Board of Education or employees of ISSD and persons acting under color of state law, empowered and required by the State of North Carolina to, among other things, ensure an open and safe environment for educational services, free from disability-based discrimination.

151. Defendant Board, Defendant Superintendent Johnson, Associate Superintendent Lesane, Principal Cloer, and Principal Mehall. Likewise, none of these incidents of restraint were documented in G.A.'s official record in PowerSchool, his disciplinary record, nor did his mother ever receive notice of the restraint.

152. Principal Mehall failed to report G.A.'s restraint under state law and ISS Board policy 4302.

153. Principal Mehall failed to notify G.A.'s mother and provide a written report regarding his restraint under state law and Board Policy 4302.

154. Upon information and belief, Defendant Board and Superintendent Johnson failed to ensure incidents of restraint and aversive procedures were properly documented by Principal Mehall. Moreover, Defendant Board and Superintendent Johnson failed to make accurate reports of the use of restraint in the ISSD to the State Board of Education (SBE).

155. Defendants discriminated against Plaintiff G.A. based on his disability and in violation of his right to equal protection of the laws when:

a) Defendant Board and Superintendent Johnson established a custom, policy, and practice of failing to enforce federal and state law requirements regarding seclusion and restraint by:

   1. Failing to properly document incidents of restraint and the use of aversive procedures in PowerSchool;

   2. Failing to timely provide notice and inform G.A.'s mother that he was being restrained in violation of state statute;

   3. Failing to report incidents of restraint and the use of aversive procedures to the State Board of Education;

   4. Failing to report incidents of restraint to the Office of Civil Rights; and

   5. Failing to ensure Principal Cloer and Principal Mehall complied with and carry out its responsibilities pursuant to the Section 504, including any investigation of any complaint communicated to such recipient alleging its noncompliance.

b) Defendant Board and Superintendent Johnson otherwise failed to train Associate Superintendent Lesane, Principal Cloer, Principal Mehall, and Ms. R. Johnson on Section 504, requirements as well as state and federal law regarding restraint and abstaining from the use of aversive procedures, amounting to a deliberate indifference to Plaintiff G.A.'s right to be free of discrimination despite the obvious need for such training as evidence by the proliferation of guidance from the Office of Civil Rights;

c) Defendant Board established a custom, policy, and practice of failing to train their employees regarding the requirements of state and federal law for Section 504 as well as the use of restraint and aversive procedures on students. Defendant Board demonstrated this custom,

policy, and practice by:

6. Failing to provide adequate training in light of foreseeable consequences; and

7. Ratifying the unreasonable actions of Superintendent Johnson, Principal Cloer, Principal Mehall, and Ms. R. Johnson to maintain G.A.'s placement away from his non-disabled peers;

8. Ratifying the unreasonable actions of Superintendent Johnson, Principal Cloer, and Principal Mehall who had knowledge of and refused to act to prevent Ms. R. Johnson's ongoing restraint of G.A. for behaviors or which his non-disabled peers were not secluded.

d) Defendant Board and Superintendent Johnson demonstrated deliberate indifference by failing to train Principal Cloer, Principal Mehall, and Ms. R. Johnson on the rights of students with disabilities to not be segregated from their nondisabled peers or restrained inappropriately as the need for training was so obvious and the inadequacy so likely to result in a violation of constitutional rights;

e) Defendant Board and Superintendent Johnson and Associate Superintendent Lesane demonstrated deliberate indifference when they received reports of Ms. R. Johnson's abuse of G.A. and took no action;

f) Principal Cloer and Principal Mehall demonstrated deliberate indifference when they received reports of Ms. R. Johnson's abuse of G.A. and took no action;

g) Defendants' failure to address the ongoing abuse of G.A., a disabled child, at the hands of his special education teacher, shocks the conscience.

h) Defendants repeatedly discriminated against Plaintiff G.A. by selectively punishing him, using aversive procedures against him, and restraining him while refusing to similarly punish non-disabled students who were, similarly situated.

i) Defendants disproportionately, excessively, and arbitrarily punished Plaintiff G.A. in comparison to Defendants' punishment of the non-disabled students for the same behaviors, without any rational basis;

j) Defendant Board ratified the illegal actions of Superintendent and Johnson, Associate Superintendent Lesane, Principal Cloer, Principal Mehall, and Ms. R. Johnson who either abused G.A. or failed to report the abuse thus perpetuating the abuse of G.A.; and

k) Superintendent Johnson ratified the illegal actions of Associate Superintendent Lesane, Defendant Principal Cloer, Defendant Principal Mehall, and Defendant R. Johnson by failing to take any steps to address or stop the abuse.

