# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## Case No: 5:20-cv-192

C.G.A. ("G.A."), by and through his parent and guardian, R.A., and R.A. individually,

    Plaintiffs,

  v.

**AMENDED COMPLAINT FOR DAMAGES**

IREDELL-STATESVILLE SCHOOL DISTRICT BOARD OF EDUCATION; BRADY JOHNSON, Former Superintendent of Iredell-Statesville District Schools, in his individual capacity; ALVERA LESANE, Former Associate Superintendent of Iredell-Statesville District School, in her individual capacity; RHONDA MCCLENAHAN, Current Executive Director of Exceptional Children of Iredell-Statesville District School, in her individual capacity; ALISHA CLOER, Former Principal of Cloverleaf Elementary School, in her individual capacity; ANDREW MEHALL, Current Principal of Cloverleaf Elementary School, in his individual capacity; ROBIN L. JOHNSON, Former Cloverleaf Elementary School and Third Creek Middle School Teacher, in her individual capacity,

    Defendants.

## COMPLAINT

G.A. by and through his parent and guardian, R.A., file this complaint against Defendants for their discriminatory and tortious conduct against Plaintiffs.

## SUMMARY

1. Plaintiff G.A. is a student with Autism Spectrum-Disorder and a communication disability. G.A.'s autism impacts his functional communication skills making it difficult for him communicate effectively with his family, peers, and teachers.[1]

2. G.A. 's teacher, Ms. R. Johnson, physically, verbally, and emotionally abused G.A. throughout first and second grades.

3. Upon information and belief, during first grade, an ISSD employee, Ms. Jennifer Bender, witnessed the abuse and reported it to the school principal, Dr. Cloer.[2]

4. Dr. Cloer, and all the Defendants, had a statutory duty under North Carolina General Statute Section 115C-400[3] to report any suspected abuse to the Director of Social Services and under ISSD Board Policy 4040 to report to the State Superintendent of Public Instruction.

---

[1] In a 2018 Behavior Assessment System for Children- 3 Edition completed by G.A.'s mother and his classroom teacher, he scored around one standard deviation below average on "Functional Communication." (Teacher Score = 37; Parent Score=42; Mean= 50).

[2] The District Attorney prosecuting Ms. Johnson informed R.A. that Ms. Bender had reported the abuse to Dr. Cloer.

[3] The mandatory reporting duty is re-iterated in ISSD Policy 4240.

5. Upon information and belief, Dr. Cloer did not take any steps to report the abuse to the police, the Director of Social Services, or the State Superintendent of Public Instruction, did not investigate the abuse, and did not intervene in any way to stop the abuse.

6. Upon information and belief, Dr. Cloer only reported the abuse to district-level personnel; however, the report stopped there. No one reported the abuse to the police, the Director of Social Services, or the State Superintendent of Public Instruction, no district-level personnel investigated the abuse, and no district-level personnel intervened in any way to stop the abuse. [4]

7. Defendant Board did not remove Ms. R. Johnson as G.A.'s teacher. In fact, Defendant Board assigned G.A. to her classroom again for second grade and unsurprisingly, the abuse continued.

8. On September 11, 2018, video was captured of a School Resource Officer (SRO) taunting and holding down an elementary-aged student with autism, at the Pressly School in the ISSD, while the teacher sat and watched the illegal and excessive use of force occur.

9. When G.A. finally told his mother about one of abusive incidents in the spring of second grade, G.A.'s mother questioned Ms. R. Johnson about the incident and then reported it to the new school principal, Mr. Mehall.

---

[4] One of the investigating officers from the Iredell County Sheriff's Office informed R.A. that reports of Ms. R. Johnson's abuse had reached administrators as high up as Superintendent Johnson and Associate Superintendent Lesane.

10. Upon information and belief, Mr. Mehall did not take any steps to report the abuse to the police, the Director of Social Services, or the State Superintendent of Public Instruction[5], did not investigate the abuse, and did not intervene in any way to stop the abuse.

11. When G.A. was in third grade, Defendant Board reassigned him to another school. Defendant Board transferred Ms. R. Johnson to teach in a preschool class of students who were primarily nonverbal.

12. Shortly thereafter, one of G.A.'s classmates, told his parent, Mr. Benedetti, about Ms. R. Johnson's abuse the previous year.

13. Mr. Benedetti reported it to Ryan Feemster, a therapist from Children's Hope Alliance who was working at Pressly School in the ISSD. The therapist, not the school district, investigated the abuse and reported it to the police.

14. Only after the police arrested Ms. R. Johnson did Defendant Board place her on paid administrative leave and remove her from the classroom. Upon information and belief, Ms. R. Johnson had continued to abuse children in the preschool class prior to being placed on administrative leave.

15. After Ms. R. Johnson's arrest, one of the preschooler's parents spoke to Mr. Mehall about the abuse her son experienced, upon information and belief, Mr. Mehall claimed he had no idea Ms. R. Johnson had been abusing students.

---

[5] ISSD Board Policy 4040/ 7310 Staff-Student Relations.

16. Ms. R. Johnson pled guilty and entered a plea agreement on March 3, 2020 under which prosecution was deferred until September 21, 2021. Ms. R. Johnson placed on supervised probation for eighteen (18) months.

17. Despite having a statutory duty to report any suspected child abuse to the Director of Social Services and to the State Superintendent of Public Instruction, none of the Defendants took any such step.

18. Defendant Board was aware its employees were not properly trained and have perpetuated practices and customs of ignoring reports of abuse of disabled students, failing to report abuse to the proper authorities as required by law, and allowing disabled students to endure physical discipline and verbal taunting by staff due to their disability-related behaviors.

19. G.A. suffered emotional, psychological, physical, and educational harm from the abuse. Due to the abuse his disability-related behaviors intensified and worsened, and his academics spiraled downward as he was unable to access his education. In response, rather than provide reasonable accommodations and support, Defendant Board further denied him access to educational services except for one (1) hour per week.

20. As of December 17, 2020, Defendant Board still listed Ms. R. Johnson as an Exceptional Children's teacher at a new school in the district.[6]

---

[6] Gordon, Michael. "'It was torture': NC teacher dumped special-ed students in trash can, lawsuit says. The Charlotte Observer.
https://account.charlotteobserver.com/paywall/registration?resume=247782650

5

21. Based on the information available on the State Board of Education's website, Ms. R. Johnson's license remains active, and she has not received any disciplinary action for the abuse.[7]

22. As set forth below, Defendants' actions against G.A. constituted discrimination on the basis of disability in an education program receiving federal funds in violation of Section 504 of the Rehabilitation Act of 1973, § 504(a), 29 U.S.C. 794(a), and Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq.; 28 CFR 35.

23. Defendants, by and through persons acting under color of state law, deprived G.A. of his federal constitutional and statutory rights in violation of 42 U.S.C. § 1983.

24. Plaintiffs were injured and are entitled to recover damages caused by Defendants' negligence, negligent infliction of emotional distress, and false imprisonment in accordance with North Carolina State law.

## JURISDICTION AND VENUE

25. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

26. This Court also has subject matter jurisdiction over this action pursuant to 28

---

[7] Disciplinary Actions to Date. North Carolina State Board of Education. https://stateboard.ncpublicschools.gov/legal-affairs/disciplinary-process/revoked-license#:~:text=The%20State%20Board%20of%20Education,the%20application%20for%20the%20license. Last accessed February 2, 2021.

U.S.C. § 1343(a), which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

27. Plaintiffs bring this action to redress disability discrimination in accordance with the provisions of Section 504 of the Rehabilitation Act of 1973, § 504(a), 29 U.S.C. 794(a), and Title II of Americans with Disabilities Act (ADA) of 1990, § 202, 42 U.S.C. §§ 12101 *et seq*.; as more fully set forth herein.

28. Plaintiffs bring this action to redress deprivation of G.A.'s constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

29. This Court has supplemental jurisdiction over North Carolina state law claims pursuant to 28 U.S.C. § 1367.

30. Venue is proper pursuant to 28 U.S.C. § 1391(b), because Defendants are located within the Western District of North Carolina and a substantial part of the acts or omissions giving rise to this complaint arose from events occurring within this judicial district.

