**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:20-CV-00192-KDB-DSC**

| | |
|---|---|
| **C.G.A. ("G.A."), by and through his parent and guardian R.A., and R.A. individually,** | ) ) ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **IREDELL-STATESVILLE SCHOOL DISTRICT BOARD OF EDUCATION, et. al.,** | ) ) ) |
| | ) |
| **Defendants.** | ) |

---

**MEMORANDUM AND RECOMMENDATION**

**THIS MATTER** is before the Court on Defendants' "Motion[s] to Dismiss" (documents ##20, 24, 26, and 29) and the parties' briefs and exhibits.

The Motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and are ripe for disposition.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendants' Motions to Dismiss be <u>granted in part</u> and <u>denied in part</u> as discussed below.

## I. <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

Accepting the factual allegations of the Amended Complaint as true, Plaintiff G.A. is a ten-year-old child with autism and a communication disability. Document #3 ¶ 1. G.A. attended Cloverleaf Elementary School in the Iredell-Statesville School System ("ISS"), during his first and

1

second-grade years from 2017 to 2019. Id. ¶¶ 32, 34. Defendant Robin Johnson taught G.A. in a special education classroom throughout his first and second-grade years. Id. ¶¶ 57-58, 75.

During G.A.'s first-grade year, Ms. Johnson placed G.A. in a trash can or recycle bin on multiple occasions and told him that "if he acted like trash, [she] would treat him like trash." Id. ¶¶ 60-61. Ms. Johnson also restrained G.A. on the floor, covering his mouth and nose to prevent him from screaming and breathing. Id. ¶ 62. When G.A.'s mother, R.A., confronted Ms. Johnson about this conduct in February 2019, the teacher told her that this was done to treat G.A.'s "maladaptive behaviors." Id. ¶ 65.

Later that year, an ISS teacher, Jennifer Bender, witnessed abuse and reported it to Defendant Alicia Cloer, the then-Principal at Cloverleaf Elementary School. Id. ¶¶ 3, 38, 66. Bender reported that Ms. Johnson put G.A. in a trash can on multiple occasions. See id. Cloer did not investigate Bender's claims or "report the abuse to the proper authorities." Id. ¶¶ 69, 71. Instead, Cloer chose to keep the information within the school system and told Defendants Rhonda McClenahan (Executive Director of Exceptional Children for the ISS), Id. ¶ 37, Brady Johnson (then Superintendent for the ISS), Id. ¶ 35, and Alvera Lesane (then Associate Superintendent of Human Resources for the ISS). Id. ¶ 36.

During G.A.'s second-grade year, Ms. Johnson's emotional and physical abuse intensified and became more frequent. Id. ¶¶ 75-76. In February 2019, G.A. told his mother for the first time that Ms. Johnson placed her hands over his mouth, preventing him from breathing. Id. When R.A. confronted Ms. Johnson about the incident, she claimed it was to prevent G.A. from bothering non-disabled students. Id. R.A. then reported the incident to the new Principal, Defendant Andy Mehall, who failed to report the incident to outside authorities. Id. ¶¶ 82-83.

During the spring of G.A.'s second-grade year, he broke his desk in the midst of a "behavioral meltdown." Id. ¶ 84. He was told to stand for the remainder of the school day on a tape-marked area on the floor where his desk had been. Id. G.A. came home crying in a wet t-shirt and told his mother about the incident. ¶ 85. R.A. told Mehall, who did not investigate the conduct further. Id. ¶ 86. Ms. Johnson took away G.A.'s access to a desk for the remainder of the year to punish him for his behavior. Id. ¶ 87. Later that year, Ms. Johnson spilled hot grease from her lunch on G.A.'s head, burning his scalp. Id. ¶¶ 88-89.

Both G.A. and Ms. Johnson were relocated after G.A.'s second-grade year. Id. ¶¶ 91, 93. The Board moved Ms. Johnson to a class of mostly non-verbal preschool students "who presumably were unable to verify the abuse." Id. ¶ 91. G.A. was moved to ISS' other school "for students with behavior issues, the Pressly School." Id. ¶ 93. A 2018 video previously captured a school resource officer taunting and holding down an elementary-aged student with autism at the Pressly School. Id. ¶ 78.

During G.A.'s third-grade year, other students told their parents that Ms. Johnson had put them in a trash can or recycling bin. Id. ¶ 95. One of those parents told Ryan Feemster, a therapist with Children's Hope Alliance who worked with students at the Pressly School. Id. ¶ 97. Feemster then conducted his own investigation, and former students confirmed the allegations of abuse. Id. ¶ 98. Feemster reported his investigation to the Iredell County Sheriff's Department "which began an investigation and notified R.A." Document #31 at 4; see Document #3 ¶ 99. After being alerted to the Sheriff's investigation, the Board kept G.A. from attending school on a daily basis. Document #3 ¶¶ 100-101. An Individualized Education Program ("IEP") team restricted G.A.'s access to school to two hours and later to one hour each week because of his maladaptive behaviors. Id. ¶¶ 100-101.

On October 17, 2019, the Sheriff obtained a warrant for Ms. Johnson's arrest for the abuse of G.A. Id. ¶ 102. Five days later, the School Board "reported to the media it had placed Ms. [] Johnson on paid administrative leave pending an investigation." Document #31 at 4. Ms. Johnson ultimately pled guilty to two counts of assault on a handicapped person and was placed on supervised probation for eighteen months. Document #3 ¶¶ 104, 114. The Board told R.A. that Ms. Johnson was fired but she continued to work for the ISS "as a special educator until the original complaint was filed in this case." Id. ¶¶ 108, 111, 114.

Plaintiffs bring nine causes of action: (1) discrimination based on a disability under Section 504 of the Rehabilitation Act against the Board, (2) discrimination based on a disability in violation of the Americans with Disabilities Act ("ADA") against the Board, (3) Section 1983 claims for substantive due process violations against the Board, Lesane, Mr. Johnson, Cloer, Mehall, and Ms. Johnson, (4) failure to train against the Board, Lesane, Mr. Johnson, Cloer, Mehall, and McClenahan, (5) equal protection violations against the Board, and (6) conspiracy against the Board, Lesane, Mr. Johnson, Cloer, Mehall, and McClenahan, as well as the state law claims for (7) negligence, (8) negligent infliction of emotional distress against all Defendants, and (9) false imprisonment against Ms. Johnson.

Defendants McClenahan, Cloer, Mehall, and Lesane bring a Motion to Dismiss for lack of subject matter jurisdiction under Rule (12)(b)(1), personal jurisdiction under Rule 12(b)(2), and failure to state a claim under 12(b)(6) as to all claims brought against them. Document #26 at 1. Defendant Board brings a Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim as to all claims brought against it. Document #20 at 1-2. Defendant Mr. Johnson brings a Motion to Dismiss for failure to state a claim as to all the claims brought against him. Document #24 at 1-2. Defendant Ms. Johnson brings a Motion to Dismiss for lack of subject matter

jurisdiction and failure to state a claim as to all claims brought against her. Document #29 at 1. Ms. Johnson alleges that the federal law claims should be dismissed, and that this Court lacks supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1967. Id. at 2.

## II. DISCUSSION

### A. Motions to Dismiss for Lack of Subject Matter and Personal Jurisdiction

Pursuant to Rule 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The presence of subject matter jurisdiction is a threshold issue the court must determine before reaching the merits of a case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). The plaintiff has the burden of proving that subject matter jurisdiction exists. Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The district court should grant a Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. Plaintiff's failure to exhaust administrative remedies under the Individuals with Disabilities Education Act ("IDEA") is properly subject to a motion to dismiss under Rule 12(b)(1). See, e.g., M.M. ex rel. DM v. Sch. Dist. of Greenville Cnty., 303 F.3d 523, 536 (4th Cir. 2002). Under Rule 12(b)(2), Plaintiff bears the burden to establish personal jurisdiction by a preponderance of the evidence. Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989).

