THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:20-CV-00192-KDB-SCR

| | |
|---|---|
| C.G.A. ("G.A."), by and through his parent and guardian, R.A., and R.A. individually, <br><br> Plaintiffs, <br><br> v. <br><br> IREDELL-STATESVILLE SCHOOL DISTRICT BOARD OF EDUCATION; BRADY JOHNSON, Former Superintendent of Iredell-Statesville District Schools, in his individual capacity; ALVERA LESANE, Former Associate Superintendent of Iredell- Statesville District School, in her individual capacity; RHONDA MCCLENAHAN, Current Executive Director of Exceptional Children of Iredell-Statesville District School, in her individual capacity; ALISHA CLOER, Former Principal of Cloverleaf Elementary School, in her individual capacity; ROBIN L. JOHNSON, Former Cloverleaf Elementary School and Third Creek Middle School Teacher, in her individual capacity, <br><br> Defendants. | |

## MEMORANDUM AND RECOMMENDATION

**THIS MATTER** is before the Court on Motions to Dismiss for Failure to State a Claim submitted by Defendant Brady Johnson (Doc. No. 109) and Defendants Alvera Lesane, Rhonda McClenahan, and Alisha Cloer (Doc. No. 111), and the parties' briefs and exhibits. (Doc. Nos. 112, 113 & 116).

The Motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and are ripe for disposition.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that the Defendants' Motions to Dismiss (Doc. Nos. 109 & 111) be granted.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs brought this lawsuit asserting numerous federal and North Carolina state law claims related to the physical, verbal, and emotional abuse of Plaintiff G.A. by G.A.'s teacher Defendant R. Johnson. (Doc. No. 94). G.A. is a minor child with Autism Spectrum-Disorder and a communication disability. Id. ¶ 1. The child's mother is R.A. Id. at ¶ 38. In 2016-2017, G.A. attended kindergarten within the Iredell-Statesville School District ("ISSD"), where he was assigned Defendant Robin Johnson ("Defendant R. Johnson") as his special education teacher. Id. ¶ 57.

In 2017-2018, G.A. attended first grade within the ISSD at Cloverleaf Elementary School, where he was placed in a "separate special education setting" taught by Defendant R. Johnson. Id. ¶¶ 61-82. G.A. allegedly was subjected to different treatment than non-disabled students. Id. ¶¶ 64, 65, 144. Specifically, Plaintiffs allege that Defendant R. Johnson placed G.A. in a "trash can/recycle bin from which he was unable to get out." Id. ¶ 64. Plaintiffs allege that while G.A. was in the first grade, Jennifer Bender, another teacher at the school, witnessed the abusive treatment of G.A. and reported the treatment to Defendant Cloer, who was the Principal of Cloverleaf Elementary School. Id. ¶¶ 44, 72. Plaintiffs allege that Defendant Cloer shared that report with upper-level district personnel including Defendants B. Johnson (Superintendent of the School District), Lesane (Associate Superintendent for Human Resources), and McClenahan (Executive Director of Exceptional Children of the School District). Id. ¶¶ 41-44, 74. Defendants

Cloer, B. Johnson, Lesane, and McClenahan (collectively, "Defendant School Officials") allegedly failed to report Defendant R. Johnson's abusive behavior to authorities. Id. ¶ 80.

In 2018-2019, G.A. remained in the special education classroom at Cloverleaf Elementary School with Defendant R. Johnson as his second-grade teacher. Id. ¶ 83. Plaintiffs allege that R. Johnson continued to physically, verbally, and emotionally abuse G.A. throughout second grade. Id. ¶¶ 83-100, 152. Such abuse allegations include denying G.A. the use of a desk while non-disabled students did not have their desks removed. Id. ¶¶ 91-93, 145, 152, 160, 175. Plaintiffs allege that although R.A. and "multiple parents of disabled children" reported R. Johnson's abuse, none of Defendant School Officials took action to intervene or report Defendant R. Johnson. Id. ¶¶ 93, 97, 99.

In 2019-2020, G.A. attended third grade in a special education class at a different school where R. Johnson was no longer his teacher. Id. ¶¶ 101, 103-104. However, during this year, another child reported that R. Johnson abused him. Id. ¶¶ 106, 108. The parent of this child reported these concerns to a therapist. Id. The therapist questioned previous students of R. Johnson and then filed a report with the Iredell County Sheriff's Office. Id. ¶¶ 109-110. The police opened an investigation, and ultimately, Defendant R. Johnson pled guilty to two counts of misdemeanor assault on a handicapped person. Id. ¶¶ 110, 131.

