THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:20-CV-00192-KDB-SCR

C.G.A. ("G.A."), BY AND THROUGH HIS PARENT
AND GUARDIAN, R.A., AND R.A. INDIVIDUALLY,

    Plaintiffs,

v.

IREDELL-STATESVILLE SCHOOL DISTRICT
BOARD OF EDUCATION, *et. al.*

    Defendants.

## MEMORANDUM AND RECOMMENDATION

**THIS MATTER** is before the Court on a Motion to Strike, or, in the Alternative, to Dismiss the Second Amended Complaint submitted by Iredell-Statesville School District Board of Education ("Board") (Doc. No. 98) and the parties' briefs and exhibits. (Doc. Nos. 99, 104 & 106).

The Motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and are ripe for disposition.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendant Board's Motions to Strike and Dismiss (Doc. No. 98) be denied.

### I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.**    **Factual Background**

Plaintiffs brought this lawsuit asserting numerous federal and North Carolina state law claims related to the physical, verbal, and emotional abuse of Plaintiff G.A. by G.A.'s teacher

Defendant Robin Johnson ("Defendant R. Johnson"). (Doc. No. 94). G.A. is a minor child with Autism Spectrum-Disorder and a communication disability. Id. ¶ 1. The child's mother is R.A. Id. ¶ 38. In 2016-2017, G.A. attended kindergarten within the Iredell-Statesville School District ("ISSD"), where he was assigned Defendant R. Johnson as his special education teacher. Id. ¶ 57.

In 2017-2018, G.A. attended first grade within the ISSD at Cloverleaf Elementary School, where he was placed in a "separate special education setting" taught by Defendant R. Johnson. Id. ¶¶ 61-82. G.A. allegedly was subjected to different treatment than non-disabled students. Id. ¶¶ 64, 65, 144. Specifically, Plaintiffs allege that Defendant R. Johnson placed G.A. in a "trash can/recycle bin from which he was unable to get out." Id. ¶ 64. Plaintiffs allege that while G.A. was in the first grade, Jennifer Bender, another teacher at the school, witnessed the abusive treatment of G.A. and reported the treatment to Defendant Cloer, who was the Principal of Cloverleaf Elementary School. Id. ¶¶ 44, 72. Plaintiffs allege that Defendant Cloer shared that report with upper-level district personnel including Defendants B. Johnson (Superintendent of the School District), Lesane (Associate Superintendent for Human Resources), and McClenahan (Executive Director of Exceptional Children of the School District). Id. ¶¶ 41-44, 74. Defendants Cloer, B. Johnson, Lesane, and McClenahan (collectively, "Defendant School Officials") allegedly failed to report Defendant R. Johnson's abusive behavior to authorities. Id. ¶ 80.

In 2018-2019, G.A. remained in the special education classroom at Cloverleaf Elementary School with Defendant R. Johnson as his second-grade teacher. Id. ¶ 83. Plaintiffs allege that R. Johnson continued to physically, verbally, and emotionally abuse G.A. throughout second grade. Id. ¶¶ 83-100, 152. Such abuse allegations include denying G.A. the use of a desk while non-disabled students did not have their desks removed. Id. ¶¶ 91-93, 145, 152, 160, 175. Plaintiffs allege that although R.A. and "multiple parents of disabled children" reported R. Johnson's abuse,

none of Defendant School Officials took action to intervene or report Defendant R. Johnson. Id. ¶¶ 93, 97, 99.

In 2019-2020, G.A. attended third grade in a special education class at a different school where R. Johnson was no longer his teacher. Id. ¶¶ 101, 103-104. On September 23, 2019, "Defendant Board, through G.A.'s [Individualized Education Plan] team, decided G.A. was no longer allowed to attend school on a daily basis due to his maladaptive behaviors that had intensified over the past year as a result of the abusive treatment." Id. ¶ 117. Therefore, G.A. only had "access to school . . . for two (2) hours—and then one (1) hour—each week." Id. ¶ 118.

