IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:20-CV-00192-KDB-SCR

| | |
|---|---|
| R.A., individually, and on behalf of G.A., <br><br>Plaintiffs, <br><br>v. <br><br>IREDELL-STATESVILLE SCHOOL DISTRICT BOARD OF EDUCATION, ROBIN JOHNSON, BRADY JOHNSON, ALVERA LESANE, RHONDA MCCLENAHAN, AND ALISHA CLOER, <br><br>Defendants. | **ORDER** |

**THIS MATTER** is before the Court on Defendant Iredell-Statesville Schools Board of Education's ("Board") Motion to Strike or, in the Alternative, Dismiss the Second Amended Complaint (Doc. No. 98), the Memorandum and Recommendation of the Honorable Magistrate Judge Susan C. Rodriguez ("M&R") entered November 3, 2023 (Doc. No. 121), the Board's Objection to the M&R and Plaintiffs' Reply (Doc. Nos. 126, 127). The Court has carefully considered these motions, the M&R, the objection, and the parties' filings in support of their respective positions. For the reasons discussed below, the Court will **GRANT in part** and **DENY in part** the motion.

### I. LEGAL STANDARD

A district court may designate a magistrate judge to "submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain pretrial matters,

1

including motions to dismiss. 28 U.S.C. § 636(b)(1). Any party may object to the magistrate judge's proposed findings and recommendations, and the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (italics supplied). Objections to the magistrate's proposed findings and recommendations must be made "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette,* 478 F.3d 616, 622 (4th Cir.), *cert. denied*, 551 U.S. 1157 (2007). However, the Court does not perform a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). After reviewing the record, the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

## II. FACTS AND PROCEDURAL HISTORY

G.A. is a child with autism spectrum disorder and an additional communication disability. He and his mother, R.A., assert federal and North Carolina state law claims against the Defendants based on the alleged physical, verbal, and emotional abuse G.A. suffered at the hands of his special education teacher, Defendant Robin Johnson. At the time the alleged abuse began, G.A. was six or seven years old.

Plaintiffs allege that Ms. Johnson repeatedly and seriously abused G.A. while he was in her class, beginning in the first grade. As just one example, Plaintiffs allege that Ms. Johnson put G.A. in a trash can from which he was unable to free himself (in part because she pushed him back in when he tried to get out) and told him that "if he acted like trash, [she] would treat him like

2

trash." Doc. No. 94, at ¶¶ 64, 66. Further, on multiple occasions, Ms. Johnson allegedly physically restrained G.A. by pushing him down onto the floor and covering his mouth and nose so that he was unable to scream (supposedly to prevent him from "disturbing" the non-disabled students in the school). *Id.* at ¶ 65. The abuse was witnessed by another ISSD employee, who reported it to the school principal. *Id.* at ¶ 72. The principal, in turn, reported it to ISSD school officials, including the superintendent, associate superintendent, and the executive director of exceptional children (collectively, the "Defendant school officials"). *Id.* at ¶ 74. None of the Defendant school officials took corrective action, investigated the allegations, or reported the abuse to the police or State Board of Education. *Id.* at ¶¶ 74-75.

Despite the alleged abuse in first grade, G.A. was once again assigned to Ms. Johnson's classroom for second grade. The abuse allegedly continued, this time "[w]ith more frequency and intensity." *Id.* at ¶ 84. During that year, G.A., still only seven or eight years old, for the first time told his mother that Ms. Johnson had put her hands over his mouth, leaving him struggling to breathe. *Id.* at ¶ 90. When confronted by R.A., Ms. Johnson stated she had done so to stop G.A. from disturbing non-disabled students in the hallway. *Id.* R.A. reported the incident to the school principal, but nothing was done in response. *Id.* Plaintiff alleges that due to the ongoing lack of intervention, Ms. Johnson continued to mistreat G.A., including by spiling hot grease from her lunch on his head, scalding him, and requiring him to stand all day within a taped area on the floor when he broke part of his desk. *Id.* at ¶¶ 91, 94. A teacher's assistant is alleged to have witnessed some of this additional abuse. *Id.* at ¶ 96.

When G.A. entered third grade, the Board moved his special education class to a different school and reassigned Ms. Johnson to teach a class of primarily non-verbal preschool students, who, according to R.A., "presumably were unable to verify the abuse." *Id.* at ¶¶ 101, 103.

3

However, during that year, G.A. told R.A. about Ms. Johnson's actions, including the trash can incident. *Id.* at ¶ 107. At the same time, another parent, whose child reported similar experiences in Ms. Johnson's classroom, consulted with a therapist, and that therapist questioned other students to confirm that the incidents occurred. *Id.* at ¶¶ 108, 109. The therapist then filed a report with the Iredell County Sheriff's Office and the police promptly opened an investigation. *Id.* at ¶ 110.