156. Defendant Board failed to screen while hiring as it continues to employ Ms. R. Johnson after she pled guilty to assault on a handicapped child and is currently on court-mandated probation.

157. The acts by Defendants constitute a disregard for, and deliberate indifference to, Plaintiff G.A.'s constitutionally protected interests, including his property interest in educational benefits under the Fourteenth Amendment to the United States Constitution.

158. Defendants knew or should have known that their response to a student's behavior and the use of restraint must comply with federal law, particularly as outlined in Section 504's published and widely promulgated implementing regulations.

159. As a direct and proximate result of Defendants' discriminatory misconduct, Plaintiff G.A. sustained, and continues to sustain, damages in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00), the amount to be determined at trial. Plaintiff G.A.'s damages include, but are not limited to:

   a) Past, present and future psychological pain, suffering, and impairment;

   b) Medical bills, counseling, and other costs and expenses for past and future psychological care; and

   c) Monetary damages for intentional discrimination.

## COUNT II

### Negligence

(Defendant Board in its official capacity, and Superintendent Johnson, Associate Superintendent Lesane, Principal Cloer, and Principal Mehall, and Ms. R. Johnson in their individual capacities)

160. Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

161. Defendant Board and Superintendent Johnson, Associate Superintendent Lesane, Principal Cloer, and Principal Mehall breached their duty to report child abuse under North Carolina General Section 115C-400.

   a) "Any [school personnel] who has cause to suspect child abuse or neglect has a duty to report the case of the child to the Director of Social Services of the county;"

   b) All the Defendants knew of Ms. R. Johnson's physical and emotional abuse of G.A.;

   c) All the Defendants knew of the physical, psychological, and emotional harm the abuse would cause G.A;

   d) Any school employee of reasonable intelligence would know to report the

abuse;

e) None of the Defendants reported G.A.'s abuse to the Director of Social Services; and

f) As a result of Defendant Superintendent's failures, Plaintiff G.A. suffered injuries, including, but not limited to:

    9. Continued emotional and physical abuse by Ms. R. Johnson while at school;

    10. Emotional distress as a result of the abuse, improper restraint, and seclusion. Plaintiff G.A. receives regular therapy to address the emotional impact of the abuse.

162. Superintendent Johnson breached his duties under North Carolina General Section 115C-276:

a) Pursuant to Section115C-276(e) & (k), Superintendent Johnson failed to report restraint data to the Superintendent of Public Instruction and State Board of Education.

b) Superintendent Johnson was required to "[f]amiliarize [himself] with and to Implement State Policies and Rules" regarding Section 504 and the use of restraint and aversive procedures on students per Section 115C-276(g).

c) Superintendent Johnson failed to train ISSD staff members, including all the individually named defendants, on the requirements of federal and state law as pertains to non-discrimination and the use of aversive procedures and restraint.

d) Superintendent Johnson failed to ensure Defendant Principals were making accurate reports on restraint and seclusion per Section 115C-276(p).

e) As a result of Defendant Superintendent's failures, Plaintiff G.A. suffered injuries, including, but not limited to:

11. Emotional distress as a result of the improper restraint, aversive procedures and physical and emotional abuse;

12. Plaintiff G.A. receives regular therapy to address the emotional impact of the restraint aversive procedures and physical and emotional abuse by Defendant R. Johnson.

163. Superintendent Johnson breached his duty to "develop appropriate procedures to implement this non-discrimination policy" regarding students with disabilities under Board Policy 1730, causing injuries to Plaintiff G.A.

164. Defendant Superintendent Johnson breached his duty to report restraint under state law and ISS Board policy 4302 to the SBE.

165. Superintendent Johnson breached his duty to report child abuse and criminal behavior under state law and ISSD Board policies 4335 and 4240 to the appropriate authorities.