## PARTIES TO THE COMPLAINT

31. Plaintiff G.A. is a ten-year-old disabled boy. At the time of the events complained of herein, Plaintiff G.A. was a student attending Cloverleaf and Pressly Elementary Schools, within Defendant Board's school district, located in the County of Iredell, State of North Carolina.

32. Plaintiff R.A. is the mother of Plaintiff G.A.

33. Plaintiffs R.A. and G.A. currently live in, and at all relevant times hereto were residents of, the County of Iredell, State of North Carolina.

34. Defendant Iredell-Statesville School District Board of Education ("Defendant Board") is, and at all times relevant to this action was, a body politic and local board of education, as that term is defined in North Carolina General Statute Section 115C, with the responsibility of providing school children, including G.A., full and equal access to the public educational programs and activities offered in Iredell County in accordance with state law and the North Carolina Constitution. As a local governmental unit, Defendant Board is a "person" as defined by 42 U.S.C. § 1983 (2000). Defendant Board is a recipient of federal funds within the meaning of 20 U.S.C. § 1681.

35. Defendant Brady Johnson ("Superintendent Johnson" or "Dr. Johnson") became the Superintendent of the ISSD in 2010 and retired on June 30, 2020. As Superintendent, Johnson owed a duty to implement all policies and rules adopted by the Department of Public Instruction and the State Board of Education for the organization and government of the public schools. The Superintendent is charged

with providing training to ISSD staff on and ensuring compliance with federal and state laws. Under North Carolina General Statute Section 115C-400 and ISSD Policies 4040 and 4240, Dr. Johnson had a duty to report known or suspected child abuse to the appropriate authorities. Superintendent Johnson is sued in his individual capacity.

36. Dr. Alvera Lesane ("Associate Superintendent Lesane" or "Dr. Lesane") was the Associate Superintendent for Human Resources of the ISSD from 2010 until around November 2020. Under North Carolina General Statute Section 115C-400 and ISSD Policies 4040 and 4240, Dr. Lesane had a duty to report known or suspected child abuse to the appropriate authorities. Associate Superintendent Lesane is sued in her individual capacity.

37. Defendant Rhonda McClenahan ("EC Director McClenahan") was at all times relevant to this action, the Executive Director of Exceptional Children of the ISSD. EC Director McClenahan is charged with directing a program of instructional, psychological, and related services to help schools meet the needs of students with disabilities. EC Director McClenahan is directly responsible for ensuring appropriate training for ISSD employees working with students with disabilities. Under North Carolina General Statute Section 115C-400 and ISSD Policies 4040 and 4240, EC Director McClenahan had a duty to report known or suspected child abuse to the appropriate authorities. She is being sued in her individual capacity.

38. Defendant Dr. Alisha Cloer ("Principal Cloer" or "Dr. Cloer") was, from 2012 until June 2018, the Principal of Cloverleaf Elementary of the ISS.d As Principal, Dr.

Cloer was responsible for ensuring that all children attending Cloverleaf Elementary School were afforded equal access to a public education and for carrying out the educational policies created by Defendant Board or mandated by State and Federal law. Principal Cloer was responsible for investigating conduct that violates Board policy or the Code of Student Conduct. Under North Carolina General Statute Section 115C-400 and ISSD Policies 4040 and 4240, Principal Cloer had a duty to report known or suspected child abuse to the appropriate authorities. She is being sued in her individual capacity.

39. Defendant Andrew Mehall ("Principal Mehall" or "Mr. Mehall") has been the Principal of Cloverleaf Elementary in the ISSD since May 2018. As Principal, Mr. Mehall is responsible for ensuring that all children attending Cloverleaf Elementary School are afforded equal access to a public education and for carrying out the educational policies created by Defendant Board or mandated by State and Federal law. Principal Mehall was responsible for investigating conduct that violates Board policy or the Code of Student Conduct. Under North Carolina General Statute Section 115C-400 and ISSD Policies 4040 and 4240, Principal Mehall had a duty to report known or suspected child abuse to the appropriate authorities. He is being sued in his individual capacity.

40. Defendant Robin L. Johnson ("Ms. R. Johnson") was, at all times relevant to this action, a teacher within the ISSD, where the physical and emotional abuse of G.A. giving rise to this action occurred. Ms. Johnson, on multiple occasions improperly physically and emotionally abused G.A. She is being sued in her individual

capacity.

41. "Defendants," when used collectively throughout the Complaint without further clarification, refers to Defendant Board, Superintendent Johnson, Associate Superintendent Lesane, EC Director McClenahan, Principal Cloer, Principal Mehall, and Ms. R. Johnson.

42. "Individual Defendants," when used collectively throughout the Complaint without further clarification refers to Superintendent Johnson, Associate Superintendent Lesane, EC Director McClenahan, Principal Cloer, Principal Mehall, and Ms. R. Johnson.

## WAIVER OF GOVERNMENTAL IMMUNITY

43. Local Boards are separate corporate bodies that can sue and be sued. N.C. Gen. Stat. § 115C-40, 42.

44. "A school board waives its governmental immunity when it procures excess liability insurance coverage through the [North Carolina School Boards Trust] from a licensed commercial insurance carrier." *J.W. v. Johnston Cty. Bd. of Educ.*, No. 5:11-CV-707-D, 2012 WL 4425439 at *10 (E.D.N.C. Sept. 24, 2012)(*quoting Lail ex rel. Jestes v. Cleveland Cty. Bd. of Educ.*, 183 N.C. App. 554, 561 (2007)).

45. Defendant Board contracted with the North Carolina School Boards Trust (NCSBT), which then contracted with a commercial carrier to provide excess liability insurance coverage to the Defendant School Board. By obtaining this

insurance coverage, the School Board has waived its governmental immunity for claims between $150,000.00 and $3,150,000.00.[8]

46. Plaintiffs allege their actual and compensatory damages in this action are in excess of $150,000.00.

47. Moreover, the School Board cannot assert governmental immunity as a defense to Plaintiffs' 42 U.S.C. § 1983 claims under 42 U.S.C. § 1988 or under the Constitution of the United States.

48. Although the State has not waived sovereign immunity for these individual State employees in the event that there is no commercial liability insurance, the State is responsible for the defense of State employees and for payment up to one million dollars ($1,000,000.00) of any judgment awarded in a court of competent jurisdiction against a State employee minus the first one hundred fifty thousand dollars ($150,000.00) which is paid by the State Board of Education. N.C. Gen. Stat. § 143-300.6.[9]

## DEFENDANTS DO NOT HAVE IMMUNITY

49. "[Q]ualified immunity analysis does not require factual findings, because the inquiry is a "purely legal one: whether the facts alleged ... support a claim of violation of clearly established law." *Mitchell v. Forsyth,* 472 U.S. 511, 528 n.9 (1985).

---

[8] Iredell-Statesville Board of Education Financial Report Year ended June 30, 2020. https://resources.finalsite.net/images/v1602868882/issschoolwirescom/bmzir8iwy8flt9idhhsh/Iredell-StatesvilleBOE20109-20Statements.pdf (p. 48)(last visited January 19, 2021).
[9] What is Covered. Professional Liability for NC Public School Personnel. https://www.professionalliabilitync.com/what/

50. School administrators are not entitled to qualified immunity if "(l) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). The "plainly incompetent or those who knowingly violate the law" are not protected. *Kiesla v. Hughes*, 138 S. Ct. 1148, 1152-52 (2018).

51. North Carolina General Statute Section 115C-400 requires school employees, including the Individual Defendants, to report child abuse to the Director of Social Services of the county. *See also* 16 NCAC 06E.0107 ("Local Education Agencies (LEAs) shall report the following crimes and offenses within five school days to the State Board of Education via the Department of Public Instruction-approved discipline reporting system . . . [including, but not limited to,] assault . . . harassment – disability . . . discrimination [based on discrimination]").