Defendants McClenahan, Cloer, Mehall, and Lesane all worked in North Carolina and directed their conduct towards the state. Document #3 ¶¶ 36-39. The Court has personal jurisdiction over these Defendants. The Court has federal question and supplemental jurisdiction over Plaintiffs' claims. Accordingly, the undersigned respectfully recommends that the Motions to Dismiss for lack of personal and subject matter jurisdiction be denied.

**B. Motions to Dismiss for Failure to State a Claim**

**1. Standard of Review**

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. Id. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark [] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'- 'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Sons of Confederate Veterans v. City of Lexington, 722 F.3d 224, 228 (4th Cir. 2013) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). Indeed, where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." Neitzke, 490 U.S. at 328; see also Stratton v. Mecklenburg Cnty. Dept. of Soc. Servs., 521 Fed. Appx. 278, 293 (4th Cir. 2013)). The court must not "accept as true a legal conclusion couched as a factual allegation." Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014).

### 2. Federal Claims

#### a. Section 504 and ADA Claims

Plaintiffs bring claims under Section 504 of the Rehabilitation Act and Title II of the ADA against the Board. Section 504 prohibits public entities that receive federal funding from discriminating and excluding individuals based solely upon their disability. 29 U.S.C. § 794(a). Specifically, Section 504 states that "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the

benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Id.

Title II of the ADA and Section 504 are closely related, and both "prohibit disability-based discrimination against qualified individuals." O.V. v. Durham Pub. Sch. Bd. of Educ., No. 1:17CV691, 2018 WL 2725467, at *23 (M.D.N.C. June 6, 2018), report and recommendation adopted, No. 1:17-CV-691, 2018 WL 3370644 (M.D.N.C. July 10, 2018). And, "there is no significant difference in the analysis of rights and obligations created by the two Acts." K.M. v. Tustin United Sch. Dist., 725 F.3d 1088, 1098 (9th Cir. 2013). Since "the language and purpose of both Acts [are] substantially the same, the same analysis applies to claims brought under both statutes." Doe v. University of Md. Med. Sys. Corp., 50 F.3d 1261, 1264 n. 9 (4th Cir. 1995). To bring a claim under either statute, the plaintiff must establish:

> (1) that [he] has a disability; (2) that [he] is otherwise qualified for the benefit or program in question, and (3) that [he] was excluded from the benefit or program due to discrimination solely on the basis of the disability.

Shirey ex rel. Kyger v. City of Alexandria Sch. Bd., 229 F.3d 1143, 2000 WL 1198054, at *4 (4th Cir. 2000) (unpublished table decision). The two statutes differ in their application of the third element. Under a Section 504 claim, the plaintiff must establish that he was excluded solely on the basis of the disability, while the ADA allows a claim where the disability was a "motivating cause" of the exclusion. Halpern v. Wake Forest Univ. Health Scis., 669 F.3d 454, 462 (4th Cir. 2012) (quoting Baird ex rel. Baird v. Rose, 192 F.3d 462, 468–69 (4th Cir. 1999)).

To prove discrimination under Section 504 in education cases, "something more than a mere failure to provide the 'free appropriate education' required by [IDEA] must be shown." See Sellers by Sellers v. Sch. Bd. of Manassas, 141 F.3d 524, 528–29 (4th Cir. 1998) (quoting Monahan v. Nebraska, 687 F.2d 1164, 1170 (8th Cir. 1982)). The Fourth Circuit recognizes that

"either bad faith or gross misjudgment should be shown before a [Section] 504 violation can be made out, at least in the context of education of handicapped children." Id. at 529 (quoting Monahan, 687 F.2d at 1171). However, "[w]hat constitutes bad faith or gross misjudgment in this context has not been well defined." O.V., 2018 WL 2725467, at *23–24 (quoting K.D. ex rel. J.D. v. Starr, 55 F. Supp. 3d 782, 790 (D. Md. 2014)).

It is well recognized that "[m]ere negligence does not suffice, nor, standing alone, does 'an incorrect evaluation [] or a substantively faulty individualized education plan.'" Id. at *24 (quoting Sellers, 141 F.3d at 529). Courts have found bad faith or gross mismanagement when school officials suddenly decide "to discontinue significant parts of [the child's] educational program, without proper assessments and evaluations," Id. (quoting N.T. v. Balt. City Bd. of Sch. Comm'rs, No. CIV. 11–356, 2011 WL 3747751, at *8 (D. Md. Aug. 23, 2011). Bad faith or gross mismanagement can be established when officials "lied to parents in IEP meetings and relied on such falsehoods in formulating the child's IEP." Id. (citing D.N. v. Louisa Cnty. Pub. Sch., 156 F. Supp. 3d 767, 776–77 (W.D. Va. 2016)).

Plaintiffs argue that the heightened Sellers standard of "bad faith or gross mismanagement" does not apply here. Document #31 at 21. But the exceptions to the Sellers standard are not applicable here since this case does not involve student-on-student misconduct or physical barriers. See Kyger, 2000 WL 1198054, at *5; see also Singletary ex rel. N.M.M. v. Cumberland Cnty. Sch., No. 5:12-CV-744-FL, 2013 WL 4674874, at *8 (E.D.N.C. Aug. 30, 2013) ("The Court recognizes that the heightened Sellers standard is not applicable to a 504 discrimination claim based on these type of factual allegations, though the claim appears to be related to the education of a disabled child, because the crux of Plaintiff's challenge is to physical barriers.").

Plaintiffs cite an unpublished Fourth Circuit decision to support their argument that Sellers does not apply. Kyger, 2000 WL 1198054, at *5. The Fourth Circuit did not apply the Sellers standard in that case because it involved "physical barriers to public programs." Id. The plaintiffs in Kyger sued the school for failure to provide adequate exits for disabled students in the event of an emergency evacuation. Id. The other exception to Sellers is also inapposite here. The Fourth Circuit did not apply the Sellers standard in a case involving student-on-student bullying. See S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty., 819 F.3d 69, 75 (4th Cir. 2016). Therefore, Plaintiffs are required to plead the heightened Sellers standard for their ADA and Section 504 claims.

Plaintiffs have pled enough to survive a motion to dismiss on their Section 504 claim. They properly plead that G.A. is a "handicapped person" for purposes of Section 504 and is otherwise qualified for the program in question as a disabled student seeking the benefit of the school's disability program. 34 C.F.R. § 104(3)(j)(1); § 103(3)(1)(2); Document #3 ¶ 116. Plaintiffs also show that G.A. is a "qualified individual with a disability" under the ADA, and the Board is a "public entity" as defined by the ADA. See 42 U.S.C. § 12131(2); Document #3 ¶¶ 130-131.

The Complaint passes the plausibility standard under Section 504. See, e.g., Q.C. v. Winston-Salem/Forsyth Cnty. Sch. Bd. of Educ., No. 1:19CV1152, 2021 WL 1430697, at *7 (M.D.N.C. Apr. 15, 2021) (plaintiffs alleged that school officials attempted to keep records in a manner that magnified the student's non-compliance to keep the child in a segregated setting and the principal said that he "would have never been accepted had [the school system] known that she had Down syndrome"). Since the ADA's causation requirement only requires the disability to be a "motivating cause" for the discrimination, Halpern, 669 F.3d at 462, this claim is also sufficient to withstand a motion to dismiss.

Plaintiffs allege that G.A. was an autistic child who was placed in a trash can and subjected to different treatment than non-disabled students. ¶¶ 62, 119. They plead that G.A. was denied a desk while non-disabled students did not have their desks removed. Id. ¶ 127. Plaintiffs plead more than the "mere negligence" standard to survive a motion to dismiss because the IEP decisions to "discontinue significant parts of the child's educational program … relied on falsehoods in formulating the child's IEP." O.V., 2018 WL 2725467, at *24 (citing D.N., 156 F. Supp. 3d at 776–77). Taking Plaintiffs' allegations as true, the IEP decision to reduce G.A.'s access to school was based on incomplete and faulty information. While the IEP's decision was based on G.A.'s allegedly disruptive behaviors, they failed to take into account the abusive and corrosive environment Ms. Johnson created for G.A. Taking Plaintiffs' allegations as true, Ms. Johnson's conduct exacerbated G.A.'s disruptive behaviors. It is reasonable to conclude that a child, let alone a child with a disability, would react to being repeatedly put in a trash can and held down on the floor against his will, having his mouth and nose covered by his teacher.