On December 10, 2020, Plaintiffs commenced this action against Defendant Iredell-Statesville School District Board of Education ("the Board"), the governing body of ISSD. (Doc. No. 1). On February 2, 2021, Plaintiffs filed their First Amended Complaint as a matter of course. (Doc. No. 3). Plaintiffs alleged multiple federal claims under Section 504 of the Rehabilitation Act of 1974, the Americans with Disabilities Act, and 42 U.S.C. § 1983. Id. Plaintiffs also brought claims of negligence, negligent infliction of emotional distress, and false imprisonment under North Carolina law. Id. Plaintiffs brought these various claims against the Board, the School

Officials,[1] and teacher R. Johnson. Id. In response, Defendants filed Motions to Dismiss. (Doc. Nos. 20, 24, 26 & 29).

On June 17, 2021, the then-assigned Magistrate Judge recommended dismissal of Plaintiffs' § 1983 claims against the Board, but other federal and state law claims against the Board remained. (Doc. No. 43). Relevant here, the Magistrate Judge recommended dismissal of the § 1983 claims against Defendant School Officials and dismissal of the punitive damages claim against Defendant B. Johnson. Id. However, the Magistrate Judge concluded that Plaintiffs' negligence and negligent infliction of emotional distress claims should remain because Defendant School Officials were not entitled to public official immunity. Id.

On July 1, 2021, Defendant School Officials and Plaintiffs objected to the Magistrate Judge's recommendations. (Doc. Nos. 44, 46, & 47). However, on August 5, 2021, the presiding District Judge adopted the Magistrate Judge's recommendations (Doc. No. 43), granting and denying in part Defendants' motions. (Doc. No. 56). Thus, the only claims that remained against Defendant School Officials were the negligence and negligent infliction of emotional distress claims. Id. Defendant School Officials appealed the decision to the Fourth Circuit. (Doc. Nos. 59 & 63).

On June 7, 2022, the Fourth Circuit reversed this Court's decision in part, finding that Plaintiffs failed to allege facts sufficient to pierce the public official immunity afforded to the Defendant School Officials. R.A. v. Johnson, 36 F.4th 537 (4th. Cir. 2022); (Doc. No. 72). On June 29, 2022, pursuant to Federal Rule of Appellate Procedure 41(a), the Fourth Circuit issued its mandate. (Doc. No. 73).

---

[1] In their First Amended Complaint, Plaintiffs brought claims against Andrew Mehall, then the current principal of Cloverleaf Elementary School, in his individual capacity. (Doc. No. 3). On August 5, 2021, Mehall was terminated in this suit pursuant to the District Judge's order granting and denying in part Defendants' motions to dismiss. (Doc. No. 56).

On September 14, 2022, this Court then issued a Pretrial Order and Case Management Plan with a deadline to file an "Amendment of the Pleadings" by February 14, 2023. (Doc. No. 76 at 1). On that deadline date, Plaintiffs submitted a Motion for Leave to Amend, together with a proposed Second Amended Complaint for Damages. (Doc. Nos. 82 & 82-1). Plaintiffs informed this Court that they were "not seeking to add any new causes of action." (Doc. No. 83 at 3). Instead, Plaintiffs stated that they "sought to clarify allegations and add details about the claims for relief sought in this action based on newly discovered evidence." Id. Defendant School Officials opposed the motion for leave to amend. (Doc. Nos. 85 & 86).

On March 20, 2023, the then-assigned Magistrate Judge issued an order granting Plaintiffs' motion "[f]or the reasons stated in the Plaintiffs' briefs" and ordered Plaintiffs to "file their Second Amended Complaint within five days of this Order." (March 20, 2023 Text-Only Order). On March 24, 2023, Plaintiffs timely filed their Second Amended Complaint. (Doc. No. 94). On April 5, 2023, Defendant School Officials filed a Motion to Strike or in the Alternative Dismiss Plaintiffs' Second Amended Complaint. (Doc. No. 96). Similarly, on April 6, 2023, the Board filed a Motion to Strike, or in the Alternative, Dismiss the Second Amended Complaint. (Doc. No. 98). On May 24, 2023, the Honorable Kenneth D. Bell denied the Defendant School Officials' Motion to Strike. (Doc. No. 108).