However, during this year, another child reported that R. Johnson abused him. Id. ¶¶ 106, 108. The parent of this child reported these concerns to a therapist. Id. The therapist questioned previous students of R. Johnson and then filed a report with the Iredell County Sheriff's Office. Id. ¶¶ 109-110. The police opened an investigation, and ultimately, Defendant R. Johnson pled guilty to two counts of misdemeanor assault on a handicapped person. Id. ¶¶ 110, 131.

**B.** **Procedural History**

This case has a lengthy procedural history, which the undersigned has outlined in detail below as it is important background in deciding this Motion. On February 2, 2021, Plaintiffs filed their First Amended Complaint as a matter of course. (Doc. No. 3). Plaintiffs alleged multiple federal claims under Section 504 of the Rehabilitation Act of 1974 ("Section 504"), the Americans with Disabilities Act ("ADA"), and 42 U.S.C. § 1983. Id. Plaintiffs also brought claims of negligence, negligent infliction of emotional distress, and false imprisonment under North Carolina law. Id. Plaintiffs brought these various claims against the Board, the School Officials,[1]

---

[1] In their First Amended Complaint, Plaintiffs brought claims against Andrew Mehall, then the current principal of Cloverleaf Elementary School, in his individual capacity. (Doc. No. 3). On August 5, 2021, Mehall was terminated in this suit pursuant to the District Judge's order granting and denying in part Defendants' motions to dismiss. (Doc. No. 56).

and teacher R. Johnson.  Id.  In response, Defendants filed motions to dismiss.  (Doc. Nos. 20, 24, 26 & 29).

On June 17, 2021, the then-assigned Magistrate Judge recommended dismissal of Plaintiffs' § 1983 claims against the Board, but other federal and state law claims against the Board remained.  (Doc. No. 43).  The Magistrate Judge also recommended dismissal of the § 1983 claims against Defendant School Officials and dismissal of the punitive damages claim against Defendant B. Johnson.  Id.  However, the Magistrate Judge concluded that Plaintiffs' negligence and negligent infliction of emotional distress claims should remain because Defendant School Officials were not entitled to public official immunity.  Id.

On July 1, 2021, the Board, Defendant School Officials, and Plaintiffs objected to the Magistrate Judge's recommendations.  (Doc. Nos. 44-47).  However, on August 5, 2021, the presiding District Judge adopted the Magistrate Judge's recommendations.  (Doc. No. 56).

Defendant School Officials appealed the decision to the Fourth Circuit.  (Doc. Nos. 59 & 63).  The Board did not appeal, but later requested clarification of the District Judge's Order.  (Doc. No. 61).  On September 7, 2021, the District Judge entered a Text-Only Order, which stated the following:

> By consent, Defendant School Board's [Doc. No.] 61 Motion for Clarification is granted.  As agreed among the parties, the Court's [Doc. No.] 56 Order is to be construed to hold that the School Board has waived immunity for potential liability for Plaintiffs' claims only to the extent of the range and limits of its insurance coverage.

(September 7, 2021 Text-Only Order).

On June 7, 2022, the Fourth Circuit reversed this Court's decision in part finding that Plaintiffs failed to allege facts sufficient to pierce the public official immunity afforded to the Defendant School Officials.  R.A. v. Johnson, 36 F.4th 537 (4th. Cir. 2022); (Doc. No. 72).  This

ruling did not opine on Plaintiffs' claims against the Board.

On September 14, 2022, this Court issued a Pretrial Order and Case Management Plan with a deadline to file an "Amendment of the Pleadings" by February 14, 2023. (Doc. No. 76 at 1). On that deadline date, Plaintiffs submitted a Motion for Leave to Amend together with a proposed Second Amended Complaint for Damages. (Doc. Nos. 82 & 82-1). Plaintiffs informed this Court that they were "not seeking to add any new causes of action." (Doc. No. 83 at 3). Instead, Plaintiffs stated that they "sought to clarify allegations and add details about the claims for relief sought in this action based on newly discovered evidence." Id. The Board and Defendant School Officials opposed the motion for leave to amend. (Doc. Nos. 84-86).