On September 13, 2019, the associate superintendent spoke with a detective from the Iredell Sheriff's Department. *Id.* at ¶ 112. The detective then attempted to interview staff members but was informed staff members could not be made available due to short staffing. When the detective requested the contact information of staff and students, the school refused to provide the information, directing the detective to Human Resources. *Id.* at ¶ 115. On September 23, 2019, less than two weeks after law enforcement spoke with the associate superintendent, the Board, through G.A.'s Individualized Education Program team, began restricting G.A.'s school attendance (allegedly because his maladaptive behaviors had intensified), limiting him to two, then one, hours per week. *Id.* at ¶¶ 117, 118.

During this time, Ms. Johnson was placed on 30 days of paid administrative leave then allowed to return to the classroom. According to the then-newly appointed school principal, Ms. Johnson was only removed from the classroom indefinitely after the Board and district level personnel were tipped off that Ms. Johnson was about to be arrested. *Id.* at ¶ 21. Ms. Johnson subsequently pled guilty to two counts of assault on a handicapped person. *Id.* at ¶ 24. The Board allegedly did not inform parents of the disabled students in Ms. Johnson's classroom of her guilty plea and/or the crime for which she was convicted. *Id.* at ¶ 137. It is further alleged that the Board chose not to inform the State Board of Education that Ms. Johnson had pled guilty to two counts

of assault on a handicapped person so that she could continue to teach without having her license revoked. *Id.* at ⁋ 139.

In December 2020, G.A. and R.A. filed suit against the Board and several individual defendants alleging federal constitutional and statutory claims as well as state law claims for negligence and negligent inflection of emotional distress. Doc. No. 1. In February 2021, Plaintiffs filed their first amended complaint. Doc. No. 3. In response, the Board filed a motion to dismiss. Doc. Nos. 20, 21. Agreeing with the recommendation of the Magistrate Judge, this Court denied the Board's motion to dismiss. *See* Doc. No. 56.

Following the Fourth Circuit's decision in an appeal brought by the Defendant school officials in this case, the Court issued a new Pretrial Order and Case Management Plan in September 2022, with a deadline to file an "Amendment of the Pleadings" by February 14, 2023. Doc. No. 76, at 1. Plaintiffs filed a Motion for Leave to Amend, together with a proposed second amended complaint ("SAC"). Doc. Nos. 82, 82-1. Plaintiffs informed the Court they were "not seeking to add any new causes of action. Rather, Plaintiffs seek to clarify allegations and add details about the claims for relief sought in this action based on newly discovered evidence." Doc. No. 83, at 3. In the proposed SAC, the Board was again named as a Defendant and responded opposing the requested amendment. Doc. No. 84. The Magistrate Judge issued an order granting Plaintiffs' motion "[f]or the reasons stated in Plaintiffs' briefs" and ordered Plaintiffs to "file their Second Amended Complaint within five days of this Order." Plaintiffs then timely filed the SAC in March 2023. Doc. No. 94. Shortly thereafter, the Board filed this pending motion.

5

Case 5:20-cv-00192-KDB-SCR    Document 128    Filed 12/06/23    Page 5 of 9

### III. DISCUSSION

In its pending Motion to Strike or, in the Alternative, Dismiss the Second Amended Complaint, the Board asks this Court to strike the SAC pursuant to Federal Rule of Procedure 12(f) and to dismiss any claims against the Board pursuant to Rule 12(b)(1)-(2) (lack of subject matter and personal jurisdiction) and (b)(6) (failure to state a claim). The Magistrate Judge recommended the Court reject all of the Board's arguments and deny its motion to dismiss. *See* Doc. No. 121. In response to the M&R, the Board did not object to the Magistrate Judge's findings for the motion to strike or the motion to dismiss for failure to state a claim. *See* Doc. No. 126, at 3. Therefore, the Court will adopt the Magistrate Judge's findings regarding the motion to strike under Rule 12(f) and the motion to dismiss for failure to state a claim under Rule 12(b)(6) as its own and deny those portions of the Board's motion. Thus, Plaintiffs' claims for discrimination based on disability in violation of Section 504 of the Rehabilitation Act (29 U.S.C. § 794 et seq.) and the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.) will proceed at this time. However, as discussed below, the Court will grant part of the Board's motion and dismiss the negligence claim against the Board for lack of jurisdiction.

### A. Motion to Dismiss for Lack of Jurisdiction Pursuant to Rules 12(b)(1), (2)

In its Objection to the M&R, the Board argues that the Magistrate Judge erred in recommending that this Court find that the Board waived its governmental immunity by purchasing liability insurance. In response, R.A. contends that this issue has already been settled because there are no new factual allegations made in the SAC against the Board and the Court already rejected this argument in a previous order. *See* Doc. No. 127, at 2-5.

Where applicable, governmental immunity bars a court from exercising jurisdiction over a complaint's causes of action subject to immunity. *See Bunch v. Britton*, 802 S.E.2d 462, 468 (N.C.