166. Superintendent Johnson, Associate Superintendent Lesane, Principal Cloer, and Principal Mehall breached their duty of ordinary care to protect students, including Plaintiff G.A., from injury and damage, causing injuries to Plaintiff G.A.

167. Principals breached their duty to report restraint and seclusion under state law and ISS Board policy 4302, including, but not limited to, restraint and aversive procedures, causing injuries to Plaintiff G.A.

168. Defendants Principals breached their duty under state law and Board Policy 4302 when they failed to notify G.A.'s mother and provide a written report regarding his restraint.

169. Superintendent Johnson, Associate Superintendent Lesane, Principal Cloer,

and Principal Mehall breached their duty to report child abuse and criminal behavior under state law and ISSD Board policies 4335 and 4240, including, but not limited to, Ms. R. Johnson's physical and emotional abuse of G.A., causing his various injuries.

 a) Any person with reasonable intelligence would understand their duty to report abuse; and

 b) Defendant Principals knew the abuse negatively impacted G.A. academically, emotionally, and behaviorally.

170. Superintendent Johnson, Associate Superintendent Lesane, Principal Cloer, and Principal Mehall failed to investigate the reports of abuse, aversive procedures, and restraint or provide training to staff regarding the requirements under Section 504 and state law regarding the use of restraint with students with disabilities, causing injuries to Plaintiff G.A.

171. Superintendent Johnson, Associate Superintendent Lesane, Principal Cloer, and Principal Mehall investigate Ms. R. Johnson's abuse of G.A., or take any action to prevent the abuse from re-occurring.

172. Superintendent Johnson breached his duty to direct the work of and ensure adequate supervision of Associate Superintendent Lesane, Principal Cloer, and Principal Mehall causing injuries to Plaintiff G.A.

173. Associate Superintendent Lesane failed to properly investigate and report the alleged abuse of G.A.

174. Principal Cloer and Principal Mehall breached their duty to train Ms. R. Johnson concerning ISSD policies and state law to prevent discrimination of students with disabilities or the improper restraint or treatment of students with disabilities causing injuries to Plaintiff G.A.

175. Defendant Board breached its duty to maintain general control and supervision of all matters pertaining to the public schools in the ISSD and to enforce the school law in the ISS.

   a) Defendant Board failed to direct the work of Defendant Superintendent Johnson, Defendant Associate Superintendent Lesane, Defendant Principal Cloer, Defendant Principal Mehall, and Defendant R. Johnson to ensure adequate supervision and training of all employees, and ensure compliance with federal, state, and local law in addition to Defendant Board's policies.

   b) As a result of Defendant Board's failures, Plaintiff G.A. suffered injuries, including:

      13. Physical and verbal abuse while at school;
      14. Illegal restraint and seclusion while at school;
      15. Loss of instructional time constituting educational harm;
      16. Plaintiff G.A. suffered emotional distress, and ongoing medical issues including a diagnosis of PTSD.

176. Defendant R. Johnson breached her duty of care as G.A.'s teacher and caused him direct harm through her verbal and physical abuse of G.A.

177. Defendants' actions and omissions were the proximate cause of Plaintiff's injuries, including lost educational opportunity, emotional distress, and psychological damage.

178. As a direct and proximate result of Defendants' negligence, Plaintiff G.A. sustained, and continues to sustain, damages in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00), the amount to be determined at trial. Plaintiff G.A.'s damages include, but are not limited to:

   a) Past, present and future psychological pain, suffering, and impairment;

and

b) Medical bills, counseling, and other costs and expenses for past and future psychological care.