52. This statutory reporting requirement is also reflected in Board Policy 4240/7312, Child Abuse and Related Threats to Child Safety states:

> A school employee who knows or has cause to suspect (1) child abuse, neglect, dependency, or death as a result of maltreatment by a parent, guardian, custodian, or caretaker of the child or (2) that a child has been a victim of human trafficking, involuntary servitude, or sexual servitude by any person is legally required to report the case to the director of social services. The employee also shall immediately report the case to the principal. Any doubt about reporting a suspected situation must be resolved in favor of reporting, and the report must be made immediately.

> In addition to the requirements of this policy, any

administrator who knows or has reason to believe that a licensed employee has engaged in conduct which involves physical or sexual abuse of a child shall report that information to the State Superintendent of Public Instruction in accordance with subsection C.4 of policy 4040/7310, Staff-Student Relations.

53. Board Policy 4040, which mirrors 16 NCAC 06C .0312, includes the additional reporting states:

Any principal who has reason to believe that a student has been the victim of criminal conduct shall immediately report the incident in accordance with policy 4335, Criminal Behavior.

4. Report to State Superintendent of Public Instruction

Any administrator, including the superintendent, a deputy/associate/assistant superintendent, a personnel administrator, or a principal, who knows or has reason to believe that a licensed employee has engaged in conduct which involves physical or sexual abuse of a child shall report that information to the State Superintendent of Public Instruction within five working days of any disciplinary action, dismissal, or resignation based on the conduct. For purposes of this subsection, physical abuse is the infliction of physical injury other than by accidental means or in self-defense, and sexual abuse is the commission of any sexual act upon a child or causing a child to commit a sexual act, regardless of consent and the age of the child. Failure to report such conduct may result in the suspension or revocation of an administrator's license by the State Board of Education.

This reporting requirement applies in addition to any duty to report suspected child abuse in accordance with state law and policy 4240/7312, Child Abuse and Related Threats to Child Safety, as applicable.

54. Public employees are not entitled to immunity from negligence claims and may be liable for negligent acts personally committed during the course of his or

her professional duties. *See Isenhour v. Hutto*, 350 N.C. 601, 611 (1999); *see also Reid v. Roberts*, 112 N.C. App. 222,224,435 S.E.2d 116, 119 (1993)

55. "Public officials may be liable for negligence if their actions were "corrupt or malicious, or that [they] acted outside of or beyond the scope of [their] duties." *Smith v. Hefner*, 235 N.C. 1, 7 (1952); *see also Grad v. Kaasa*, 312 N.C. 310,313,321 S.E.2d 888, 890 (1984) ("A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another.").

56. "Where [a] duty is absolute, certain, and imperative, involving merely the execution of a set task—in other words, is simply ministerial—[the defendant] is liable in damages to any one specially injured, either by his [or her] omitting to perform the task, or by performing it negligently or unskillfully." *Moffitt v. Davis*, 205 N.C. 565, 172 S.E. 317, 318 (1934)

## FACTUAL ALLEGATIONS
### 2017-2018 School Year
### *First Grade*

57. G.A. attended first grade Cloverleaf Elementary School in the ISSD.

58. Defendant Board placed G.A. in a fully separate special education setting. Ms. R. Johnson was G.A.'s teacher.

59. Through the school year, Ms. R. Johnson physically and emotionally abused G.A. The abuse had no educational purpose, was done in bad faith, and departed from all standards of professional judgment.

60. On multiple occasions, Ms. R. Johnson restrained G.A., picked him up, and placed him in a trash can/recycle bin from which he was unable to get out. When G.A. attempted to get out, Ms. R. Johnson would push him back in.

61. Ms. R. Johnson would tell G.A., "if he acted like trash, [she] would treat him like trash." Ms. R. Johnson also told G.A. that G.A.'s mother, R.A., wanted her to do this when he exhibited disability-related maladaptive behaviors.

62. On multiple other occasions, Ms. R. Johnson pushed G.A. down on the floor, restrained him, and then covered his mouth and nose so that he was unable to scream, allegedly to prevent him from disturbing the non-disabled students in the school.

63. Ms. R. Johnson punished G.A. for behaviors, through the use of aversive practices, which were not employed on his non-disabled peers when they misbehaved.

64. This abuse caused G.A. to be denied access to his education as he was repeatedly required to stay in a trash can/recycle bin until Ms. R. Johnson allowed him to leave, rather than receive instruction.

65. Due to Ms. R. Johnson's abuse, G.A. demonstrated increased maladaptive behaviors—a vicious cycle that Ms. R. Johnson used as a basis to subject him to further punishment and denial of equal access to education based on his disability-related behaviors.

66. Upon information and belief, Ms. Jennifer Bender observed Ms. R. Johnson's abuse of G.A. and reported the abuse to Principal Cloer.[10]

67. Principal Cloer had a statutory duty to report the suspected abuse to the Director of Social Services. Additionally, Principal Cloer had a duty to report the suspected abuse to the State Superintendent of Public Instruction. Upon information and belief, Principal Cloer chose to do neither. Instead, Principal Cloer kept the information of the suspected abuse within the school district and, upon information and belief, reported it to the Associate Superintendent Lesane (the Human Resources Director), EC Director McClenahan, and Superintendent Johnson.

68. Principal Cloer had the ability to take corrective action; yet Principal Cloer did not even investigate the abuse allegations or remove Ms. Johnson from G.A.'s classroom.

69. Dr. Lesane, EC Director McClenahan, and Superintendent Johnson had a statutory duty to report the suspected abuse to the Director of Social Services, and the additional duty to report the suspected abuse to the State Superintendent of Public Instruction. Upon information and belief, all three chose to keep the information about the suspected abuse within the school district and did not alert the appropriate authorities.

---

[10] This information was reported to R.A. by the District Attorney prosecuting Ms. Johnson's criminal case.

70. All four (4) employees acting on behalf of the Board had the authority to intervene and protect G.A. and the other students in the class; yet not a single one took those steps.

71. As no one with the duty and authority to act chose to intervene, Ms. R. Johnson's discriminatory and tortious conduct towards G.A. continued and caused G.A. further emotional and educational harm; still, no one investigated the abuse or reported the abuse to the proper authorities.

72. None of the Defendants ever informed G.A.'s mother of the reports of Ms. R. Johnson's abuse of her son.

73. Principal Cloer left the ISSD and became Executive Director of Human Resources and Auxillary Services for Alexander County Schools on July 30, 2018.

74. Andrew "Andy" Mehall was appointed the new Principal of Cloverleaf Elementary.

**2018-2019 School Year**
*Second Grade*

75. G.A. remained in the separate, segregated EC classroom at Cloverleaf Elementary. Despite knowing of the reports of abuse, Defendant Board assigned Ms. R. Johnson as his teacher.

76. With more frequency and intensity, Ms. R. Johnson continued to physically and emotionally abuse G.A.—just as she had in first grade.

77. Upon information and belief G.A. continued to be inappropriately disciplined for behaviors for which his non-disabled peers were not disciplined and

through the use of aversive techniques, which his non-disabled peers did not have to endure.

78. During this same school year, on September 11, 2018, an SRO at the Pressly School in the ISSD handcuffed, held down, and taunted another autistic student for around twenty-five minutes while a teacher sat and watched.[11] Upon information and belief, no ISSD employee reported the incident and no corrective action was taken until the child's parent filed a federal lawsuit.

79. Ms. R. Johnson continued to verbally abuse G.A.

80. Due to Ms. R. Johnson's abuse, G.A. began exhibiting school refusal behaviors and his maladaptive behaviors continued to escalate.

81. G.A.'s maladaptive behaviors were exacerbated by his below average functional communication skills. His limited communication skills led to G.A. being unable to effectively communicate the ongoing abuse to his mother R.A.[12]

82. In February 2019, for the first time, G.A. reported to his mother Ms. R. Johnson had put her hands over his mouth and he had been unable to breathe. R.A. immediately went to school to speak with Ms. R. Johnson. Ms. R. Johnson informed G.A.'s mother that she did this to stop him from disturbing the non-disabled students on their hallway. R.A. reported this incident to Principal Mehall.