Plaintiffs plead that Cloer, McClenahan, Mr. Johnson, and Lesane knew about Bender's complaint about Ms. Johnson's conduct in G.A.'s first-grade class. While Plaintiffs allege that high-ranking ISS school officials knew about Bender's complaint, there is no indication that a single Board member was informed. Document #21 at 3. Hence, the Board argues that Plaintiffs' ADA and Section 504 claims are dependent on the vicarious liability doctrine to hold it liable for school officials' failure to investigate Ms. Johnsons' alleged abuse. The IEP's decision to limit G.A.'s access to school was based on misinformation and a failure to investigate the accusations against Ms. Johnson. To impute Cloer, McClenahan, Lesane, and Mr. Johnson's failure to investigate to the Board, Plaintiffs must rely on agency theory.

But unlike Section 1983 claims, Plaintiffs are not required to plead discrimination by the final policymaker. See Rosen v. Montgomery Cnty. Md., 121 F.3d 154, 157 (4th Cir. 1997); see also Delano-Pyle v. Victoria Cnty., 302 F.3d 567, 575 (5th Cir. 2002). Under the ADA and Section 504, "liability may be imposed on a principal for the statutory violations of its agent." Rosen, 121 F.3d at 157 n. 3. The Board's agents failed to comply with North Carolina law by not reporting the allegations of abuse. N.C. Gen. Stat. § 115C-400 (2021) ("Any person who has cause to suspect child abuse or neglect has a duty to report the case of the child to the Director of Social Services of the county."). Accepting Plaintiffs' allegations as true, the failure of the Board's agents to investigate and address the allegations of abuse evidences bad faith or gross mismanagement under the ADA and Section 504 and show more than a mere failure to provide a "free appropriate education." See Sellers, 141 F.3d at 528–29.

### (1). Exhaustion Not Required

The Board argues that Plaintiffs must exhaust their administrative remedies under the IDEA, 20 U.S.C. § 1400. The IDEA exhaustion requirement applies to Section 504, ADA, and Section 1983 claims. The IDEA establishes "a system of administrative review before any claims arising under it may be pursued in state or federal court." O.V., 2018 WL 2725467, at *13 (quoting E.L. ex rel. G.L. v. Chapel Hill–Carrboro Bd. of Educ., 975 F. Supp. 2d 528, 531 (M.D.N.C. 2013)). In determining whether exhaustion is required because plaintiffs allege merely a failure to provide a free and appropriate education ("FAPE"), the court looks to the "gravamen of the plaintiff's complaint, setting aside any attempts at artful pleading." Fry v. Napoleon Cmty. Sch., 137 S. Ct. 743, 747 (2017). Courts employ a two-part inquiry:

> (1) Could … plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school- say a public theater or library? [And]

(2) [c]ould an adult at the school—say an employee or visitor—have pressed essentially the same grievance?

Id. If both questions are answered in the affirmative, there is no exhaustion requirement. Id. A parent could have brought a claim against the school for being repeatedly placed in a trash can and held down against his will. ¶¶ 60, 62. Plaintiffs, here, plead more than the mere failure to provide an appropriate education.

### (2). <u>Statute of Limitations</u>

Individual Defendants and the Board argue that the statute of limitations bars Plaintiffs' ADA and Section 504 claims. Under North Carolina law, the statute of limitations for ADA and Section 504 is two years. J.W. v. Johnston Cnty. Bd. of Educ., No. 5:11-CV-707-D, 2012 WL 4425439, at *6 (E.D.N.C. Sept. 24, 2012). While the timetable for the statute of limitations is a matter of state law, the determination of the accrual or tolling is a matter of federal law. A Soc'y Without A Name v. Virginia, 655 F.3d 342, 348 (4th Cir. 2011); Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975). The time accrues for a claim "when the plaintiff knows or has reason to know of the injury forming the basis of an action." J.W., 2012 WL 4425439, at *7. Plaintiffs' pleadings show that R.A. did not know about the alleged abuse until February 2019 when G.A. first told her about how Ms. Johnson put her hand over his mouth. Document #3 ¶¶ 84, 87. The original Complaint was filed on December 10, 2020. Document #31 at 24.

Plaintiffs' Section 1983 claims are not barred by the statute of limitations. North Carolina law provides a three-year statute of limitations for Section 1983 claims. See N.C. Gen. Stat. § 1-52(16) (2021); see also Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 181 (4th Cir. 1996). As stated above, R.A. did not know about any of the alleged abuse until February 2019. Document #3 ¶¶ 84, 87. The statute of limitations for negligence claims is three years. See § 1-52(16); see also Birtha v. Stonemor, N. Carolina, LLC, 220 N.C. App. 286, 292, 727 S.E.2d 1, 7 (2012). The

statute of limitations does not bar any of these claims. The undersigned respectfully recommends that Defendants' Motions to Dismiss be <u>denied</u> as to the Section 504 and ADA claims.

### b.  <u>Section 1983 Claims</u>

### (1).  <u>Substantive Due Process Claims</u>

States shall not "deprive any person of life, liberty, or property, without due process of law" under the Fourteenth Amendment's Due Process Clause. U.S. Const. Amend. XIV, § 1. Plaintiffs bring multiple substantive due process claims under Section 1983 against the Board, Mr. Johnson, Lesane, Cloer, Mehall, and Ms. Johnson. They allege that the Board had a custom or policy that violated G.A.'s constitutional rights. Document #31 at 12. Plaintiffs argue the doctrines of supervisor liability, individual liability, and state-created danger to hold Lesane, Mr. Johnson, Mehall, and Cloer liable for Section 1983 violations.

When conducting a Section 1983 analysis, "[t]he first step … is to identify the specific constitutional right allegedly infringed." <u>Albright v. Oliver</u>, 510 U.S. 266, 271 (1994). Plaintiffs allege that Defendants violated G.A.'s rights to bodily integrity and public education. Document #3 ¶ 149. To bring an actionable Section 1983 claim, Plaintiffs must establish (1) the relevant defendants "deprived [them] of a right secured by the Constitution and laws of the United States[] and (2) that [such defendant(s)] deprived [them] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." <u>O.V.</u>, 2018 WL 2725467, at *26 (quoting <u>Mentavlos v. Anderson</u>, 249 F.3d 301, 310 (4th Cir. 2001)).

### (a).  <u>The Board</u>

Local governing bodies cannot be subject to Section 1983 liability based upon *respondeat superior*. <u>Carter v. Morris</u>, 164 F.3d 215, 221 (4th Cir. 1999). Local governing bodies may be sued under Section 1983 for injunctive, declaratory and monetary relief when the action alleged

"implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 659 (1978). Moreover, local governments may be liable for "constitutional deprivations visited pursuant to governmental 'custom' even though such custom has not received formal approval through the government's official decision-making channels." Id. A custom or policy that subjects a local governing body to liability may arise in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) … the decisions of a person with final policymaking authority; (3) … an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) … a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

Oliver v. Baity, 208 F. Supp. 3d 681, 689 (M.D.N.C. 2016) (quoting Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003)). A policy or custom is usually created by a final policymaker. See Love–Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004); see also Stevens v. Cabarrus Cnty. Bd. of Educ., No. 1:20-CV-00335, 2021 WL 233665, at *4 (M.D.N.C. Jan. 22, 2021). The issue of who has final policy-making authority is determined by state law. Riddick v. Sch. Bd. of Portsmouth, 238 F.3d 518, 523 (4th Cir. 2000).

North Carolina law "vests the Board itself with the authority to make final policy for the local school district." Barrett v. Bd. of Educ. of Johnston Cnty., N.C., 13 F. Supp. 3d 502, 511 (E.D.N.C. 2014), aff'd on other grounds, 590 F. App'x 208 (4th Cir. 2014) (citing N.C. Gen. Stat. § 115C–40). The superintendent is not a final policymaker. See § 115C–276; see also Barrett, 13 F. Supp. 3d at 511. The Board is not bound by the actions of a superintendent unless Plaintiffs establish "that the Board itself has directed, participated in, or sanctioned the challenged action." Barrett, 13 F. Supp. 3d at 511. Moreover, the Board may be liable only for actions that "it has

'officially sanctioned or ordered.'" <u>Love-Lane</u>, 355 F.3d at 782 (quoting <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480 (1986)).