Now, Defendant School Officials, in their pending Motions, ask the Court to dismiss Plaintiffs' state law negligence and negligent infliction of emotional distress claims pursuant to Rule 12(b)(6). (Doc. Nos. 109 & 111). Defendant B. Johnson also has filed a motion to dismiss Plaintiffs' claims for punitive damages and attorneys' fees pursuant to Rule 12(b)(6). (Doc. No. 109).

## II. DISCUSSION

### A. Standard of Review

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. Id. at 678-79. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. at 679; see also Anand v. Ocwen Loan Serv., LLC, 754 F.3d 195, 198 (4th Cir. 2014) (recognizing the court does not accept as true legal conclusions couched as a factual allegations). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Although the pleading requirements stated in Rule 8 of the Federal Rules of Civil Procedure mark "a notable and generous departure from the hyper-technical, code-pleading regime of a prior era. . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court assumes their truth and then determines whether they plausibly give rise to an entitlement to relief. Id. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Neitzke v. Williams, 490 U.S. 319, 326 (1989). Indeed, where "it is clear that no relief could be granted under any set of facts that could be prove[n] consistent with the allegations . . . a claim must be dismissed." Id. at 327 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

**B.      Claims Against Defendant School Officials**

Defendant School Officials advance several procedural arguments based on the Fourth Circuit's reversal of this Court's prior decision as to the negligence claims. (Doc. No. 109 at 6-9 & Doc. No. 111-1 at 7-13). However, this Court has already permitted the Second Amended Complaint and issued Orders related to that Amendment, including the District Judge's Order rejecting certain procedural arguments and ruling that the case shall proceed on the merits of the remaining claims. (March 20, 2023 Text-Only Order granting Leave to Amend & Doc. No. 108). Accordingly, the undersigned declines to revisit Defendants' procedural arguments, which primarily stem from permitting the Seconded Amended Complaint, and instead addresses the merits of Defendant School Officials' 12(b)(6) arguments.

1. **Plaintiffs' claims for negligence and negligent infliction of emotional distress under state law are barred by public official immunity.**

Plaintiffs bring negligence and negligent infliction of emotional distress claims against Defendant School Officials. To state a negligence claim in North Carolina, the plaintiff must plead: "(1) a legal duty; (2) a breach thereof; (3) injury proximately caused by the breach [and (4) damages]." Stein v. Asheville City Bd. Of Educ., 626 S.E.2d 263, 267 (N.C. 2006). To bring a negligent infliction of emotional distress claim, the plaintiff must plead "that a defendant '(1) negligently engaged in conduct, (2) which was reasonably foreseeable would cause severe emotional distress, and (3) the conduct did, in fact, cause severe emotional distress.'" Tompkins v. Charlotte-Mecklenburg Sch. Sys., No. 3:16-CV-152-RJC-DSC, 2016 WL 5868086, at *2 (W.D.N.C. Oct. 6, 2016) (quoting Barbier v. Durham Cnty. Bd. of Educ., 225 F. Supp. 2d 617, 628 (M.D.N.C. 2002)).

    a. *Defendant School Officials are public officials as defined by North Carolina law and are presumptively entitled to public official immunity.*

As the Fourth Circuit recognized in its prior decision in this case, in North Carolina, "a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto." R.A., 36 F.4th at 542 (quoting Smith v. State, 222 S.E.2d 412, 430 (N.C. 1976)). Public official immunity has been recognized by North Carolina for over a century. Epps v. Duke Univ., Inc., 468 S.E.2d 846, 850 (N.C. Ct. App. 1996). Further, North Carolina courts have "recognized that school officials such as superintendents and principals" are public officials. Farrell v. Transylvania Cnty. Bd. of Educ., 625 S.E.2d 128, 133-34 (N.C. Ct. App. 2006).

R.A. does not dispute that Defendant School Officials are public officials under the applicable North Carolina law. R.A., 36 F.4th at 542; see also (Doc. Nos. 112 & 113). The Fourth

Circuit also has already determined that the Defendant School Officials were public officials, whose "actions at issue here," in deciding "[w]hat to do when faced with allegations of a teacher mistreating her students" involved "thoughtful consideration and deliberation," and therefore were "discretionary." R.A., 36 F.4th at 543. Plaintiffs do not plead any facts in the Second Amended Complaint that support arriving at a different conclusion. (Doc. No. 94). Thus, "[t]he public officials here are presumptively entitled to public official immunity for their exercise of discretion in overseeing their school district." R.A., 36 F.4th at 541; Mitchell v. Pruden, 796 S.E.2d 77, 82 (N.C. Ct. App. 2017).