On March 20, 2023, the then-assigned Magistrate Judge granted Plaintiffs' motion "[f]or the reasons stated in the Plaintiffs' briefs" and ordered Plaintiffs to "file their Second Amended Complaint within five days of this Order." (March 20, 2023 Text-Only Order). On March 24, 2023, Plaintiffs timely filed their Second Amended Complaint. (Doc. No. 94). Plaintiffs now bring claims against the Board under the ADA, Section 504, and for negligence.[2]

The Board, in its pending Motion, asks the Court to strike the filed Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f) and to dismiss Plaintiffs' claims against the Board pursuant to Rule 12(b)(1), Rule 12(b)(2), and Rule 12(b)(6). (Doc. No. 98).

## II. DISCUSSION

### A. Motion to Strike

The School Board moves to strike the Second Amended Complaint under Rule 12(f)(2) citing Plaintiffs' failure to comply with the leave to amend granted by the Court under Rule 15(a)(2). The Board argues the Second Amended Complaint "contains significant, material

---

[2] On October 18, 2023, the undersigned separately issued a Memorandum and Recommendation, which recommended granting the Defendant School Officials' Motion to Dismiss. (Doc. No. 118).

differences from the proposed second amended complaint which this Court granted Plaintiffs leave to file." (Doc. No. 99 at 9). In response, Plaintiffs assert that the filed Second Amended Complaint "did not change or recast any claims or make any material changes that would prejudice Defendant Board." (Doc. No. 104 at 10). Plaintiffs argue the Second Amended Complaint only "clarified title, references, and factual allegations that were already included in the previously proposed Second Amended Complaint." Id. Defendants submitted exhibits to this Court which marked the deviations between the proposed Second Amended Complaint, and the document filed with the Court. (Doc. Nos. 96-2 & 98-1).

This Court has already denied a motion to strike the Second Amended Complaint made by the School Officials in a separate filing. (Doc. Nos. 96 & 108). Defendant School Officials similarly argued that the additional factual allegations included in the filed Second Amended Complaint violated the Court's order allowing Plaintiffs to file "their S[econd] A[mended] C[omplaint]" and should be stricken. (Doc. No. 108). In denying the Defendant School Officials' Motion to Strike and Alternative Motion to Dismiss the Second Amended Complaint, the Honorable Kenneth D. Bell found "none of the additions or other modifications are so substantial or material that the Court would have reached a different conclusion on the request to file a S[econd] A[mended] C[omplaint]." Id. at 5. "Further, the School Officials have not established how they will be unfairly prejudiced if the Court allows the S[econd] A[mended] C[omplaint] to stand." Id.

The Board's arguments in the instant Motion are nearly identical. As Judge Bell reasoned in his Order denying the Motion to Strike filed by the School Official Defendants, none of the additions between the Second Amended Complaint as initially presented and as filed are "so substantial or material" as to "unfairly prejudice" the Defendants. (Doc. No. 108 at 5). Therefore,

the undersigned respectfully recommends that the Board's Motion to Strike the Second Amended Complaint be <u>denied</u>.

## B. Motion to Dismiss for Lack of Subject Matter Jurisdiction and Personal Jurisdiction

Defendant Board urges the Court to dismiss the state law negligence claim based on governmental immunity. A city or county board of education "is a governmental agency, and therefore may not be liable in a tort action except insofar as it has duly waived its immunity . . . pursuant to statutory authority." Overcash v. Statesville City Bd. of Educ., 348 S.E.2d 524, 526 (N.C. Ct. App. 1986). A North Carolina statute authorizes a local board of education to waive governmental immunity through the purchase of liability insurance. See N.C. Gen. Stat. § 115C-42; see also Lucas v. Swain Cnty. Bd. of Educ., 573 S.E.2d 538, 541 (N.C. Ct. App. 2002). The North Carolina statute states:

> Any local board of education, by securing liability insurance as hereinafter provided, is hereby authorized and empowered to waive its governmental immunity from liability for damage by reason of death or injury to person or property caused by the negligence or tort of any agent or employee of such board of education when acting within the scope of his authority or within the course of his employment. Such immunity shall be deemed to have been waived by the act of obtaining such insurance, but such immunity is waived only to the extent that said board of education is indemnified by insurance for such negligence or tort.