Ct. App. 2017). Local boards of education are expressly entitled to the defense of governmental immunity under North Carolina law, *see* N.C. Gen. Stat. § 115C-42, because "a county board of education is a governmental agency, and is therefore not liable in a tort or negligence action except to the extent that it has waived its governmental immunity pursuant to statutory authority," *Magana v. Charlotte-Mecklenburg Bd. of Educ.*, 645 S.E.2d 91, 92 (N.C. Ct. App. 2007) (citing *Beatty v. Charlotte-Mecklenburg Bd. of Educ.*, 394 S.E.2d 242, 244 (N.C. Ct. App. 1990)); *see also, e.g., Craig v. New Hanover Cnty. Bd. of Educ.*, 678 S.E.2d 351, 353 n.3 (N.C. 2009) (as a "county agency" a local board of education is entitled to governmental immunity).

Both Plaintiffs and the Board agree that a school board waives its immunity when it procures liability insurance. *See* Doc. No. 94, at 13; Doc. No. 99, at 11. Here, the Board acquired liability insurance through the North Carolina School Boards Trust. *Id.* So, whether or not the Board is entitled to immunity from Plaintiff's negligence claims depends on whether the Board is insured for those claims. As discussed below, the Court finds that the Board is not insured for Plaintiff's negligence claim and thus retains its governmental immunity.

The Board has entered into a coverage agreement with the North Carolina School Boards Trust ("NCSBT"), which in turn procured excess insurance for certain claims. Thus, Plaintiff alleges that adding the Board's primary insurance of $150,000 per occurrence (up to $600,000 per year) to its excess insurance of $2,550,000 results in the Board having insurance coverage for damages claims of between $150,000 and $3,150,000.[1] *See* Doc. No. 98-2, at 4; Doc. No. 94, at

---

[1] Under North Carolina law, a local school board does not waive governmental immunity simply by participating in the NCSBT because participation in the NCSBT does not qualify as a purchase of "insurance" under the statute. *See, e.g., Craig v. New Hanover Cnty. Bd. of Educ.*, 646 S.E.2d 923, 925 (N.C. Ct. App. 2007), *rev'd on other grounds*, 678 S.E.2d 351; *see also Barrett v. Board of Educ. of Johnston County*, 13 F. Supp. 3d 502, 514 (E.D.N.C. 2014) (holding that school board had not waived immunity where sole source of potential insurance coverage was through NCSBT

7

¶ 50. Accordingly, the Board's immunity may be waived to the extent of that excess coverage. *See Lucas v. Swain County Bd. of Educ.*, 573 S.E.2d 538, 542 (N.C. Ct. App. 2002). However, "such immunity is waived only to the extent [that the Board] is indemnified by insurance for such negligence or tort." N.C. Gen. Stat. § 115C-42. Therefore, the Board retains immunity to the extent that an exclusion in the policy or agreement exists and applies to the claims. *See, e.g., Patrick v. Wake County Dept. of Soc. Servs.*, 655 S.E.2d 920, 923 (N.C. Ct. App. 2008) ("A governmental entity does not waive sovereign immunity if the action brought against [it] is excluded from coverage under [its] insurance policy.").

Here, Plaintiff's negligence claim, as pled, is excluded from coverage. Previously, this Court held that the Board had waived governmental immunity because the Trust's Coverage Agreement provision excluding coverage for any claims arising out of criminal acts would be based on the criminal acts of Ms. Johnson, rather than the Board, and because the Coverage Agreement excluded coverage for violations of school board polices rather than state law or a failure to investigate. *See* Doc. No. 43, at 31-32, *adopted and affirmed,* Doc. No. 56. In the SAC, Plaintiffs have for the first time alleged that the Defendants, defined to include the Board, Doc. No. 94, at ¶ 46, acted "maliciously and corruptly by choosing not to protect G.A...", *see, e.g., id.* at ¶ 166(g) (Count III). This is a new allegation and so the Court must consider the immunity claim relative to the Board's insurance coverage *de novo*.

The Coverage Agreement excludes from insurance coverage any claim "arising out of or in connection with, in whole or in part, ... (b) dishonest, fraudulent, malicious, wanton, willful, intentional, or criminal acts...." Doc. No. 98-2, at 10 (Exclusion 12). The same exclusion states

---

and court therefore lacked jurisdiction to consider plaintiffs' tort claim). Therefore, the Board has not waived governmental immunity for claims less than $150,000.

that the excess insurance "does not provide coverage for Claims to which this exclusion applies, including but not limited to Claims for negligent hiring, negligent training, negligent reporting, negligent investigation, negligent retention, and/or negligent supervision." *Id.* Accordingly, because claims arising out of or in connection with malicious acts are not covered by the Coverage Agreement or excess insurance, the Board retains its government immunity against Plaintiffs' negligence claim. Therefore, the Court lacks jurisdiction over the Plaintiff's negligence claim against the Board and that claim will be dismissed.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. The Board's Objection to the M&R is **SUSTAINED**;

2. The Board's Motion to Strike or, in the Alternative, Dismiss the Second Amended Complaint (Doc. No. 98) is **GRANTED** as it relates to the Board's motion to dismiss Plaintiffs' negligence claim for lack of jurisdiction due to governmental immunity and otherwise **DENIED**; and

3. This case shall **proceed toward trial on the merits on the remaining claims** in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED, ADJUDGED AND DECREED**.

Signed: December 5, 2023

Kenneth D. Bell
United States District Judge