## COUNT III

### Negligent Infliction of Emotional Distress

**(Superintendent Johnson, Associate Superintendent Lesane, Principal Cloer, Principal Mehall, and Ms. R. Johnson in their individual capacities)**

179. Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

180. Ms. R. Johnson negligently engaged in conduct that was reasonably foreseeable to cause G.A. severe emotional distress and did, in fact, cause G.A. severe emotional distress, when she improperly restrained and verbally and emotionally abused Plaintiff G.A. By way of example and not limitation, Ms. R. Johnson:

a) Disproportionately disciplined G.A. for his disability-related behaviors;

b) Disproportionately restrained Plaintiff G.A. for the same, or substantially similar behaviors than his non-disabled counterparts;

c) Restrained G.A. on multiple occasions including holding him on the floor with her hands over his mouth and nose;

d) Told G.A. that R.A. wanted Ms. R. Johnson to restrain him in order to help with his anger;

e) Placed G.A. in a trash can/recycle bin from which he was unable to get out on multiple occasions;

f) Told G.A. "if he acted like trash [she] would treat him like trash";

g) Forced G.A. to stand the entire day, after his desk broke, causing him to cry from the pain of standing so long;

h) Prohibited G.A. from drinking his milk until he had eaten his entire lunch;

i) Forced G.A. to eat foods he did not like or want to eat; and

j) Purposefully spilled food on him and ruined his clothes.

181. Superintendents Johnson, Associate Superintendent Lesane, Principal Cloer, and Principal Mehall negligently engaged in conduct and failed to follow a duty of conduct imposed by law, i.e., the duty of ordinary care, to protect Plaintiff G.A. from injury and damage, when they knew of Ms. R. Johnson's abuse of G.A., failed to intercede, failed to investigate, and took no remedial steps to prevent it from re-occuring.

182. Defendants failed to follow that degree of care that a reasonable and prudent person would use under the same or similar circumstances.

183. Plaintiff G.A. suffered severe emotional distress as a result including, but not limited to:

a) Plaintiff G.A.'s aversion to attending school;

b) Plaintiff G.A. being diagnosed with PTSD;

c) Plaintiff G.A.'s increased maladaptive behaviors to the extent that he was not allowed to attend school;

d) Plaintiff G.A.'s more violent behaviors towards others at school and home; is more easily agitated; cries more often; and

e) The need for regular therapy appointments with a licensed clinical psychologist.

184. Defendants' negligence was a proximate cause of Plaintiff G.A.'s severe emotional distress, which Defendants should have foreseen as the natural and continuous sequence of their negligent actions.

185. As a direct and proximate result of Defendants' negligent infliction of emotional distress Plaintiff G.A. sustained, and continues to sustain, damages

in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00), the amount to be determined at trial. Plaintiff G.A.'s damages include, but are not limited to:

    a) Past, present and future psychological pain, suffering, and impairment; and

    b) Medical bills, counseling, and other costs and expenses for future psychological care.

## COUNT IV

### Intentional Infliction of Emotional Distress

**(Superintendent Johnson, Associate Superintendent Lesane, Principal Cloer, and Principal Mehall, and Ms. R. Johnson in their individually named capacities)**

186. Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

187. Ms. R. Johnson engaged in reckless, extreme, outrageous, and illegal conduct, which was intended to cause severe emotional distress and did cause severe emotional distress to Plaintiff G.A.

188. Ms. R. Johnson engaged in extreme and outrageous conduct when by way of example and not limitation she:

    a) Discriminated against Plaintiff G.A. based on his disability;
    b) Restrained G.A. on multiple occasions including holding him on the floor with her hands over his mouth;
    c) Told G.A. that his mother wanted her to restrain him in order to help with his anger;
    d) Placed G.A. in a trash can/recycle bin from which he was unable to get out on multiple occasions;
    e) Told G.A. "if he acted like trash [she] would treat him like trash";
    f) Forced G.A. to stand the entire day, causing him to cry from the pain of standing so long;

g) Prohibited G.A. from drinking his milk until he had eaten his entire lunch;

h) Forced G.A., a student with autism and sensory issues, to eat foods he did not like or want to eat; and

i) Purposefully spilled food on him and ruining his clothes.

189. Ms. R. Johnson's conduct exceeded all bounds usually tolerated by decent society.

190. Ms. R. Johnson's conduct was recklessly indifferent to the likelihood it would cause severe emotional distress to Plaintiff G.A. and did, in fact, cause severe emotional distress to Plaintiff G.A. including, but not limited to:

a) Plaintiff G.A.'s aversion to attending school;

b) Plaintiff G.A. receiving a diagnosis of PTSD;

c) Plaintiff G.A.'s increased maladaptive behaviors to the extent that he was not allowed to attend school;

d) Plaintiff G.A.'s more violent behaviors towards others at school and home; is more easily agitated; cries more often; and

e) The need for regular therapy appointments with a licensed clinical psychologist.