---

[11] Latos, Allison, "Mother files lawsuit after school resource officer handcuffs 7-year-old son with autism." WSOCTV.com; https://www.wsoctv.com/news/local/mother-files-lawsuit-after-school-resource-officer-handcuffs-7-year-old-son/BGKZ2ZQAOVDFPA7TVNGIV3UARQ/
[12] Supra note 1.

83. Principal Mehall had a statutory duty to report the suspected abuse to the Director of Social Services. Additionally, Principal Mehall had a duty to report the suspected abuse to the State Superintendent of Public Instruction. Upon information and belief, Principal Mehall chose to do neither.

84. Later that spring, G.A. broke part of his desk when he was having a behavioral meltdown. As a consequence, Ms. R. Johnson refused to give him a desk and required he remain standing all day within a taped area on the floor where his desk had been. G.A. was unable to access his education as he stood crying.

85. G.A. came home that day with his shirt wet from crying. When R.A. asked Ms. R. Johnson what happened, she reported the punishment was necessary to teach him a lesson about respecting school property, and G.A. would need to earn back his desk privileges.

86. R.A. reported her concerns to Principal Mehall. Upon information and belief, Principal Mehall did not conduct an investigation into R.A.'s concerns or take any corrective action to prevent G.A.'s abuse. Instead, Principal Mehall allowed Ms. R. Johnson to withhold G.A.'s desk and agreed that G.A. needed to earn it back.

87. Upon information and belief, after R.A.'s report, Ms. Johnson never returned G.A.'s desk during the school year and forced him to stand as punishment for his disability-related behaviors.

88. On one occasion, G.A. returned home from school with his hair full of grease and his clothes ruined. When G.A.'s mother asked Ms. R. Johnson what

happened, Ms. R. Johnson reported she had accidentally spilled the hot juice and grease from her lunch of collard greens on G.A.'s head after heating it up in the microwave.

89.     G.A.'s scalp was scalded from the incident.

90.     Upon information and belief, Defendant Board, Superintendent Johnson, Associate Superintendent Lesane, and EC Director McClenahan knew of Ms. R. Johnson's ongoing abuse of G.A.

## 2019-2020 School Year
### *Third Grade*

91.     When G.A. was in third grade, Defendant Board moved Ms. R. Johnson to teach a class of primarily non-verbal preschool students who presumably were unable to verify the abuse.

92.     H.R., a verbal student in Ms. R. Johnson's preschool class, reported to his parents that Ms. R. Johnson also placed him in the trash can/recycle bin. According to H.R.'s mother, upon information and belief, Ms. R. Johnson told H.R. that is what happens to little boys who do not pick up their toys. "If they acted like trash, she would treat them like trash."

93.      Defendant Board relocated G.A.'s segregated class for students with disabilities to Defendant Board's alternative school for students with behavior issues, the Pressly School – the same school where the incident of abuse of a student with autism occurred in the previous school year.

94.     Shortly after G.A. started third grade, and was no longer in Ms. R. Johnson's class, G.A.'s mother spoke to Joseph Benedetti, the parent of another student

who had also previously been in Ms. R. Johnson's class and was now in G.A.'s segregated class at Pressly School.

95. Mr. Benedetti informed G.A.'s mother that his disabled son recently told him that Ms. R. Johnson put students in the trashcan/recycle bin and told them "if [they] acted like trash, [she] would treat [them] like trash."

96. When R.A. asked G.A. about the trashcan/recycle bin, G.A. began recounting the various ways Ms. R. Johnson abused him. G.A. told his mother that Ms. R. Johnson told him that his mother asked Ms. R. Johnson to do these things to him to help with his anger.

97. Mr. Benedetti went immediately to the Pressly School and reported these concerns to Ryan Feemster, a contracted therapist with Children's Hope Alliance, who worked with students in a day treatment program at Pressly School.

98. Mr. Feemster questioned other students previously in Ms. R. Johnson's class who confirmed the abuse.

99. Mr. Feemster, who was not an employee of Defendant Board, reported the abuse to the Iredell County Sherriff's Office. For the first time, R.A. was notified of the allegations of abuse, and the police began an investigation.

100. On September 23, 2019, the IEP team decided G.A. was no longer allowed to attend school on a daily basis due to his maladaptive behaviors which had intensified over the past year as a result of the abuse.

101. Due to Defendant Board's refusal to allow G.A. access to school except for two (2) hours—and then one (1) hour—each week[13], R.A. was forced to stop working.

102. On October 17, 2019, the Iredell County Sheriff's Office issued a warrant for Ms. R. Johnson's arrest based on her abuse of G.A.

103. On October 18, 2019, R.A. provided Defendant Board with medical documentation from G.A.'s therapist stating that G.A. was suffering from school-related trauma as he "was put in trash can by abusive teacher at school."

104. On October 22, 2019 Defendant Board and Superintendent Johnson reported to the media Ms. R. Johnson had been placed on paid administrative leave pending an investigation presumably regarding the abuse of G.A. that had been reported for years.

105. G.A. continued to flounder at home, with almost no access to education, as well as had ongoing behavioral issues due to the trauma of Ms. R. Johnson's abuse.

106. On March 3, 2020, Ms. R. Johnson pleaded guilty in Iredell District Court to two counts of Assault on a Handicapped Person.

107. Ms. R. Johnson's plea agreement placed her on deferred prosecution and supervised probation until September 1, 2021. During this period, she was to have no contact with G.A. or his family except for an apology letter she wrote which was provided to Plaintiffs through the District Attorney.

---

[13] The ISSD school day is six and half (6.5) hours—five (5) days per week.

108.   Defendant Board reported to G.A.'s mother that Defendant Board fired Ms. R. Johnson for her actions.

109.   Only after G.A.'s mother retained an attorney who requested G.A.'s records from Defendant Board did Defendant Board convene an IEP team meeting to discuss G.A.'s lack of access to educational services.

110.   Superintendent Brady Johnson retired on June 30, 2020.

## 2020-2021 School Year
### *Fourth Grade*

111.   Although Defendant Board had reported to R.A. that it fired Ms. R. Johnson, according to Defendant Board's website, Defendant Board, in fact, continued to employ Ms. R. Johnson and allow her access to disabled children.

112.   According to Defendant Board's website, Ms. R. Johnson worked at Defendant Board's school, Third Creek Middle School, as a special education teacher, while she remains on court-mandated probation due to her abuse of G.A.[14]

113.   Around the beginning of November 2020, Associate Superintendent Lesane resigned her position in the ISSD and accepted a position in Durham Public Schools as Assistant Superintendent of Human Resources.

114.   Defendant Board did not remove Ms. R. Johnson from her position as a special education teacher, as documented by its own website, until the original complaint was filed in this case.

---

[14] Supra note 6.

## CAUSES OF ACTION AND CLAIMS FOR RELIEF

### COUNT I
**Discrimination Based on Disability in Violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 et seq.**

**(Defendant Board in its official capacity)**

115. Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

116. Plaintiff G.A. is a "handicapped person" as defined by the regulations of Section 504 of the Rehabilitation Act ("Section 504") and is otherwise qualified to attend school is Defendant Board's school district. 34 C.F.R. § 104(3)(j)(1); 34 C.F.R. § 103(3)(1)(2).

117. Section 504 applies to each recipient of federal financial assistance from the Department of Education and to the program or activity that receives such assistance. 34 C.F.R. § 104.2. Defendant Board is a "recipient of Federal financial assistance from the Department of Education" that operates a program or activity as defined by the regulations of Section 504. 34 C.F.R. § 104.38; 34 C.F.R. 104.34.

118. Section 504 of the Rehabilitation Act of 1973 ("Section 504") prohibits public entities, including local educational agencies (LEAs), from "exclud[ing] from the participation in, [ ] den[ying] the benefits of, or [ ] subject[ing] to discrimination" any otherwise qualified person with a disability from any program or activity receiving federal financial assistance solely by reason of her or his disability. 29 U.S.C. § 794(a).

119. From G.A.'s enrollment in the ISSD, Defendant Board discriminated against G.A. by excluding him from participation in a program and denying him the benefits of a program solely on the basis of his disability.