Plaintiffs argue that the Principals and ISS school officials are agents of the Board. Document #31 at 12. But the cases that Plaintiffs cite do not implicate Section 1983. See <u>State v. Carlton</u>, 232 N.C. App. 62, 64-65, 753 S.E.2d 203, 205 (2014); <u>see also</u> <u>Carolina Paper Co. v. Bouchelle</u>, 19 N.C. App. 697, 699, 200 S.E.2d 203, 205 (1973), <u>aff'd</u>, 285 N.C. 56, 203 S.E.2d 1 (1974)).

Plaintiffs do not allege that any Board members knew of Ms. Johnson's alleged abuse. Document #21 at 3. While the Board may have known about the 2018 video from the Pressly school, that is not enough to meet the deliberate indifference standard. Plaintiffs' factual allegations show that the Board was only aware of isolated incidents. Therefore, the undersigned respectfully recommends that Plaintiffs' Section 1983 substantive due process, failure to train, and equal protection claims against the Board be dismissed.

### (b). <u>Deliberate Indifference</u>

Even if Plaintiffs established knowledge on part of the Board, they must also show that its actions amounted to a deliberate indifference to G.A.'s rights. Deliberate indifference is a very high standard. <u>Brattain v. Stanly Cnty. Bd. of Educ.</u>, No. 1:19CV1037, 2020 WL 6364718, at *6 (M.D.N.C. Oct. 29, 2020). A showing of mere negligence will not establish deliberate indifference. <u>Id.</u> "Actions that in hindsight are unfortunate or even imprudent will not suffice." <u>Id.</u> Deliberate indifference will not be found when a supervisory official reasonably responds to a known risk "even if the harm is not averted." <u>Id.</u> (quoting <u>Doe v. Durham Pub. Sch. Bd. of Educ.</u>, No. 1:17CV773, 2019 WL 331143, at *7 (M.D.N.C. Jan. 25, 2019)). Deliberate indifference may be established when a principal "fail[s] to respond to mounting evidence of potential misconduct" by

a teacher. Id. A principal's mere negligence in failing to address a teacher's sexual abuse of a student will not establish deliberate indifference. Doe, 2019 WL 331143, at *9-11.

Bender's report to Cloer was the only information conveyed to McClenahan, Mr. Johnson, and Lesane. This single report of abuse is not enough to establish deliberate indifference. See Doe, 2019 WL 331143, at *7.

### (c). Individual Liability

Plaintiffs plead that Cloer, McClenahan, Lesane, Mr. Johnson, and Mehall are subject to individual liability for the Section 1983 claims. A supervisor cannot be held liable under the doctrine of respondent superior. Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977). To be held individually liable, an "official's 'own individual actions' must have 'violated the Constitution.'" Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) (quoting Iqbal, 556 U.S. at 676). When a supervisor has "personal knowledge of and involvement in the alleged deprivation of appellant's rights," he or she is subject to personal liability. Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985). When an individual is notified about an alleged harm, "notice can only facilitate personal involvement in a deprivation of rights where the harm continues over a period of time." Id. However, "mere knowledge of such a deprivation does not suffice." Stirling, 912 F.3d at 171 (quoting Wright, 766 F.2d at 850).

Here, Plaintiffs make conclusory allegations that Lesane, Mr. Johnson, McClenahan, and Cloer were aware of the ongoing abuse throughout G.A.'s second-grade year. The Complaint lacks any specific factual allegations that these Defendants knew anything beyond what Bender reported. Plaintiffs have not shown that any of the individual Defendants—except for Ms. Johnson— themselves acted and had personal involvement in the deprivation of G.A.'s rights. See Wright, 766 F.2d at 850 (holding that prison warden was not subject to individual liability for the

deprivation of a prisoner's rights when the warden did not act on the prisoner's letter "challenging the findings of the adjustment team, complaining that he was denied counsel and protesting the conditions in the segregation unit"). In <u>Stirling</u>, senior prison officials were held individually liable when they sought for and authorized a prisoner's continued stay in solitary confinement. 912 F.3d at 172. While Plaintiffs plead that Ms. Johnson was assigned as G.A.'s teacher in the second grade, there are no specific factual allegations as to who made the assignment. <u>See</u> <u>id.</u> (holding that individual liability did not attach to a prison official who did not seek or secure prisoner's transfer to solitary confinement).

In sum, Plaintiffs' pleadings only show that Mr. Johnson, McClenahan, Lesane, and Cloer received a single report regarding the deprivation of G.A.'s rights. Plaintiffs fail to plead a plausible claim as to individual liability for Mr. Johnson, McClenahan, Lesane, and Cloer. The claim against Mehall also fails for the reasons stated below. <u>See</u> <u>supra</u> Section (B)(3)(a)(2).

### (d). <u>State-Created Danger Claims</u>

Plaintiffs allege that Mr. Johnson, McClenahan, Lesane, and Cloer are individually liable under the state-created danger doctrine. The state-created danger doctrine is an exception to the general rule that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." <u>Robinson v. Lioi</u>, 536 F. App'x 340, 342 (4th Cir. 2013) (quoting <u>DeShaney v. Winnebago Cnty. of Dep't of Soc. Servs.</u>, 489 U.S. 189, 197 (1989)). For the state-created-danger doctrine to apply, the state must produce or enhance the danger. <u>Id.</u>

The Fourth Circuit recognizes state-created danger claims and acknowledges that if "the state itself creates the dangerous situation that resulted in a victim's injury, the absence of a custodial relationship may not be dispositive." <u>Robinson</u>, 536 F. App'x at 343 (quoting <u>Pinder v.</u>

Johnson, 54 F.3d 1169, 1177 (4th Cir. 1995)). But in these circumstances, "the state is not merely accused of a failure to act; it becomes much more akin to an actor itself directly causing harm to the injured party." Id. The state-created danger doctrine works so "that state actors may not disclaim liability when they themselves throw others to the lions" but does not "entitle persons who rely on promises of aid to some greater degree of protection from lions at large." Pinder, 54 F.3d at 1177.

Moreover, the state-created danger doctrine is a narrow exception to the due process clause that requires the state to take "affirmative action." Robinson, 536 F. App'x at 343. Plaintiffs cannot merely allege that the state's "inaction" led to a greater risk "that the plaintiff will be harmed by a private actor." Id. at 344; see Cartwright v. City of Marine City, 336 F.3d 487, 493 (6th Cir. 2003) (explaining that a "failure to act is not an affirmative act under the state-created danger theory").

Here, Plaintiffs merely allege a failure to act by McClenahan, Mr. Johnson, Cloer, Lesane, and Mehall. While Plaintiffs allege that school officials acted by assigning Ms. Johnson as G.A.'s second-grade teacher, this does not amount to an affirmative act for the purposes of a state-created danger claim. See Pinder, 54 F.3d at 1172 (holding a police officer was not liable under the state-created danger theory when he promised a woman that her boyfriend would not be released from jail and he was later released and killed the woman's three children).

Plaintiffs cite H.B. v. State Board of Education in support of their state-created danger claim. No. 4:14-CV-204-BO, 2015 WL 2193778, at *4 (E.D.N.C. May 11, 2015). In H.B., the court recognized a state-created danger claim where the school promised to keep a child safe and then placed him in a dorm with another child knowing there was a violent history between them. Id. Here, Defendants made no such promises to keep G.A. safe, and Plaintiffs' claims against Cloer, McClenahan, Mr. Johnson, Mehall, and Lesane are generally based on a failure to act.