> b. *Plaintiffs fail to tender additional facts in the Second Amended Complaint to pierce public official immunity.*

Public official immunity "precludes suit against public officials in their individual capacities and protects them from liability 'as long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption.'" R.A., 36 F.4th at 542 (quoting Hart v. Brienza, 784 S.E.2d 211, 215 (N.C. Ct. App. 2016)); see also Mitchell, 796 S.E.2d at 82 (quoting Fullwood v. Barnes, 792 S.E.2d 545, 550 (N.C. Ct. App. 2016)).

Under North Carolina law, a "defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." Grad v. Kaasa, 321 S.E.2d 888, 890 (N.C. 1984). "Thus elementally, a malicious act is an act (1) done wantonly, (2) contrary to the actor's duty, and (3) intended to be injurious to another." Wilcox v. City of Asheville, 730 S.E.2d 226, 230 (N.C. Ct. App. 2012). The third element, intent to injure, "can either be 'actual' or 'constructive.'" Knibbs v. Momphard, 30 F.4th 200, 227 (4th Cir. 2022) (quoting Wilcox, 730 S.E.2d at 231). However, "a showing of mere reckless indifference is insufficient'" to show a constructive intent to injure.

Wilcox, 730 S.E.2d at 232; see also Schlossberg v. Goins, 540 S.E.2d 49, 56 (N.C. Ct. App. 2000) ("A Plaintiff may not satisfy [showing malice or corruption] through allegations of mere reckless indifference."). Rather, "North Carolina law 'presumes that public officials will discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law,' so evidence of malice 'must be sufficient by virtue of its reasonableness, not by mere supposition.'" Knibbs, 30 F.4th at 227 (quoting Doe v. City of Charlotte, 848 S.E.2d 1, 12 (N.C. Ct. App. 2020)).

To sufficiently allege corruption that pierces public official immunity,[2] a plaintiff must establish that a public official "acted for his own benefit." Pritchard v. Mobley, 595 F. Supp. 3d 438, 452 (E.D.N.C. 2022). "An act is corrupt when it is done with 'a wrongful design to acquire some pecuniary profit or other advantage.'" Green v. Howell, 851 S.E.2d 673, 679 (N.C. Ct. App. 2020) (quoting State v. Hair, 442 S.E.2d 163, 165 (N.C. Ct. App. 1994)). The Supreme Court of North Carolina has held "[t]he simple fact that defendant is paid for his services is insufficient to show that he acted with malice or corruption." Grad v. Kaasa, 321 S.E.2d 888, 891-92 (N.C. 1984).

The undersigned has carefully studied the Second Amended Complaint comparing both the words and factual allegations to the First Amended Complaint. Although Plaintiffs have now inserted the words "malice" or "corrupt," Plaintiffs have not tendered sufficient additional facts in the Second Amended Complaint to pierce public official immunity. The history of this case provides an important roadmap in arriving at this decision. The facts here are no doubt troubling and bothersome, and originally, this Court permitted the state law negligence claims to proceed. Defendant School Officials appealed the decision to the Fourth Circuit. The Fourth Circuit issued a detailed opinion reversing the Court's decision and finding that, as pled, public official immunity

---

[2] Plaintiffs' briefs are primarily devoted to the malice standard. (Doc. Nos. 112 at 8-10 & 113 at 11-14).

applied. More specifically, it is the law of this case that arguments that the "school officials acted maliciously by not reporting [R. Johnson's] behavior or allowing it to continue . . . fail[]." R.A., 36 F.4th at 545.

The Fourth Circuit wrote:

> The mere allegation that such disheartening things occurred at their school does not show that the school officials *intended* them to happen. We are thus left only with administrators' failure to report or take corrective action in response to Ms. Johnson's behavior, which R.A. argues amounts to a constructive intent to harm G.A. While we certainly do not hold that such a failure can never amount to malice, it is a high bar. . . . There will be close cases. But given the North Carolina case law, this is not one of them. No direct infliction of force or injury is alleged. At most, R.A. alleges that the school officials failed to investigate and report Ms. Johnson's behavior, and were thus recklessly indifferent to G.A.'s wellbeing. But, as noted, "reckless indifference is insufficient" to find constructive intent. Simply by alleging failure to take corrective action, R.A. has not adequately pled that the school officials constructively intended to harm G.A. We are therefore left with North Carolina's presumption that the school officials acted in good faith in their decision-making after learning of Bender's report.