N.C. Gen. Stat. § 115C-42. A "board waives its immunity only to the extent of its liability insurance coverage, and the insurance contract must be purchased from a North Carolina-licensed or otherwise qualified insurance company." J.W. v. Johnston Cnty. Bd. Of Educ., No. 5:11–CV–707–D, 2012 WL 4425439, at *9 (E.D.N.C. Sept. 24, 2012) (citing N.C. Gen. Stat. § 115C-42).

In its Motion, Defendant Board acknowledges that it elected to participate in the North Carolina School Boards Trust ("the Trust") to obtain insurance, but states this does not meet the requirements necessary to waive immunity under N.C. Gen. Stat. § 115C-42. (Doc. No. 99 at 11-

12). On the other hand, Plaintiffs have included allegations that "Defendant Board contracted with the [Trust]. . . which then contracted with a commercial carrier to provide excess liability insurance coverage to the Defendant Board." (Doc. No. 94 ¶ 50). Plaintiffs argue that by obtaining this excess liability insurance coverage, the School Board has waived its governmental immunity for claims. (Doc. No. 104 at 18).

Defendant Board advanced its government immunity defense at an earlier stage of this proceeding, (Doc. Nos. 20 & 21), which the then-assigned Magistrate Judge rejected in his Memorandum and Recommendation (Doc. No. 43)[3] and was subsequently adopted by the District Judge. (Doc. No. 56).

The Second Amended Complaint involves the same Section 504, ADA, and negligence claims,[4] and standards of review. Thus, the issue of waiver of immunity by the Board through the purchase of excess liability insurance has already been decided, and it is the law of the case. Law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Fusaro v. Howard, 19 F.4th 357, 367 (4th Cir. 2021) (quoting United States v. Aramony, 166 F.3d 655, 664 (4th Cir. 1999)). The Fourth Circuit has yet to consider whether the law-of-the-case rule applies to motions to dismiss, but district courts in the Fourth Circuit have "applied the doctrine to deny such motions when a court's prior ruling continues to apply with 'equal force' to an amended complaint." See Layani v. Ouazana, No. SAG-20-420, 2022 WL 11949038, at *3-4 (D. Md. Oct. 20, 2022) (citing Noel v. PACCAR Fin. Corp., 568 F. Supp. 3d 558, 567 (D. Md. 2021)).[5]

---

[3] Defendant Board's arguments as to exclusion of coverage were also considered and addressed in the prior findings by the Court. (Doc. Nos. 43, 56 & September 7, 2021 Text-Only Order).
[4] Plaintiffs did not seek to add any new causes of action to the Second Amended Complaint, but dropped the previously dismissed § 1983 claims. (Doc. Nos. 83 & 94).
[5] Even assuming the law-of-the-case doctrine does not apply to motions to dismiss, the undersigned has closely reviewed and finds persuasive the rationale and analysis in the prior decisions as it relates to Plaintiffs' claims against the Board. (Doc. Nos. 43 & 56).

For these reasons, the undersigned respectfully recommends that the Board's motion to dismiss the negligence claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2) be denied.

## C. Motion to Dismiss For Failure to State a Claim

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The Plaintiffs' "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains sufficient facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Defendants argue here that Plaintiffs have failed to plausibly allege facts sufficient to support their ADA and Section 504 federal claims and state law negligence claim. The Court will address each of these in turn.

### i. Federal Claims under the ADA and Section 504

Title II of the ADA and Section 504 are closely related, and both "prohibit disability-based discrimination against qualified individuals." O.V. v. Durham Pub. Sch. Bd. of Educ., No. 1:17CV691, 2018 WL 2725467, at *23 (M.D.N.C. June 6, 2018), report and recommendation adopted, 2018 WL 3370644 (M.D.N.C. July 10, 2018). Since "the language and purpose of both Acts [are] substantially the same, the same analysis applies to claims brought under both statutes."