191. Superintendents Johnson, Associate Superintendent Lesane, Principal Cloer, and Principal Mehall engaged in extreme and outrageous conduct when they:

a) Discriminated against Plaintiff G.A. based on his disability;

b) Received multiple reports of Defendant R. Johnson's abuse of G.A.;

c) Knew of G.A.'s abuse by Defendant R. Johnson and chose not to take any remedial action allowing the abuse to continue; and

d) Chose not to report the abuse to the appropriate authorities per district policy and state law.

192. Superintendent Johnson, Associate Superintendent Lesane, Principal Cloer, and Principal Mehall's conduct was recklessly indifferent to the likelihood it would cause severe emotional distress to Plaintiff G.A. and exceeded all bounds usually tolerated by decent society.

193. Superintendent Johnson, Associate Superintendent Lesane, Principal Cloer, and Principal Mehall's conduct in fact caused severe emotional distress to Plaintiff G.A. including, but not limited to:

   a) Plaintiff G.A.'s continued physical and emotional abuse while at school;

   b) Plaintiff G.A.'s aversion to attending school;

   c) Plaintiff G.A. receiving a diagnosis of PTSD;

   d) Plaintiff G.A.'s increased maladaptive behaviors to the extent that Defendant Board prohibited him from attending school;

   e) Plaintiff G.A.'s more violent behaviors towards others at school and home; is more easily agitated; cries more often; and

   f) The need for regular therapy appointments with a licensed clinical psychologist.

194. As a direct and proximate result of Defendants' intentional infliction of emotional distress, Plaintiff G.A. and Plaintiff K.B. sustained, and continues to sustain, damages in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00), the amount to be determined at trial. Plaintiffs' damages include, but are not limited to:

   a) Past, present and future psychological pain, suffering, and impairment; and

   b) Medical bills, counseling, and other costs and expenses for future psychological care; and

   c) Attorneys' fees.

## COUNT V

## False Imprisonment

## (Defendant R. Johnson in her individually named capacity)

195. Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

196. G.A. was involuntarily restrained and imprisoned in a trash can by Defendant R. Johnson in violation of North Carolina General Statute Section 115C-391.1(c) and (e).

197. G.A. was restrained by Defendant R. Johnson when he was not a danger to herself, others, or property thereby violating Section 115C-391.1.

198. G.A. was restrained and imprisoned for similar behaviors for which his non-disabled peers were not punished.

199. Defendant R. Johnson on multiple occasions forcefully restrained, picked up, and imprisoned G.A while he was at school.

200. On multiple occasions, G.A. was forcefully placed in a trash can, by Defendant R. Johnson and was imprisoned there for over ten minutes.

201. Ms. R. Johnson held G.A. down covering his mouth and nose and refused to allow him to get up.

202. As a direct and proximate result of Defendant's false imprisonment, Plaintiff G.A. and Plaintiff K.B. sustained, and continues to sustain, damages in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00), the amount to be determined at trial. Plaintiffs' damages include, but are not limited to:

    a) Past, present and future psychological pain, suffering, and impairment; and

    b) Medical bills, counseling, and other costs and expenses for future psychological care; and

    c) Attorneys' fees.

## COUNT VI

### Discrimination Based on Disability in Violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 et seq.

### (Defendant Board)

203. Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

204. G.A. is a "handicapped person" as defined by the regulations of Section 504 of the Rehabilitation Act ("Section 504"). 34 C.F.R. § 104(3)(j)(1); 34 C.F.R. § 103(3)(1)(2).

205. Defendant Board is a "recipient of Federal financial assistance from the Department of Education" that operates a program or activity as defined by the regulations of Section 504. 34 C.F.R. § 104.38; 34 C.F.R. 104.34.

206. From G.A.'s enrollment in the ISSD, Defendant Board's discrimination against G.A. by excluding him from participation in a program and denying him the benefits of a program was solely on the basis of his disability.