120. Defendant Board knew Plaintiff was being abused by his classroom teacher and the abuse precluded him from accessing his education. By way of example, and not limitation, the abuse during instructional time included:

    a) Taking G.A.'s desk away due to disability related behaviors;

    b) Forcing G.A. to stand all day in a taped-off square away from peers due to his disability related behaviors;

    c) Placing G.A.in a trash container to punish him for disability related behaviors;

    d) Smothering G.A. by holding him down and placing a hand over his mouth and nose in response to his disability related behaviors; and

    e) Emotionally abusing G.A.

121. Upon information and belief, Defendant Board knew the abuse caused G.A.'s behaviors to deteriorate causing additional abuse by Ms. R. Johnson as well as a further loss of instructional time thus denying G.A.'s access to his education.

122. Defendant Board's failure to address the abuse and discriminatory practices employed against G.A. that differed from the treatment of his nondisabled peers demonstrates gross misjudgment and departs from all standards of professional judgment.

123. Defendant Board acted in bad faith when it failed to properly investigate or

report the abuse of G.A. by his classroom teacher due to his disability related behaviors although it is required by law and its own policy to do so.

124. Defendant Board acted in bad faith and with gross misjudgment when it allowed Ms. R. Johnson to continue teaching in the 2018-2019, 2019-2020, and 2020-2021 school years despite the reports of abuse.

125. Defendant Board acted in bad faith and with gross misjudgment when it moved Ms. R. Johnson to a preschool classroom with many non-verbal students in the 2019-2020 school year where, according to a parent of preschooler H.R., Ms. R. Johnson continued the same pattern of abuse.

126. Defendant Board is vicariously liable for the bad faith actions and gross misjudgment of its subordinates including:

  a) Failing to report, investigate, or take other corrective action after learning of G.A.'s abuse by his classroom teacher;

  b) Allowing G.A. to be subjected to recurring physical and emotional abuse by his classroom teacher due to his disability related behaviors;

  c) Limiting G.A.'s access to school and educational services to two (2) hours—and then further limiting to one (1) hour—of services per week due to his disability related behaviors, which were exacerbated by the abuse; and

127. Defendant knew the abuse of G.A. by his classroom teacher denied him equal access to education as his similarly-situated peers including:

  a) G.A. was punished and denied the use of a desk due to his disability

related behaviors, which precluded him from accessing instruction;

b)      G.A.'s instructional time was limited for behaviors such as yelling or non-compliance;

c)      G.A. was punished, placed in a trash container, and denied access to his education due to disability-related behaviors; and

d)      G.A.'s maladaptive behaviors increased due to the abuse thereby causing a vicious cycle of disability-related behaviors, abuse, and removal from school.

128.    As a direct and proximate result of Defendants' discrimination based on G.A.'s disability, Plaintiffs sustained, and continue to sustain, damages in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00), the amount to be determined at trial.  Plaintiffs' damages include, but are not limited to:

a) Past, present and future psychological pain, suffering, and impairment; and

b) Medical bills, counseling, and other costs and expenses for future psychological care; and

c) Attorneys' fees.

## COUNT II
**Discrimination Based on Disability in Violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.**

**(Defendant Board in its official capacity)**

129.    Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

130. G.A. is a "qualified individual with a disability," as defined by the ADA, 42 U.S.C. § 12131(2).

131. Defendant Board is a "public entity" within the meaning of the ADA. 42 U.S.C. § 12131(2).

132. Title II of the ADA and Section 504 are closely related, and "there is no significant difference in the analysis of rights and obligations created by the two Acts." *K.M. v. Tustin Unified Sch. Dist.*, 725 F.3d 1088 (9th Cir. 2013) (quoting *Vinson v. Thomas*, 288 F.3d 1145, 1152 n.7 (9th Cir. 2002)).

133. Title II of the ADA states "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132.

134. Defendant Board discriminated against G.A. by excluding him from participation in a program and denying him the benefits of the services, programs, and activities of a public entity, the ISSD, was motivated by his disability, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12132.

135. Defendant allowed the abuse and punishments of G.A. that were motivated by his disability although his nondisabled peers did not experience the same punishments for similar behaviors. By way of example and not limitation, his non-disabled peers were not held down and smothered for yelling in a classroom. Likewise, his non-disabled peers did not have their desks taken

away and were not forced to stand all day for misbehavior and were not placed in a trashcan.

136. As a direct and proximate result of Defendants' discrimination based on G.A.'s disability, Plaintiffs sustained, and continue to sustain, damages in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00), the amount to be determined at trial. Plaintiffs' damages include, but are not limited to:

    a) Past, present and future psychological pain, suffering, and impairment; and

    b) Medical bills, counseling, and other costs and expenses for future psychological care; and

    c) Attorneys' fees.

### COUNT III
**Violation of the Fourteen Amendment**
**Substantive Due Process**
**42 U.S.C. § 1983**

**(Defendant Board, in its official capacity, and Superintendent Johnson, Associate Superintendent Lesane, Principal Cloer, Principal Mehall, and Ms. R. Johnson, in their individual capacities)**

137. Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

138. Pursuant to 42 U.S.C. § 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper

proceeding for redress."

139. The Fourteenth Amendment to the United States Constitution provides in pertinent part that no State shall "deny to any person within its jurisdiction the equal protection of the laws" or "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

140. "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).

141. Additionally, G.A., a child with a disability, has statutorily protected rights provided by Section 504 and Title II of the Americans with Disabilities Act.

142. Deprivations of constitutionally [and statutorily] protected rights may arise due to "governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).

143. "[P]olicy or custom may possibly be inferred from continued inaction in the face of a known history of widespread constitutional deprivations on the part of [government] employees, *see Wellington v. Daniels*, 717 F.2d 932 (4th Cir. 1983) (police brutality), or, under quite narrow circumstances, from the manifest propensity of a general, known course of employee conduct to cause

constitutional deprivations to an identifiable group of persons having a special relationship to the state." *Milligan v. City of Newport News*, 743 F.2d 227 (4th Cir. 1984); *see also Avery v. County of Burke*, 660 F.2d 111 (4th Cir. 1981).

144. There are four (4) ways to allege a policy or custom:

> Through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission . . . that manifest[s] deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*Oliver v. Baity*, 208 F. Supp.3d 681, 689 (M.D.N.C. 2016) (internal quotation marks omitted)

145. Pursuant to 42 U.S.C. § 1983, "persons" acting under color of state law who violate the United States Constitution may be sued. Federal law, not state law, determines whether a governmental body qualifies as a "person" subject to suit under § 1983.

146. A government actor's conduct may rise to the level of a substantive due process violation if the conduct is arbitrary or conscience shocking. *Collins v. City of Harker Heights*, 503 U.S. 115, 116 (1992); *see also Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 251 (2d Cir. 2001) (holding substantive due process claims against individual defendant and school district could move forward as student had "constitutional 'right to be free from the use of excessive force' in the 'non-seizure, non-prisoner context'" in school").

147. A government actor may be liable for harm caused by a "state created danger" if there was 1) foreseeable and direct harm; 2) conscience shocking conduct; 3)

a foreseeable victim; and 4) state officials engaged in affirmative acts or inaction that placed a student "position of danger . . . and then fail[ed] to protect him." *L.R. v. Sch. Dist. of Philadelphia*, 60 F. Supp. 3d 584, 593-94 (E.D. Pa. 2014), aff'd, 836 F.3d 235 (3d Cir. 2016).

148. Defendants were at all relevant times members of the ISSD Board of Education or employees of ISSD and persons acting under color of state law, empowered and required by the State of North Carolina to, among other things, ensure an open and safe environment for educational services, free from abuse and disability-based discrimination.

149. Under the Fourteenth Amendment, G.A. had the right, as a public-school student, to personal security, bodily integrity, and equal access to an educational environment free from harassment.

150. G.A. has a right to his bodily integrity and to be free from physical abuse, excessive force, and emotional abuse while at the ISSD.

151. G.A. had his bodily integrity violated when he was abused by his classroom teacher while in school. The abuse served no educational purpose.

152. Upon information and belief, from 2017-2019, Ms. R. Johnson's abuse of G.A. was reported on multiple occasions to Defendant Board, Superintendent Johnson, Associate Superintendent Lesane, EC Director McClenahan, Principal Cloer, and Principal Mehall.