Plaintiffs allege that the Board placed Ms. Johnson as R.A.'s second-grade teacher, but this is not supported by the well-pled facts. See id. (discussing how a substantive due process special relationship is not created by the mere presence of a student in school but it is the "involuntary nature of the placement into state custody which triggers substantive Due Process protections") (citing Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 175 (4th Cir. 2010)). Plaintiffs' factual allegations merely allege that the school officials did nothing to address Bender's complaint and Ms. Johnson remained G.A.'s teacher for a second year. Thus, Plaintiffs have not pled a state-created danger.

### (e). Claims Against Ms. Johnson in her Individual Capacity

#### 1. Bodily Integrity

"Liberty within the meaning of the Fourteenth Amendment is implicated where public school authorities, acting under color of state law, deliberately punish a child for misconduct by restraint and infliction of appreciable physical pain." Ingraham v. Wright, 430 U.S. 651, 652 (1977). "Freedom from bodily restraint and punishment is within the liberty interest in personal security that has historically been protected from state deprivation without due process of law." Id. A bodily integrity claim may be established when the plaintiff pleads that there was "malicious corporate punishment inflicted by school officials." Brattain, 2020 WL 6364718, at *5 (quoting Meeker v. Edmundson, 415 F.3d 317, 320 (4th Cir. 2005)). In claims involving corporal punishment, a bodily integrity claim depends upon "whether the force applied caused injuries so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." Hall v. Tawney, 621 F.2d 607, 613 (4th Cir. 1980). In W.E.T. ex rel. Tabb v. Mitchell, a bodily integrity claim survived a motion to

dismiss where a special needs therapist "forcefully and maliciously" put masking tape over a student's mouth and then ripped it off. No. 1:06CV487, 2008 WL 151282, at *5 (M.D.N.C. Jan. 10, 2008).

Plaintiffs plead that Ms. Johnson repeatedly put G.A. in a trash can and prevented him from getting out. She held him down with her hands over his mouth and nose, preventing him from breathing. These allegations are analogous to <u>Mitchell</u> and are more than enough to adequately plead a bodily integrity claim.

Defendants argue that Ms. Johnson's actions were intended to address G.A.'s "disability-related maladaptive behaviors." Document #27 at 8 (quoting Document #3 ¶¶ 60-61). But putting an autistic child in a trash can shocks any reasonable person's conscience. Plaintiffs further allege that Ms. Johnson spilled hot grease on G.A.'s head, burning his scalp. <u>Id.</u> ¶¶ 87-89. Plaintiffs have shown that G.A. suffered severe injury having been diagnosed with PTSD due to the trauma stemming from Ms. Johnson's conduct. <u>Id.</u> ¶ 193. Ms. Johnson was ultimately convicted for assault on a handicapped person. <u>Id.</u> ¶ 106.

Defendants also argue that Plaintiffs' claim fails because G.A. suffered only psychological harm. <u>See</u>, <u>e.g.</u>, Document #39 at 15. But "arbitrary intrusions on personal security includes both physical and emotional well-being." <u>White v. Rochford</u>, 592 F.2d 381, 385 (7th Cir. 1979); <u>see</u> <u>B.H. v. Johnson</u>, 715 F. Supp. 1387, 1394 (N.D. Ill. 1989). Plaintiffs properly plead a substantive due process bodily integrity claim against Ms. Johnson.

## 2. <u>Right to Education</u>

There is no fundamental right to education under federal law. <u>See</u>, <u>e.g.</u>, <u>Pyler v. Doe</u>, 457 U.S. 201, 221 (1982). But when a state provides free public education, students acquire a legitimate property interest. <u>See</u> <u>Brattain</u>, 2020 WL 6364718, at *4. The North Carolina Constitution provides

that "every person of the State less than 21 years old, who has not completed a standard high school course of study" is entitled to free public education. N.C. Gen. Stat. § 115C–1; see O.V., 2018 WL 2725467, at *27.

North Carolina law recognizes a right to public education as a procedural due process right. See Brattain, 2020 WL 6364718, at *4. In practice, this right provides "a student … a right to notice and some type of informal hearing prior to being suspended [or dismissed] from school." Id. (citing Pegram v. Nelson, 469 F. Supp. 1134, 1138 (M.D.N.C. 1979)); see Kendall v. Balcerzak, 650 F.3d 515, 528–29 (4th Cir. 2011) (procedural due process gives parties "a guarantee of fair procedures—typically notice and an opportunity to be heard"). North Carolina courts acknowledge the "countervailing need for schools to maintain order and discipline," and thus, are reluctant to find procedural due process violations unless the school "imposes significant limitations that could reasonably amount to a student's 'total exclusion' from school." Brattain, 2020 WL 6364718, at *4 (quoting Pegram, 469 F. Supp. at 1138)). When a school prevents a child from receiving access to regular instruction and instead provides segregated instruction for the child's special needs, there is no procedural due process violation. See O.V., 2018 WL 2725467, at *27.

To bring a procedural due process claim, a plaintiff must establish "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." Kendall, 650 F.3d at 528. The first two elements of a procedural due process claim are adequately pled here. Document #3 ¶¶ 149, 162. G.A. has a property interest in education. See Brattain, 2020 WL 6364718, at *4. The state deprived him of that interest when the IEP limited his access to school to one hour per week and functionally excluded him from the education system. See id. (plaintiffs alleged enough facts to show that the student was "functionally … total[lly] exclud[ed] from the educational process"

because the student was repeatedly left alone in a dark room for extended periods of time to "the point of missing his medications and meals" as a practice "to manage his outbursts").

While Ms. Johnson's actions support a bodily integrity claim, they do not rise to the level of functionally excluding G.A. from the educational process. The Board, via the IEP, restricted G.A.'s access to school from two hours to one hour per week. Document #3 ¶ 101. One of his parents had to quit work to care for him. Id. While the Board's actions, in practice, amount to functionally excluding G.A. from the education process, Plaintiffs cannot establish deliberate indifference to hold the Board liable under Section 1983. See supra Section (B)(2)(1)(a).

The undersigned respectfully recommends that Defendants' Motions to Dismiss be denied as to the bodily integrity claim against Ms. Johnson and granted as to the other Section 1983 substantive due process claims as to all other Defendants.

### (2). Section 1983 Failure to Supervise & Train

A local government's failure to train employees about a legal duty "to avoid violating citizens' rights may rise to the level of an official government policy for [section] 1983 purposes, but the failure to train must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" Connick v. Thompson, 563 U.S. 51, 53 (2011) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)). To establish deliberate indifference, the plaintiff must prove that school officials ignored the "known or obvious consequences" of the failure the train that would lead to their employees violating individuals' constitutional rights. Id. (quoting Bd. of Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 410 (1997)). After showing deliberate indifference, plaintiffs must establish a "'sufficiently close causal link' between the training deficiency and the alleged violation [as to show] that the violation was 'almost bound to happen.'" Id. (quoting Cobb, 2018 WL 6304405, at *4).

Plaintiffs allege a failure to supervise and train claim against the Board, and Mr. Johnson, Lesane, Cloer, and Mehall in their individual capacities. ¶¶ 174-75. They allege that the Defendants failed to train employees as to ISS policies and state and federal law on reporting abuse. Id. ¶ 174(b). The basis for liability for failure to train under Section 1983 and supervisory liability are similar. See Harris, 489 U.S. at 388. A failure to train claim under Section 1983 is dependent on whether the failure to train amounts to deliberate indifference to the rights of students that the untrained employees encounter. See id.

The deliberate indifference requirement is a "stringent standard of fault," and the plaintiff must plead "a specific deficiency rather than general laxness or ineffectiveness in training." Doe, 2019 WL 331143, at *14 (quoting Brown v. Cobb, No. 3:17-cv-00627-JAG, 2018 WL 6304405, at *3 (E.D. Va. Dec. 3, 2018)). Unless school officials have notice "that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Connick, 563 U.S. at 62. A plaintiff can establish notice "by showing that the need for the training and the risks of not providing the training were obvious." Doe, 2019 WL 331143, at *14 (quoting Doe by Watson v. Russell Cnty. Sch. Bd., 292 F. Supp. 3d 690, 711 (W.D. Va. 2018)).