Id. at 545-46 (internal citations omitted).

In a concurring opinion, Judge Motz agreed that:

> [t]hese facts should enrage us all. But in this appeal, we deal only with one narrow legal question: whether, under North Carolina law, the four officials who allegedly knew about the abuse and failed to report it or take any other action to protect the child are entitled to immunity from R.A.'s negligence claims. On that question, I must agree with the majority.

Id. at 547 (Motz, J., concurring).

The undersigned is compelled to follow the Fourth Circuit's binding decision. A review of the Second Amended Complaint reveals Plaintiffs still have not alleged a direct infliction of force or injury on the part of the Defendant School Officials.[3] This is not disputed. At most, Plaintiffs continue to allege the same failures to report and failures to take corrective action, but

---

[3] To be clear, this does not include allegations related to R. Johnson, who was the teacher that reportedly abused R.A. R. Johnson has not filed a Motion to Dismiss as to the Second Amended Complaint, but preserved certain defenses in her Answer filed at Doc. No. 115. At this time, claims against R. Johnson will proceed.

have sprinkled in the words "malice" and "corrupt" amongst these same or similar factual allegations in the Second Amended Complaint. This is insufficient to pierce public official immunity.

For instance, the Seconded Amended Complaint states:

"[e]ach Individual Defendant acted maliciously and corruptly when they *failed to report* Ms. R. Johnson's abusive treatment of G.A. and other disabled students to the police and State Board of Education and *failed to take any action to intervene and stop* Ms. R. Johnson's abusive practices. Upon information and belief, Defendants *did not report* Ms. R. Johnson's abusive treatment of her students to conceal Ms. R. Johnson's actions and prevent lawsuits against Defendant Board."

(Doc. No. 94 ¶ 80) (emphasis added).

In their brief, Plaintiffs point to several allegations in the Second Amended Complaint to support their contention that they cured the deficiencies from the First Amended Complaint:

The S[econd] A[mended] C[omplaint] sufficiently alleges how over at least a four (4) year period, Superintendent Johnson and his subordinates *failed to perform* their statutory duties *to report* Ms. Johnson's assault of G.A. (and other children) to law enforcement, *to report* Ms. Johnson to the State Superintendent of Public Instruction in accordance with North Carolina's General Statutes, Administrative Code, and Board policies, and maliciously and intentionally acted contrary to their duties. *See, e.g.*, DE94 ¶ 74 (identifying B. Johnson's *duty to report* Ms. Johnson's abusive treatment of her students to the police and the State Board of Education); ¶¶ 53-54 (citing N.C. Gen. Stat. § 115C-288(g) and ISSD Policy 4040); ¶ 76 (B. Johnson had a statutory *duty to report* the abusive treatment and choose not to alert the appropriate authorities); ¶¶ 19, 21 (B. Johnson *allowed Ms. Johnson to continue working* with disabled children during the police investigation of her abusive treatment of her students until he was "tipped off" that Ms. Johnson would be arrested); ¶ 11 n.3 (the District Attorney informed R.A. that B. Johnson was aware of Ms. Johnson's abusive treatment of G.A. in 2017); ¶ 8 (Principal Cloer had a *duty to report* the abusive treatment to B. Johnson); ¶ 98 (B. Johnson and his subordinates knew their *failure to intervene and protect* G.A. would cause G.A. further harm and intended the abusive treatment to continue); ¶ 97 (multiple parents had reported Ms. Johnson's abusive treatment of their children).

(Doc. No. 113 at 11-12) (emphasis added).[4]

---

[4] Plaintiffs' second brief recites additional allegations at Doc. No. 112 at 9-10, but those allegations similarly center around failures to report and failures to intervene or take corrective action.