Doe v. Univ. of Md. Med. Sys. Corp., 50 F.3d 1261, 1264 n.9 (4th Cir. 1995). To bring a claim under either statute, the plaintiff must establish: (1) that plaintiff has a disability; (2) that plaintiff is otherwise qualified for the benefit or program in question; and (3) that plaintiff was excluded from the benefit or program due to discrimination solely on the basis of disability. Q.C. v. Winston-Salem/Forsyth Cnty. Schs. Bd. of Educ., No 1:19-cv-1152, 2021 WL 1430697, at *6 (M.D.N.C. Apr. 15, 2021) (citing Nat'l Fed'n of the Blind v. Lamone, 813 F.3d 494, 503 (4th Cir. 2016)). The two statutes differ in their application of the third element. Under a Section 504 claim, the plaintiff must establish that he was excluded solely on the basis of the disability, while the ADA allows a claim where the disability was a "motivating cause" of the exclusion. Halpern v. Wake Forest Univ. Health Scis., 669 F.3d 454, 462 (4th Cir. 2012) (quoting Baird ex rel. Baird v. Rose, 192 F.3d 462, 468–69 (4th Cir. 1999)). To establish discrimination under Section 504 in education cases, "something more than a mere failure to provide the 'free appropriate education' required by [IDEA] must be shown." Sellers by Sellers v. Sch. Bd. of Manassas, 141 F.3d 524, 528–29 (4th Cir. 1998) (quoting Monahan v. Nebraska, 687 F.2d 1164, 1170 (8th Cir. 1982)). The Fourth Circuit recognizes that "either bad faith or gross misjudgment should be shown before a [Section] 504 violation can be made out, at least in the context of education of [disabled] children." Id. at 529 (quoting Monahan, 687 F.2d at 1171).

While it is true that Plaintiffs have filed a Second Amended Complaint, the undersigned has closely reviewed the ADA and Section 504 allegations and finds that the same causes of actions are at issue and the same standard of review applies. If anything, Plaintiff has only added facts to support the ADA and Section 504 claims. Previously, the District Judge adopted the then-assigned Magistrate Judge's findings that Plaintiffs have pled enough to survive a motion to dismiss on their Section 504 and ADA claims, and the undersigned finds no reason to depart from the prior

decision. Because this case involves the same basic facts and causes of actions, the undersigned recommends that the prior findings of this Court should apply here with equal force. See Layani, 2022 WL 11949038, at *3-4 (citing Noel, 568 F. Supp. 3d at 567). In addition, the undersigned has reviewed and finds persuasive the reasoning articulated in prior decisions finding Plaintiffs have sufficiently pled Section 504 and ADA claims against the Defendant Board. (Doc. Nos. 43 & 56). Therefore, the undersigned respectfully recommends that Defendant Board's motion to dismiss these federal law claims pursuant to Federal Rule of Civil Procedure 12(b)(6) be denied.

### ii. State Law Negligence Claims

Previously, in reviewing Plaintiffs' First Amended Complaint, the District Judge adopted the then-assigned Magistrate Judge's findings that Plaintiffs have stated a plausible negligence claim against the Board. (Doc. Nos. 43 & 56). Similar to the ADA and Section 504 claims, Plaintiffs advance the same negligence claim against the Board and the same standard of review applies. Therefore, the undersigned recommends that the prior findings of this Court should apply here with equal force. See Layani, 2022 WL 11949038, at *3-4 (citing Noel, 568 F. Supp. 3d at 567). The undersigned sees no basis to decide the issue differently. Also, the undersigned has reviewed and finds persuasive the reasoning articulated in the prior decisions finding that Plaintiffs have sufficiently pled a negligence claim against the Defendant Board. (Doc. Nos. 43 & 56). Therefore, the undersigned respectfully recommends that Defendant Board's motion to dismiss the negligence claim pursuant to Federal Rule of Civil Procedure 12(b)(6) be denied.

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Defendant Board's Motion to Strike or, in the Alternative, Dismiss Second Amended Complaint (Doc. No. 98) be **DENIED**.

## IV. TIME FOR OBJECTIONS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

The Clerk is directed to send copies of this Memorandum and Recommendation to the parties' counsel, and the Honorable Kenneth D. Bell.

**SO RECOMMENDED**.

Signed: November 3, 2023

Susan C. Rodriguez
United States Magistrate Judge