207. Defendant Board discriminated against G.A. by refusing to "demonstrate[] . . . that the education of [G.A.] in the regular environment with the use of supplementary aids and services [could] not be achieved satisfactorily." 34 C.F.R. 104.34(a).

208. Defendant Board discriminated against G.A. by failing to implement the placement procedures required by Section 504 and failed to "ensure that the placement decision [was] made in conformity with 104.34." 34 C.F.R. 1-4.35(c).

209. Defendant Board acted in bad faith and demonstrated gross misjudgment through its discriminatory practices of restraining G.A. solely on the basis of his disability as his nondisabled peers were not held down or placed in trashcans in an attempt to address their behavior.

210. Defendant Board discriminated against G.A. by refusing to allow G.A. to access his education in the general education setting with his non-disabled peers and denied G.A. the opportunity to participate in an education program that was not separate or different;

211. Defendant Board refused to provide G.A. an appropriate education that was designed to meet his individual educational needs "as adequately as the needs of nonhandicapped persons are met." 34 C.F.R. 104.33(b)(1).

212. As a direct and proximate result of Defendants' discrimination based on Plaintiff G.A.'s disability, Plaintiff G.A. and Plaintiff K.B. sustained, and continues to sustain, damages in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00), the amount to be determined at trial. Plaintiffs' damages include, but are not limited to:

    a) Past, present and future psychological pain, suffering, and impairment; and

    b) Medical bills, counseling, and other costs and expenses for future psychological care; and

    c) Attorneys' fees.


## COUNT VII

### Discrimination Based on Disability in Violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.

### (Defendant Board)

213. Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

214. G.A. is a "qualified individual with a disability," as defined by the ADA, 42 U.S.C. § 12131(2).

215. Defendant Board is a "public entity" within the meaning of the ADA. 42 U.S.C. § 12131(2).

216. Defendant Board's discrimination against G.A. by excluding him from participation in a program and denying her the benefits of the services, programs, and activities of a public entity, the ISSD, was motivated by his disability, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12132.

217. Title II of the ADA and Section 504 are closely related, and "there is no significant difference in the analysis of rights and obligations created by the two Acts." *K.M. v. Tustin Unified Sch. Dist.*, 725 F.3d 1088 (9th Cir. 2013) (quoting *Vinson v. Thomas*, 288 F.3d 1145, 1152 n.7 (9th Cir. 2002)).

218. As a result of the segregation, G.A. was deprived the opportunity to develop appropriate academic, social, and behavioral skills.

219. Defendants imposed more severe, and often aversive, punishments on G.A. due to his disability when G.A. was segregated from his nondisabled peers, who did not experience the same punishments.

220. As a direct and proximate result of Defendants' discrimination based on Plaintiff G.A.'s disability, Plaintiff G.A. and Plaintiff K.B. sustained, and continues to sustain, damages in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00), the amount to be determined at trial. Plaintiffs' damages include, but are not limited to:

   a) Past, present and future psychological pain, suffering, and impairment; and

   b) Medical bills, counseling, and other costs and expenses for future psychological care; and

   c) Attorneys' fees.

WHEREFORE, every act or omission attributed to an employee of the Iredell-Statesville District Schools was performed or omitted during the course and scope of that employee's employment with the Defendant Board.

NOW THEREFORE, Plaintiffs respectfully request that judgment be entered in their favor and against Defendant Iredell-Statesville District Schools Board of Education and Defendants Superintendent Johnson, Associate Superintendent Lesane, Principal Cloer, Principal Mehall, and Ms. R. Johnson as follows:

A. Compensatory damages for Plaintiff's psychological and emotional distress and damages, and his family's unreimbursed out of pocket expenses incurred in response to these circumstances;
B. Punitive damages;
C. Costs;
D. Attorney's fees;
E. And any other relief this Court deems just and proper.

## JURY DEMAND

Now Come the Plaintiffs, by and through their attorneys, and demand a trial by jury.

Respectfully submitted this the __10th__ day of December, 2020.

/s/ Stacey Gahagan

Stacey Gahagan
N.C. State Bar No. 44393
Gahagan Paradis, PLLC
3326 Durham Chapel Hill Boulevard, Suite 210-C
Durham, North Carolina 27707
(919) 942-1430
sgahagan@ncgplaw.com