153. Upon information and belief, Ms. R. Johnson's abuse was reported to Principal Cloer when G.A. was in first grade by Jennifer Bender, a teacher who

witnessed the physical and emotional abuse of G.A., which continued to occur over a two (2) year period without Defendants investigating the abuse, reporting the abuse, or taking any corrective action.

154. The abuse included, but was not limited to, Ms. R. Johnson stuffing G.A. in a trash container, holding G.A. down and smothering him, telling G.A. if he "acted like trash, we would be treated like trash," and spilling hot collard greens on his head and body causing burns.

155. This abuse perpetuated upon G.A. by Ms. R. Johnson is conscience shocking and would horrify any rational person. ISSD's failure to take any action to stop the abuse and prevent the future abuse of G.A.—even after multiple officials with decision-making authority were informed of the abuse—was deplorable and knowingly created a dangerous classroom where, segregated from nondisabled students, the abuse could be concealed.

156. Any rational principal, EC Director, Associate Superintendent, Superintendent, or Board would have taken immediate action to stop the abuse of G.A. by his classroom teacher as well as take action to prevent future abuse.

157. The recurring, continued abuse of G.A. was foreseeable as administrators had received multiple reports from staff and R.A. about Ms. R. Johnson's conduct. G.A. was a foreseeable victim as the reports explicitly related to Ms. R. Johnson's abuse of G.A. in the classroom.

158. Aware of the danger to G.A., Defendants took no corrective action in first grade; thereby ratifying Ms. R. Johnson's conduct and allowing the continued abuse

of G.A., and reportedly other disabled students.

159. Defendants knew G.A., as a special education student, would continue to be in Ms. R. Johnson's class for the second grade; however, no action was taken to remove him from her care. To the contrary, Defendants placed him in her care for second grade in the face of known reports of abuse. Defendants then placed other disabled students in her care after G.A. was reassigned to another school.

160. Defendants knew G.A.'s maladaptive behaviors were worsening as a result of the abuse in school; yet Defendant effectively punished G.A. and his mother by removing him from school for almost the entire school week thus forcing his mother to quit her job and lose her income to take care of him.

161. When R.A. reported the abuse to Principal Mehall in second grade, administrators again turned a blind eye, took no corrective action, and allowed the abuse to continue.

162. G.A. was denied his property right to his education in a North Carolina public school by his repeated removals from academic instruction due to the abuse and then a long-term removal from daily academic instruction. By way of example:

   a) G.A. was denied his property right to education when his desk was removed during school hours and he was forced to stand while he cried from the pain.

   b) G.A. was further denied his property right to education when the Defendants limited his access to two (2) hours—and then further limited

to one (1) hour—per week of instruction based on his maladaptive behaviors, which worsened due to his abuse by Ms. R. Johnson.

163. Both Principal Cloer and Principal Mehall failed to report G.A.'s abuse by Ms. R. Johnson to the proper authorities as required by North Carolina General Statute Section 115C-400 and ISSD Board Policies 4040 and 4240.

164. Upon information and belief, although Principals Cloer and Mehall supervised Ms. R. Johnson, they failed to take any corrective action including, but not limited to, investigating the allegations, observing Ms. R. Johnson's classroom, removing Ms. R. Johnson from the classroom, reporting the abuse to the Director of Social Services or the State Board of Education. These failures directly led to Ms. R. Johnson's continued abuse of G.A., and reportedly other disabled students, at school.

165. Upon information and belief, not a single Defendant reported G.A.'s abuse to proper authorities as required by North Carolina General Statute Section 115C-400, thus demonstrating the Board's deliberate indifference to such abuse.

166. Defendant Board knew its subordinates had violated G.A.'s constitutional rights to the following:

    a) Bodily integrity; and

    b) Property right to his education.

167. Defendant Board established a custom, policy, and practice of failing to enforce federal and state law requirements as well as ISSD Board Policy by:

1. Failing to report abuse to the proper authorities as required under North Carolina General Statute § 115C-400, and ISSD Board Policies 4040 and 4240/7312;

2. Failing to investigate reports of child abuse;

3. Demonstrating its deliberate indifference to the abuse;

4. Continuing to employ Ms. R. Johnson and assign her to work with disabled students;

5. Failing to report teacher misconduct to the State Board of Education;

6. Failing to report the abuse allegations to G.A.'s mother; and

7. Failing to take any other corrective action to prevent G.A., and reportedly other students, from being abused over a two (2) year period.

168. The acts by Defendants constitute a disregard for, and deliberate indifference to, Plaintiff G.A.'s constitutionally protected interests, including his substantive due process right to his property interest in educational benefits and right to bodily integrity under the Fourteenth Amendment to the United States Constitution.

169. As a direct and proximate result of Defendants' discriminatory misconduct, Plaintiffs sustained, and continues to sustain, damages in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00), the amount to be determined at trial. Plaintiff G.A.'s damages include, but are not limited to:

a) Past, present and future physical and psychological pain, suffering, and impairment;

b) Medical bills, counseling, and other costs and expenses for future psychological care;

c) Monetary damages including, but not limited to lost wages, for intentional discrimination; and

d) Attorneys' fees.

<u>COUNT IV</u>
**Violation of the Fourteen Amendment**
**Failure to Supervise & Train**
**42 U.S.C. § 1983**

**(Defendant Board in its official capacity, and Superintendent Johnson, Associate Superintendent Lesane, EC Director McClenahan, and Principal Cloer, Defendant Principal Mehall, in their individual capacities)**

170. Section 1983 liability due to failure to train is established "where it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations involving the exercise of [] discretion, ... [which pattern] could put the municipality on notice that its officers confront the particular situations on a regular basis, and that they often react in a manner contrary to constitutional requirements." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 397 (1989).

171. Additionally, "the unconstitutional consequences of failing to train [can also] be so patently obvious that [an actor] could be liable under § 1983 without proof

of a pre-existing pattern of violations." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

172. A school board may be found to have supervisory liability for a Section 1983 claim if the plaintiff shows "actual or constructive knowledge of a risk of constitutional injury, deliberate indifference to that risk, and 'an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.'" *Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999).

173. Defendant Board failed its duty to supervise and train its subordinates. Upon information belief the Board knew of ongoing violations surrounding the failure to investigate, report, or address G.A.'s abuse by Ms. R. Johnson as well as its subordinates' lack of understanding regarding their duties under the law.

174. Defendant Board, Superintendent Johnson, Associate Superintendent Lesane, Principal Cloer, and Principal Mehall failed to supervise their subordinates by way of example:

   a) Defendants knew of Ms. R. Johnson's abuse of G.A.

   b) Defendants failed to direct the work of their subordinates to ensure compliance with federal, state, and local law in addition to Defendant Board's policies.

   c) The failure to supervise subordinates and ensure G.A.'s abuse was addressed in first grade directly caused the abuse to continue for a two (2) year period and also caused other students to be abused in a

similar manner by Ms. R. Johnson.

    d) As a result of Defendants' failures, G.A. suffered injuries, including:

        1. Physical and verbal abuse while at school;

        2. Loss of instructional time constituting educational harm;

        3. Emotional distress, and ongoing medical issues including a diagnosis of PTSD.

175. Defendant Board, Superintendent Johnson, and EC Director McClenahan failed to train their subordinates to understand their duties and the requirements under Board Policy, state, and federal law.

    a) Defendants knew of Ms. R. Johnson's abuse of G.A. and the violation of his substantive due process rights.

    b) Defendants knew their subordinates were not appropriately trained and did not understand their mandatory reporting duties for child abuse.

    c) Defendants knew G.A.'s was being discriminated against due to his disability.

    d) Defendants knew their subordinates were not appropriately trained and did not understand their responsibilities under the ADA and Section 504.

    e) Defendants took no action to ensure their subordinates were trained even after knowing of allegations of abuse when G.A. was in first grade.

f) The failure to train amounted to deliberate indifference to G.A.'s constitutional right to bodily integrity, as the violations continued for a two (2) year period. Through its indifference Defendants ratified the illegal actions of their subordinates when they failed to report, investigate, or prevent G.A.'s abuse by his classroom teacher.