Plaintiffs fail to adequately plead a claim for failure to train. As stated above, Plaintiffs have not shown that a single Board member was aware of Ms. Johnson's conduct until law enforcement intervened. Plaintiffs allege that the Board, Mr. Johnson, Lesane, Cloer, and Lesane knew about Bender's complaint during G.A.'s first-grade year. But Bender's complaint and the 2018 video captured at the Pressly school are not enough to put the Defendants on proper notice for a failure to train. More importantly, they do not establish deliberate indifference. While school officials can be liable for a failure to respond to mounting evidence of misconduct, they are not

24

liable for isolated incidents. <u>Slakan v. Porter</u>, 737 F.2d 368, 373 (4th Cir. 1984). Plaintiffs fail to meet the stringent standard for deliberate indifference as to all Defendants. The undersigned respectfully recommends that Defendants' Motions to Dismiss be <u>granted</u> for the failure to train claims.

**(3). <u>Section 1983 Equal Protection Claim</u>**

Plaintiffs fail to adequately plead that the Board violated G.A.'s right to equal protection under the Fourteenth Amendment and Section 1983. To establish an equal protection claim, plaintiff must prove that he was "treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." <u>Veney v. Wyche</u>, 293 F.3d 726, 730–31 (4th Cir. 2002). To establish an equal protection claim in education cases, plaintiff must show that the "school board intended to treat children differently because of their disabilities," and that decision lacked "any rational basis." <u>Sellers</u>, 141 F.3d at 530-31.

Plaintiffs fail to adequately plead that the Defendants treated G.A. differently because of his disability. They have not satisfied the <u>Sellers</u> standard for intentional or purposeful discrimination in the education context. In <u>Q.C.</u>, the plaintiffs survived a 12(b)(6) motion to dismiss, where they pled that the school principal indicated the student "would have never been accepted had [the school system] known that she had Down syndrome" or a disability." 2021 WL 1430697, at *7. Taking the factual allegations of the Complaint as true, the school officials failed to act. Plaintiffs have not shown that this failure to act was the result of intentional discrimination. The undersigned respectfully recommends that Defendants' Motion to Dismiss be <u>granted</u> as to the equal protection claim.

**(4). <u>Section 1983 Conspiracy Claims</u>**

Plaintiffs bring conspiracy claims under the Fourteenth Amendment and Section 1983 against the Board, and against Mr. Johnson, Lesane, McClenahan, Cloer, and Mehall in their individual capacities. To allege a conspiracy claim under Section 1983, the plaintiff must show "that the defendants conspired or acted jointly or in concert and that some overt act was done in furtherance of the conspiracy, which resulted in plaintiff being deprived of the constitutional right." Hafner v. Brown, 983 F.2d 570, 577 (4th Cir. 1992). A conspiracy claim will survive a motion to dismiss where the facts that "raise a right to relief above the speculative level." Lewis v. Jordon, No. 1:09CV21, 2009 WL 3718883, at *6 (M.D.N.C. Nov. 4, 2009). Conclusory allegations will not survive a motion to dismiss. Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1007 (4th Cir. 1987). The plaintiff must plead enough facts in a non-conclusory manner that would "reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan," Lewis, 2009 WL 3718883, at *6 (quoting Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996)).

Plaintiffs have not adequately pled a "mutual understanding" among the Defendants to carry out an unlawful plan. Hafner, 983 F.2d at 578. Plaintiffs allege that the Board placed Ms. Johnson as G.A.'s second-grade teacher and later moved her to a class of preschool non-verbal students during his third-grade year to avoid liability. Plaintiffs' argument that the Board placed Ms. Johnson as G.A.'s second-grade teacher in furtherance of a conspiracy is purely speculative. Plaintiffs have also failed to show that any Board member was aware of Bender's complaint. Plaintiffs' conspiracy claims are conclusory and speculative. The undersigned respectfully recommends that Defendants' Motions to Dismiss be granted for the conspiracy claims.[1]

---

[1] Plaintiffs fail to plead a Section 1983 claim against Cloer, Lesane, Mehall, and McClenahan upon which relief can be granted so the Court does not reach the qualified immunity defenses.

### 3. State Law Claims

#### a. Negligence Claim

##### (1). Overview

Plaintiffs bring a negligence claim against the Board, and Mr. Johnson, Lesane, McClenahan, Cloer, Mehall, and Ms. Johnson in their individual capacities. To state a negligence claim, the plaintiff must plead: (1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach. Stein v. Asheville City Bd. of Educ., 360 N.C. 321, 328, 626 S.E.2d 263, 267 (2006). Plaintiffs allege that the Board and each individual Defendant were under a duty to report the alleged abuse, in accordance with statutory mandate and Board policy. See § 115C–42. Board policies 4040 and 4240 place a duty on school officials to report child abuse. Document #3 ¶ 192(a). North Carolina law requires "any [school personnel] who has cause to suspect child abuse or neglect has a duty to report the case of the child to the Director of Social Services of the county." § 115C–42. As school officials and individuals required by statute, each Defendant had a duty to report the suspected child abuse to the proper authorities. See id.

##### (2). Negligence Claims against Cloer, Lesane, McClenahan, Mr. Johnson, Mehall, and Ms. Johnson

School officials owe a duty of reasonable care to their students, especially upon learning that an autistic child was put in a trash can and held down on the floor by his teacher. A reasonable school official would have investigated Bender's complaint, except for Mehall who was unaware of the complaint. The individual Defendants failed to report the information to the authorities or investigate allegations of the abuse. This constitutes a breach of duty owed to G.A.

Plaintiffs allege that these Defendants' failure to exercise reasonable care was the proximate cause of the G.A.'s harm. And it was reasonably foreseeable that the abuse would

continue. Plaintiffs allege that G.A. developed P.T.S.D. Document #3 ¶ 193. They have also sufficiently pled physical and physiological harm. Id. ¶¶ 193-94. Plaintiffs have pled a plausible claim for negligence against Cloer, Lesane, McClenahan, and Mr. Johnson.

While Mehall owed G.A. a duty of reasonable care, Plaintiffs fail to plead enough to show that he had cause to report Ms. Johnson's conduct to the proper officials or investigate further. Plaintiffs fail to show that a reasonable school official would investigate allegations of a disruptive student's desk being taken away and an accidentally spilling of hot grease. Viewing the factual allegations most favorable to Plaintiffs, Mehall was told that Ms. Johnson removed G.A.'s desk and held her hand over his mouth to stop him from disrupting over children. These allegations do not show that Mehall breached any duty to G.A. The undersigned respectfully recommends Plaintiffs' negligence claim against Mehall be dismissed.

Ms. Johnson owed a duty of reasonable care to G.A. as a teacher. She breached her duty of reasonable care when she placed G.A. in a trash can on multiple occasions and held him on the floor and spilled hot grease on him. Plaintiffs further allege that Ms. Johnson's abusive actions tainted G.A.'s learning environment. He was diagnosed with PTSD and receives therapy to cope with the abuse. Id. ¶ 192(g)(3). Plaintiffs states a plausible claim for negligence against Ms. Johnson.

### (3). Negligence Claim Against Board

The Board argues that Plaintiffs do not allege that any of its members were aware of the alleged abuse. All of the Defendants are Board employees. The Board can be held liable for the actions of its agents—the school officials. See Abell, 71 N.C. App. 48, 53, 321 S.E.2d 502, 506 (1984). The Board employs superintendents that are responsible for carrying out its decisions. § 115C-276; §115C-271. Likewise, principals are employed by the Board and report to both the

Board and superintendent. § 115C-284; § 115C-286; § 115C-288. Both statutory and common law principles dictate that "the superintendent and principal are agents of the [B]oard." Abell, 71 N.C. App. at 53, 321 S.E.2d at 506. The Board cannot avoid liability when it acts on recommendations based upon evaluations by school officials. See id. ("The board cannot escape responsibility for its actions, based on the recommendations of its agents, by simply refusing to inquire into their agents' reasons.") (citing Equip. Co. v. Anders, 265 N.C. 393, 144 S.E.2d 252 (1965)). Plaintiffs show that the school district's Superintendent, Associate Superintendent, Executive Director of Exceptional Children, and one of its principals failed to exercise reasonable care by not investigating and reporting Ms. Johnson's misconduct. Plaintiffs state a plausible negligence claim against the Board.