Plaintiffs' own words reveal the same deficiencies and reinforce the undersigned's conclusion that the Second Amended Complaint is still woven around failures to report and failures to intervene or take corrective action, the same conduct in which the Fourth Circuit has already determined insufficient to pierce public official immunity.[5] Inserting the words "malice" and "corrupt" before the same or similar factual allegations does not alter the core of the Fourth Circuit's analysis. See Farrell, 625 S.E.2d at 134 (citing Myer v. Walls, 489 S.E.2d 880, 890 (N.C. 1997) and Dalenko v. Wake Cty. Dept. of Human Servs., 578 S.E.2d 599, 604 (N.C. Ct. App. 2003)); see also Mitchell, 796 S.E.2d at 82 ("Any evidence presented to rebut this presumption [of immunity] must be sufficient by virtue of its reasonableness, not by mere supposition. It must be factual, not hypothetical; supported by fact, not by surmise."); Collum v. Charlotte-Mecklenburg Bd. of Ed., No.3:07-cv-534-RJC-DSC, 2010 WL 702462, at * 10 (W.D.N.C. Feb. 23, 2010) ("It should be noted that a conclusory allegation that a public official acted maliciously, with corruption, or outside the scope of their duties is not enough to overcome their public official immunity.") (citations omitted); Bernstein v. Sims, No. 5:22-CV-277-BO, 2023 WL 2763108, at *3 (E.D.N.C. Apr. 3, 2023) ("[P]laintiff has made the conclusory statement that [defendant] acted outside the scope of his authority, but her factual allegations are insufficient to pierce public official immunity [and] are therefore dismissed."); Green v. Howell, 851 S.E.2d 673, 679 (N.C.

---

[5] These factual allegations that the School Official Defendants failed to report or intervene in R. Johnson's alleged abuse are substantially the same factual allegations as in R.A.'s First Amended Complaint. For example, Plaintiffs also alleged in the First Amended Complaint that Defendant "Cloer had a statutory *duty to report* the suspected abuse [but] Cloer chose to do neither. . . . Principal Cloer had the ability to take corrective action; yet Principal Cloer *did not even investigate* the abuse allegations or remove Ms. Johnson from G.A.'s classroom." (Doc. No 3. ¶¶ 67-68) (emphasis added). Similarly, Plaintiffs alleged that "Dr. Lesane, EC Director McClenahan, and Superintendent Johnson had a statutory *duty to report* the suspected abuse . . . [but] all three *chose to keep the information about the suspected abuse within the school district and did not alert the appropriate authorities*," and that the Defendant School Officials collectively "*had the authority to intervene and protect G.A. and the other students in the class; yet not a single one took those steps.*" Id. ¶¶ 69-70 (emphasis added). Plaintiffs included in the First Amended Complaint that "Defendant continued to employ Ms. R. Johnson after she pleaded guilty to Assault on a Handicap Person in March 2020." Id. ¶ 188(y). It was based on this conduct that the Fourth Circuit determined that Plaintiffs had not sufficiently pled facts to pierce public official immunity. R.A., 36 F.4th at 545-46.

Ct. App. 2020) (holding that even though plaintiff used the words "malicious" and "with corrupt intent," "we are not required to treat this allegation of a legal conclusion as true" and plaintiff "failed to allege sufficient facts to overcome the heavy burden of rebutting the presumption" of public official immunity.).

For these reasons and based on the Fourth Circuit's prior holding in this case, the undersigned finds that Plaintiff fails to piece public official immunity. R.A., 36 F.4th at 545-46. Accordingly, the undersigned respectfully recommends that Defendant School Officials' Motions to Dismiss be <u>granted</u> as to the state law negligence and negligence infliction of emotional distress claims.

### 2. Defendant B. Johnson's Motion to Dismiss Plaintiffs' Claims for Punitive Damages and Attorneys' Fees.

Defendant B. Johnson also moved to dismiss Plaintiffs' Claims for Punitive Damages and Attorneys' Fees. (Doc. No. 109). Consistent with the undersigned's recommendation as to the state law negligence claims, the undersigned recommends dismissal of the punitive damages and attorneys' fees claims.

Further, on August 5, 2021, this Court already dismissed Plaintiffs' claims for punitive damages and attorneys' fees against Defendant B. Johnson when granting Defendants' Motions to Dismiss in part. (Doc. No. 56 at 3). This Court's previous dismissal of Plaintiffs' claims for punitive damages and attorney's fees operated as an adjudication on the merits, and that adjudication still stands.

Accordingly, the undersigned recommends that Defendant B. Johnson's Motion to Dismiss for Failure to State a Claim as to the Plaintiffs' claims for punitive damages and attorneys' fees be <u>granted</u>.

## III. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that the Motions to Dismiss for Failure to State a Claim submitted by Defendant Brady Johnson and Defendants Alvera Lesane, Rhonda McClenahan, and Alisha Cloer be **GRANTED**.

## IV. TIME FOR OBJECTIONS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

The Clerk is directed to send copies of this Memorandum and Recommendation to the parties' counsel, and the Honorable Kenneth D. Bell.

**SO ORDERED AND RECOMMENDED**.

Signed: October 18, 2023

Susan C. Rodriguez
United States Magistrate Judge