g) The failure to train amounted to deliberate indifference to G.A.'s right to be free from disability discrimination and have equal access to educational instruction under Section 504 and the ADA. Through its indifference Defendants ratified the illegal actions of their subordinates when they discriminated against G.A. on the basis of his disability and limited G.A.'s access to instruction.

h) Defendant Board established a custom, policy, and practice of failing to train their employees regarding the requirements of state law regarding reporting child abuse. Defendant Board demonstrated this custom, policy, and practice by:

   a. Failing to address the reports of Ms. R. Johnson's abuse of G.A. at school in the first grade;

   b. Failing to take any corrective action or direct its subordinates to take corrective action;

   c. Placing G.A. in Ms. R. Johnson's classroom for second grade where he was the victim of further abuse;

   d. Allowing Ms. R. Johnson to abuse other students in a similar

fashion; and

    e. Continuing to employ Ms. R. Johnson after she pleaded guilty to Assault on a Handicap Person.

  i) Defendant Board established a custom, policy, and practice of failing to train their employees regarding the requirements of state and federal law for Section 504 and the ADA. Defendant Board demonstrated this custom, policy, and practice by:

    1. Knowing G.A. was being denied equal access to his education due to his disability under Section 504 and the ADA;

    2. Failing to provide adequate training in light of foreseeable consequences of G.A. continuing to be discriminated against and denied access to education; and

    3. Ratifying the unreasonable actions of the individual Defendants to continue denying, and further deny, G.A. access to his education in second and third grade.

176. As a direct and proximate result of Defendants' discriminatory misconduct, G.A. sustained, and continues to sustain, damages in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00), the amount to be determined at trial. G.A.'s damages include, but are not limited to:

  a) Past, present and future psychological pain, suffering, and impairment;

  b) Medical bills, counseling, and other costs and expenses for future psychological care;

c) Monetary damages for intentional or purposeful discrimination; and

d) Attorneys' fees.

### COUNT V
**Violation of the Fourteen Amendment**
**Equal Protection**
**42 U.S.C. § 1983**

**(Defendant Board in its official capacity)**

177. Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

178. Under the Fourteenth Amendment, G.A. has the right as a public-school student to equal protection of the laws.

179. Defendant Board intentionally discriminated against G.A. on the basis of his disability and prevented him from receiving equal access to education when it turned a blind eye to G.A.'s physical and emotional abuse by his teacher Ms. R. Johnson, which severely limited his access to his education.

180. Defendant Board knew Ms. R. Johnson was violating G.A.'s constitutional and statutorily protected rights when she repeatedly abused him for two (2) years by way of example and not limitation, she:

   a) Placed G.A., and reportedly other disabled students, in trash containers;

   b) Smothered G.A. by holding a hand over his mouth and nose;

   c) Spilled hot collard greens and juice on G.A.'s head;

   d) Refused to allow G.A. to use a desk and requiring him to stand the entirety of the day;

   e) Told G.A. his mother condoned the abuse at school; and

43

     f) Told G.A. "if he acted like trash, he would be treated like trash."

181. Upon information and belief, similarly-situated elementary school students who were not disabled were not subjected to repeated physical or emotional abuse by their classroom teacher.

182. Furthermore, upon information and belief, unlike G.A., Defendant Board investigated and reported to appropriate authorities any reports of abuse by a classroom teacher of non-disabled students.

183. When G.A. displayed disability-related behaviors exacerbated by the trauma he experienced due to the ISSD's failure to address his abuse by a classroom teacher, Defendant Board removed him from school, denied him access to peers, and only provided two (2) hours of access to instruction per week.

184. Many of G.A.'s behaviors, including yelling and non-compliance, were behaviors also displayed by his non-disabled peers who were not removed from school, not denied access to peers, and not limited to two (2) hours of access to instruction per week.

185. There was no rational basis for treating G.A. in a disparate manner.

186. As a direct and proximate result of Defendants' discriminatory misconduct, Plaintiff G.A. sustained, and continues to sustain, damages in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00), the amount to be determined at trial. Plaintiff G.A.'s damages include, but are not limited to:

     a) Past, present and future physical and psychological pain, suffering, and impairment;

b) Medical bills, counseling, and other costs and expenses for future psychological care;

c) Monetary damages for intentional or purposeful discrimination; and

d) Attorneys' fees.

## COUNT VI
### Violation of the Fourteen Amendment
### Conspiracy to Commit Deprivation of Civil Rights
### 42 U.S.C. § 1983

**(Defendant Board in its official capacity, and Superintendent Johnson, Associate Superintendent Lesane, EC Director McClenahan, and Principal Cloer, Defendant Principal Mehall, in their individual capacities)**

187. "In a conspiracy claim under Section 1983, there must be a showing that the defendants conspired or acted jointly or in concert and that some overt act was done in furtherance of the conspiracy, which resulted in plaintiff being deprived of the constitutional right." *Hafner v. Brown*, 989 F.2d 570, 577 (4th Cir. 1992).

188. Defendant Board, Superintendent Johnson, Associate Superintendent Lesane, EC Director McClenahan, Principal Cloer, and Principal Mehall conspired to hide G.A.'s abuse by Ms. R. Johnson by way of example:

j) Defendants knew of Ms. R. Johnson's abuse of G.A. and the violation of his constitutional rights to bodily integrity and his property right to education.

k) In the first grade, Ms. Jennifer Bender reported Ms. R. Johnson's abuse to Principal Cloer who in turn reported it to higher

administrators in the ISSD;

l) Although the abuse allegations were reported at multiple levels within the ISSD, Defendants failed to further investigate, report to the proper authorities, or take corrective action address the reports of Ms. R. Johnson's abuse of G.A. at school;

m) Defendants never informed R.A. of the allegations of abuse in the first grade;

n) Defendants also failed to report, investigate, or address the abuse of another student with autism by the SRO at the Pressly School;

o) Upon information and belief, Defendants knew reporting the abuse of G.A. by his classroom teacher, or the abuse of other students, would open the ISSD to legal liability;

p) Defendants placed G.A. and other disabled students in Ms. R. Johnson's classroom for second grade;

q) Unsurprisingly, G.A. continued to be abused in the second grade by Ms. R. Johnson as were other students in his classroom;

r) R.A. spoke to Ms. R. Johnson about incidents in the classroom in second grade and reported the abuse to Principal Mehall;

s) Defendants again failed to investigate, report, or address the reports by R.A. of Ms. R. Johnson's abuse of G.A. in the second grade;

t) Defendants informed R.A. that Ms. R. Johnson's actions, including but not limited to, withholding G.A.'s desk, were appropriate;

u) Defendants moved Ms. R. Johnson to a classroom with mostly non-verbal students in the following school year;

v) Students in this classroom were also abused by Ms. R. Johnson;

w) A third party counselor reported the abuse allegations to the Iredell County Sheriff's Department rather than Defendants, although they had received reports of abuse over two (2) years;

x) Defendants denied knowing of Ms. R. Johnson's abuse of G.A. and other students after her arrest in October 2019;

y) Defendant continued to employ Ms. R. Johnson after she pleaded guilty to Assault on a Handicap Person in March 2020;

z) Defendant Board established a custom, policy, and practice of engaging and encouraging conspiracy to conceal child abuse in the ISSD. Defendant Board demonstrated this custom, policy, and practice by:

   a. Failing to address the reports of Ms. R. Johnson's abuse of G.A. at school in the first grade;

   b. Failing to address the reports of abuse of another student by an SRO;

   c. Failing to take any corrective action or direct its subordinates to take corrective action for either G.A. or the other student;

   d. Placing G.A. in Ms. R. Johnson's classroom for second grade where he was the victim of further abuse;

e.  Allowing Ms. R. Johnson to abuse other students in a similar fashion; and

f.  Continuing to employ Ms. R. Johnson after she pleaded guilty to Assault on a Handicap Person.