### (4). Governmental Immunity

The Board also argues that governmental immunity bars Plaintiffs' state law negligence claim. A city or county board of education "is a governmental agency, and therefore may not be liable in a tort action except insofar as it has duly waived its immunity ... pursuant to statutory authority." Overcash v. Statesville City Bd. of Educ., 83 N.C. App. 21, 22–23, 348 S.E.2d 524, 526 (1986). North Carolina courts "strictly construe statutes authorizing waiver of governmental immunity." J.W., 2012 WL 4425439, at *9; see Hallman v. Charlotte–Mecklenburg Bd. of Educ., 124 N.C. App. 435, 438 S.E.2d 179, 181 (1996). A local board of education waives its immunity by purchasing liability insurance. See § 115C–42; see also Lucas v. Swain Cnty. Bd. of Educ., 154 N.C. App. 357, 361, 573 S.E.2d 538, 541 (2002). "[A] board waives its immunity only to the extent of its liability insurance coverage, and the insurance contract must be purchased from a North Carolina-licensed or otherwise qualified insurance company." J.W., 2012 WL 4425439, at *9.

The Board argues that its participation in the North Carolina School Boards Trust does not waive governmental immunity because the Trust does not qualify as liability insurance under North Carolina General Statute Section 115C–42. Document #21 at 11. To prove that a school board waived its governmental immunity, plaintiff must show that "the contract of insurance was issued by (1) an entity licensed and authorized to execute insurance contracts in this State; or (2) a qualified insurer as determined by the Department of Insurance." Lucas, 154 N.C. App. at 361, 573 S.E.2d at 541. Here, the explicit language of the contract between the Trust and Board states that it does not waive governmental immunity and the Trust is not a duly authorized or qualified insurer under North Carolina General Statute Section 115C–42. Document #21 at 30. But "[a] school board waives its governmental immunity when it procures excess liability insurance coverage through the [NCSBT] from a licensed commercial insurance carrier." J.W., 2012 WL 4425439, at *10 (quoting Lail ex rel. Jestes v. Cleveland Cnty. Bd. of Educ., 183 N.C. App. 554, 561, 645 S.E.2d 180, 185 (2007)).

The Board argues that purchasing liability insurance from a Trust which then purchases insurance from a commercial carrier does not waive governmental immunity. When a school board buys insurance from a trust that proceeds to purchase insurance from a commercial carrier and the board is aware of the excess coverage provided by the commercial carrier, the board has waived governmental immunity. Lucas, 154 N.C. App. at 364, 573 S.E.2d at 542. The North Carolina Court of Appeals does "not interpret the statute so narrowly as to exempt a school board from waiver where the board contracts with an intermediary to then procure the board's insurance through the commercial insurance market, nor do we believe such an interpretation consistent with the policy and purpose of [North Carolina General Statute] [Section] 115C–42." Id.

Here, the Board had excess liability insurance through its policy with the Trust for claims between $150,000 and $850,000. Document #21 at 30. But the Board's contract with the Trust has exclusionary clauses. Id. When evaluating whether "the provisions of a liability insurance policy provide coverage for a tort action, our courts apply the 'comparison test,' thereby requiring the policy provisions to be analyzed and compared with the allegations in the pleadings." Herring ex rel. Marshall v. Winston-Salem/Forsyth Cnty. Bd. of Educ., 137 N.C. App. 680, 686, 529 S.E.2d 458, 463 (2000). "[T]he pleadings are read side-by-side with the policy to determine whether the events as alleged are covered or excluded." Waste Mgmt. of Carolinas, Inc. v. Peerless Ins., 315 N.C. 688, 693, 340 S.E.2d 374, 378 (1986). "Any doubt as to coverage is to be resolved in favor of the insured." Id.

Plaintiffs cite case law holding that "provisions which exclude liability of insurance companies are not favored and therefore all ambiguous provisions will be construed against the insurer ..." State Capital Ins. Co. v. Nationwide Mutual Ins. Co., 318 N.C. 534, 538, 350 S.E.2d 66, 68 (1986). Plaintiffs argue that these exclusions to be "construed strictly to provide coverage." Jestes, 183 N.C. App. at 562–63, 645 S.E.2d at 186.

The Board also argues that the Trust's Coverage Agreement specifically bars any claim "arising out of … criminal acts." Document #21 at 37. But the Board cannot use Ms. Johnson's criminal acts as a shield against the duty imposed by law for the ISS officials to report alleged abuse. Defendants argue that Exclusion 13 of the Coverage Agreement could potentially be read so broadly as to bar the negligence action against the Board. Id. Exclusion 13 bars "any Claim for Personal Claim for Personal Injury arising out of or in connection with, in whole or in part, (a) dishonest, fraudulent, or criminal acts; (b) acts of reckless or deliberate indifference; …" Id. This exclusionary clause does not apply here. In J.W., the court held that an exclusionary clause for

failing to report sexual misconduct applied and the board did not waive its immunity. 2012 WL 4425439, at *12. In that case, the school board's exclusionary cause included language on reporting sexual misconduct and specifically stated that it "includes allegations of a negligent act or failure to act in response to notice of wrongful conduct excluded herein." Id. Notably, the Board's exclusionary clause in there does not include "allegations of a negligent act or failure to act." Document #21 at 37.

The Board also cites an exclusion for "any Claim arising out of or in connection with, in whole or in part, the disregard or violation of one or more school board or school policies, regulations, directives or specifications." Id. As stated above, the Board placed a duty on school officials to report abuse. Document #3 ¶ 192(a). While exclusionary clauses are strictly construed against waiving liability, it would be counter-intuitive to allow the Board to insulate itself from liability from such a broad statement when the school did not follow its own policies. More importantly, Plaintiffs' claims are based on violations of state law and a failure to investigate. The Board has waived governmental immunity. The undersigned respectfully recommends that the Board's motion to dismiss the negligence claim be denied.

**b.  Negligent Infliction of Emotional Distress**

Plaintiffs bring negligent infliction of emotional distress ("NIED") claims against Mr. Johnson, Lesane, McClenahan, Cloer, Mehall, and Ms. Johnson in their individual capacities. To prove NIED, plaintiff must prove that: "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress ..., and (3) the conduct did in fact cause the plaintiff severe emotional distress." Johnson v. Ruark Obstetrics, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990).

All the parties owed a duty to G.A. for the reasons stated in the negligence analysis above. Plaintiffs adequately plead the first element because none of the individual Defendants investigated the abuse or reported it to the proper authorities. Plaintiffs sufficiently plead that Ms. Johnson acted negligently when she spilled hot grease on G.A.'s head, placed him in a trash can, and took away his desk privileges to satisfy the first element. It was reasonably foreseeable that a failure to investigate and report Ms. Johnson's conduct would lead to similar abuse and cause G.A. severe emotional distress. The third element is adequately plead since Plaintiffs plead that G.A. suffers from PTSD (document #3 ¶ 193) and undergoes "regular therapy" for emotional trauma. Id. ¶¶ 192(g)(1)-(3), 193. The fact that G.A.'s scalp was burned, and he went home crying with his "shirt wet" after Ms. Johnson spilled grease on his head further supports a finding of severe emotional distress. Id. ¶¶ 88-89, 103. Plaintiffs have failed to plead that Mehall breached a duty to G.A. so the NIED claims against him should be dismissed. See supra Section (B)(3)(a)(2). The undersigned respectfully recommends that Defendants' Motions to Dismiss be granted as to the NIED claims against Mehall and denied as to the remaining Defendants.