189.  As a direct and proximate result of Defendants' discriminatory misconduct, G.A. sustained, and continues to sustain, damages in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00), the amount to be determined at trial. G.A.'s damages include, but are not limited to:

a)  Past, present and future psychological pain, suffering, and impairment;

b)  Medical bills, counseling, and other costs and expenses for future psychological care;

c)  Monetary damages for intentional or purposeful discrimination; and

d)  Attorneys' fees.


## COUNT VII
### Negligence

**(Defendant Board in its official capacity, and Superintendent Johnson, Associate Superintendent Lesane, EC Director McClenahan, Principal Cloer, and Principal Mehall, and Ms. R. Johnson in their individual capacities)**

190.  Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

191.  Negligence, at common law, contains three elements: (1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach." *Fussell v. N.C. Farm Bureau Mut. Ins. Co.,* 695 S.E.2d 437, 440 (N.C. Sup. Ct. 2010).

192. Defendant Board and Superintendent Johnson, Associate Superintendent Lesane, EC Director McClenahan, Principal Cloer, and Principal Mehall breached their duty to report child abuse under North Carolina General Section 115C-400. 16 NCAC 06C .0312, Board policies 4040 and 4240.

   a) "Any [school personnel] who has cause to suspect child abuse or neglect has a duty to report the case of the child to the Director of Social Services of the county;"

   b) Defendants are mandatory reporters and do not have the authority to exercise discretion upon receipt of a report of abuse;

   c) Defendants knew of Ms. R. Johnson's physical and emotional abuse of G.A.;

   d) Defendants knew of the physical, psychological, and emotional harm the abuse would cause G.A;

   e) Any school employee of reasonable intelligence would know to report the abuse;

   f) None of the Defendants reported G.A.'s abuse to the Director of Social Services; and

   g) As a result of Defendants' failures, G.A. suffered injuries, including, but not limited to:

      1. Continued emotional and physical abuse by Ms. R. Johnson while at school;

      2. Emotional distress as a result of the abuse;

3. G.A. lost access to his education as a result of the abuse; and

4. G.A. receives regular therapy to address the emotional impact of the abuse.

193. Ms. R. Johnson breached her duty of ordinary care to protect students, including G.A., from injury and damage, causing injuries to Plaintiff G.A. Due to Ms. R. Johnson's abusive actions, G.A. lost instructional time constituting educational harm and suffered emotional distress and ongoing medical issues including a diagnosis of PTSD.

194. Defendants' actions and omissions were the proximate cause of G.A.'s injuries, including lost educational opportunity, emotional distress, physical harm, and psychological damage.

195. As a direct and proximate result of Defendants' negligence, Plaintiff G.A. sustained, and continues to sustain, damages in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00), the amount to be determined at trial. Plaintiff G.A.'s damages include, but are not limited to:

a) Punitive damages;

b) Past, present and future psychological pain, suffering, and impairment;

c) Medical bills, counseling, and other costs and expenses for future psychological care; and

d) Attorneys' fees.

## COUNT VIII
### Negligent Infliction of Emotional Distress

### (Superintendent Johnson, Associate Superintendent Lesane, EC Director McClenahan, Principal Cloer, Principal Mehall, and Ms. R. Johnson in their individual capacities)

196. Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

197. A defendant is liable for negligent infliction of emotional distress when "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . . , and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Acosta v. Byrum*, 180 N.C. App. 562, 667 (2006) (*quoting R. Johnson v. Ruark Obstetrics,* 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990)).

198. Ms. R. Johnson negligently engaged in conduct that was reasonably foreseeable to cause G.A. severe emotional distress and did, in fact, cause G.A. severe emotional distress, when she physically and emotionally abused G.A. By way of example and not limitation, Ms. R. Johnson:

    a) Smothered G.A. on multiple occasions by holding him on the floor with her hands over his mouth and nose;

    b) Told G.A. that his mother wanted Ms. R. Johnson to abuse him in order to help with his anger;

    c) Placed G.A. in a trash can/recycle bin from which he was unable to get out on multiple occasions;

    d) Told G.A. "if he acted like trash [she] would treat him like trash";

    e) Forced G.A. to stand the entire day, after his desk broke, causing him to cry from the pain of standing so long; and

    f) Purposefully spilled food on him and ruined his clothes.

199. Superintendents Johnson, Associate Superintendent Lesane, EC Director McClenahan, Principal Cloer, and Principal Mehall negligently engaged in conduct and failed to follow a duty of conduct imposed by law, i.e., the duty of ordinary care, to protect Plaintiff G.A. from injury and damage, when they knew of Ms. R. Johnson's abuse of G.A., failed to intercede, failed to investigate, and took no remedial steps to prevent it from re-occurring.

200. Defendants failed to follow that degree of care that a reasonable and prudent person would use under the same or similar circumstances.

201. G.A. suffered severe emotional distress as a result of Defendants' failures including, but not limited to:

    a) G.A.'s aversion to attending school;

    b) G.A. being diagnosed with PTSD;

    c) G.A.'s increased maladaptive behaviors to the extent that he was not allowed to attend school;

    d) G.A.'s more violent behaviors towards others at school and home; is more easily agitated; cries more often; and

    e) The need for regular therapy appointments with a licensed clinical psychologist.

202. Defendants' negligence was a proximate cause of G.A.'s severe emotional distress, which Defendants should have foreseen as the natural and continuous sequence of their negligent actions.

203. As a direct and proximate result of Defendants' negligent infliction of emotional distress G.A. sustained, and continues to sustain, damages in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00), the amount to be determined at trial. G.A.'s damages include, but are not limited to:

   a)  Punitive damages;

   b)  Past, present and future psychological pain, suffering, and impairment;

   c)  Medical bills, counseling, and other costs and expenses for future psychological care; and

   d)  Attorneys' fees.

### COUNT IX
### False Imprisonment

**(Defendant R. Johnson in her individually named capacity)**

204. Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

205. The court in *Wilkerson v. Duke Univ.*, 229 N.C. App. 670, 674 (2013) addressed the standard for claims of false imprisonment as such:

> False imprisonment is the restraint of a person where the restraint is both unlawful and involuntary. *Black v. Clark's Greensboro, Inc.,* 263 N.C. 226, 228, 139 S.E.2d 199, 201 (1964). The elements of false imprisonment include: "(1) the illegal restraint of plaintiff by defendant, (2) by force or implied threat of force, and (3) against the plaintiff's will." *Rousselo v. Starling,* 128

N.C.App. 439, 449, 495 S.E.2d 725, 732 (1998). "The restraint requirement of this action requires no appreciable period of time, simply sufficient time for one to recognize his illegal restraint. The tort is complete with even a brief restraint of the plaintiff's freedom." *West v. King's Dep't Store, Inc.,* 321 N.C. 698, 703, 365 S.E.2d 621, 624 (1988).

206. G.A. was involuntarily imprisoned in a trash can by Defendant R. Johnson.

207. Ms. R. Johnson held G.A. down covering his mouth and nose and refused to allow him to get up.

208. As a direct and proximate result of Defendant's false imprisonment, Plaintiff G.A. and Plaintiff R.A. sustained, and continues to sustain, damages in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00), the amount to be determined at trial. Plaintiffs' damages include, but are not limited to:

   a) Punitive damages

   b) Past, present and future psychological pain, suffering, and impairment; and

   c) Medical bills, counseling, and other costs and expenses for future psychological care; and

   d) Attorneys' fees.

## CONCLUSION

NOW THEREFORE, Plaintiffs respectfully request that judgment be entered in their favor and against Defendant Iredell-Statesville District Schools Board of Education and Defendants Superintendent Johnson, Associate Superintendent Lesane, EC Director McClenahan, Principal Cloer, Principal Mehall, and Ms. R. Johnson.

## JURY DEMAND

Now Come the Plaintiffs, by and through their attorneys, and demand a trial by jury.

Respectfully submitted this the  2nd   day of  February, 2021.

/s/ Stacey Gahagan
Stacey Gahagan
N.C. State Bar No. 44393
Gahagan Paradis, PLLC
3326 Durham Chapel Hill Boulevard, Suite 210-C
Durham, North Carolina 27707
(919) 942-1430
sgahagan@ncgplaw.com