### (1). Public Official Immunity

McClenahan, Cloer, Mehall, and Lesane argue that public official immunity bars Plaintiffs' state law negligence and negligent infliction of emotional distress claims. When determining if public official immunity applies, North Carolina Courts "distinguish between public employees and public officers in determining negligence liability." Hare v. Butler, 99 N.C. App. 693, 699, 394 S.E.2d 231, 236 (1990). "Public officials are distinct from public employees in that officers perform discretionary actions requiring deliberation, decision and judgment, while employees perform ministerial duties that are absolute and certain." Dempsey v. Halford, 183 N.C. App. 637, 640, 645 S.E.2d 201, 204-05 (2007). Public officials cannot be liable for "mere negligence but

may only be liable where his/her conduct is malicious, corrupt or outside the scope of his/her authority." RM by & through MM v. Charlotte-Mecklenburg Cnty. Bd. of Educ., No. 3:16-CV-00528-GCM, 2017 WL 2115108, at *4 (W.D.N.C. May 15, 2017) (citing Dalenko v. Wake Cnty. Dep't of Human Servs., 157 N.C. App. 49, 56, 578 S.E.2d 599, 603-04 (2003)). To establish public official immunity, North Carolina courts analyze whether "1) the position is created by the constitution or statutes; 2) the public official exercises a portion of sovereign power; and 3) the public official exercises discretion in his or her position, as opposed to ministerial duties." Id. (citing Isenhour v. Hutto, 350 N.C. 601, 609, 517 S.E.2d 121, 127 (1999)).

Principals, superintendents, and school officials are public officials. See Farrell v. Transylvania Cnty. Bd. of Educ., 175 N.C. App. 689, 695-96, 62 S.E.2d 128, 133-34 (2006). Moreover, North Carolina law recognizes that while "public officials cannot be held individually liable for damages caused by mere negligence in the performance of their governmental or discretionary duties, public employees can." Meyer v. Walls, 347 N.C. 97, 112, 489 S.E.2d 880, 888 (1997). Mr. Johnson argues that as a public official, it is "irrelevant" whether his duty to report was ministerial or not. Document #39 at 3; see MM, 2017 WL 2115108, at *4 (recognizing a school official's presumption of good faith when exercising discretion and plaintiffs must show that the official's "conduct was malicious, corrupt, or outside the scope of their authority"). But school officials are liable "for misfeasance in the performance of their ministerial duties where injury has ensued." Meyer, 347 N.C. at 113, 489 S.E.2d at 889 (quoting Miller v. Jones, 224 N.C. 783, 787, 32 S.E.2d 594, 597 (1945)).

School officials are entitled to public official immunity when they are exercising discretion. See Smith v. Hefner, 235 N.C. 1, 7, 68 S.E. 2d 783, 787 (1952); see also Mitchell v. Pruden, 251 N.C. App. 554, 559, 796 S.E.2d 77, 82 (2017) (public official immunity prevents liability only

when "a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office …"). The school officials were required by law and the Board's policies to report allegations of abuse to the proper authorities. N.C. Gen. Stat. § 115C-400; Document #3 ¶ 192(a); see 16 NCAC 06C .03129(b) (The North Carolina Administrative Code requires superintendents to report abuse within five working days). Moreover, the Board leaves no room for discretion as Board Policy 4240/7312 states that "[a]ny doubt about reporting a suspected situation must be resolved in favor of reporting, and the report must be made immediately." Document #36 at 21. Thus, their actions were not ministerial and public official immunity does not apply in this case. See Jensen v. S.C. Dep't of Soc. Servs., 297 S.C. 323, 333, 377 S.E.2d 102, 107 (Ct. App. 1988), aff'd, 304 S.C. 195, 403 S.E.2d 615 (1991) (denying defendants' motion to dismiss based on public official immunity because the caseworker was required by statute to conduct "a thorough investigation" as to the allegations of child abuse).

### c.  False Imprisonment

Plaintiffs bring a false imprisonment claim against Ms. Johnson. False imprisonment is the restraint of a person where that restraint is both unlawful and involuntary. Black v. Clark's Greensboro, Inc., 263 N.C. 226, 228, 139 S.E.2d 199, 201 (1964). The elements of false imprisonment are "(1) the illegal restraint of plaintiff by defendant, (2) by force or implied threat of force, and (3) against the plaintiff's will." Rousselo v. Starling, 128 N.C. App. 439, 449, 495 S.E.2d 725, 732 (1998). To prove the restraint element, "no appreciable period of time [is required], simply sufficient time for one to recognize his illegal restraint." Wilkerson v. Duke Univ., 229 N.C. App. 670, 674, 748 S.E.2d 154, 158 (2013) (quoting West v. King's Dep't Store, Inc., 321 N.C. 698, 703, 365 S.E.2d 621, 624 (1988)). There need only be "a brief restraint of the

plaintiff's freedom" to meet the requirement. Id. (quoting West, 321 N.C. at 703, 365 S.E.2d at 624.

Plaintiffs plead that G.A. was placed in a trash can and unable to get out. ¶ 60. They also plead that Ms. Johnson put her hands over his mouth and nose and held him on the floor. ¶¶ 62, 82. Plaintiffs adequately plead the three elements of false imprisonment. The undersigned respectfully recommends that Defendant's Motions to Dismiss be denied as to the false imprisonment claim.

### 4.  Mr. Johnson's Motion to Dismiss Claim for Punitive Damages

Mr. Johnson argues that Plaintiffs are not entitled to punitive damages and attorney's fees in the negligence and NIED causes of action. "Both the awarding of punitive damages and the amount to be allowed, if any, rest in the sound discretion of the jury." Worthy v. Knight, 210 N.C. 498, 187 S.E. 771, 772 (1936). In North Carolina, "[p]unitive damages may be awarded against a person only if that person participated in the conduct constituting the aggravating factor giving rise to the punitive damages, or if, in the case of a corporation, the officers, directors, and managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages." Jane v. Orchid Island Juice Co., No. 2:05CV215, 2006 WL 8456112, at *1 (W.D.N.C. Apr. 19, 2006) (quoting Phillips v. Rest. Mgmt. of Carolina, L.P., 146 N.C. App. 203, 215-16, 552 S.E.2d 686, 694 (2001)).

The aggravating factors that subject parties to punitive damages under North Carolina law are: (1) fraud, (2) malice, or (3) willful or wanton conduct. N.C. Gen. Stat. § 1D-15(a) (2021). The plaintiff "must prove the existence of an aggravating factor by clear and convincing evidence." § 1D-15(b). A school official "acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be

prejudicial or injurious to another." <u>Grad v. Kaasa</u>, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984) (citing <u>Givens v. Sellars</u>, 273 N.C. 44, 49, 159 S.E.2d 530, 535 (1968)). A wanton act "is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." <u>Id.</u> (quoting <u>Givens</u>, 273 N.C at 50, 159 S.E.2d at 535).

Plaintiffs claim that Mr. Johnson's failure to report alleged child abuse was "inherently malicious." Document #36 at 24. They have not pled facts to show that his conduct was done with a wicked purpose or needlessly carried out with a reckless indifference for G.A.'s rights. Plaintiffs also do not show that Mr. Johnson intended his failure to act to be prejudicial or injurious to G.A. The undersigned respectfully recommends that Defendant's Motions to Dismiss be <u>granted</u> as to the punitive damages claim against Mr. Johnson.

### III. <u>RECOMMENDATION</u>

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Defendants' "Motion[s] to Dismiss" (documents ##20, 24, 26, and 29) be **GRANTED IN PART** and **DENIED IN PART**, specifically, that the Motion be **GRANTED** as to Plaintiffs' claims for (1) substantive due process under Section 1983 against the Board, Lesane, Mr. Johnson, Cloer, and Mehall, (2) failure to train under Section 1983 as to all Defendants, (3) equal protection under Section 1983 against the Board, (4) conspiracy under Section 1983 as to all Defendants, (5) negligence against Mehall, (6) NIED against Mehall, and (7) punitive damages against Mr. Johnson, and **DENIED** in all other respects.

### IV. <u>NOTICE OF APPEAL RIGHTS</u>

The parties are hereby advised that pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections

to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989).   Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal.  Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright, 766 F.2d at 845-46; United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to the parties' counsel and to the Honorable Kenneth D. Bell.

**SO ORDERED AND RECOMMENDED**.

Signed: June 17, 2021

David S. Cayer
United States Magistrate Judge