# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:20-CV-00192-KDB-SCR

| | |
|---|---|
| R.A., individually, and on behalf of G.A., <br><br>**Plaintiffs,**<br><br> v.<br><br>**IREDELL-STATESVILLE SCHOOL DISTRICT BOARD OF EDUCATION, ROBIN JOHNSON, BRADY JOHNSON, ALVERA LESANE, RHONDA MCCLENAHAN, AND ALISHA CLOER,**<br><br>**Defendants.** | **ORDER** |

**THIS MATTER** is before the Court on Defendant Brady Johnson's Motion to Dismiss Plaintiffs' Second Amended Complaint for Failure to State a Claim (Doc. No. 109), Defendants Alisha Cloer, Alvera Lesane, and Rhonda McClenahan's Motion to Dismiss Plaintiffs' Second Amended Complaint in Lieu of an Answer (Doc. No. 111), the Memorandum and Recommendation of the Honorable Magistrate Judge Susan C. Rodriguez ("M&R") entered October 18, 2023 (Doc. No. 118), and the Parties' Objections to the M&R (Doc. Nos. 119, 120). The Court has carefully considered these motions, the M&R, the parties' objections and concessions as to portions of the M&R, and the parties' filings in support of their respective positions. For the reasons discussed below, the Court concludes that Plaintiff has alleged malicious, corrupt and/or willful conduct sufficient to support an exception to Defendants' claims to public official immunity. Therefore, the Court will **GRANT in part and DENY in part** Mr.

1

Johnson's Motion to Dismiss, **DENY** Defendants Alisha Cloer, Alvera Lesane, and Rhonda McClenahan's Motion to Dismiss, **SUSTAIN** R.A.'s objections, and **OVERRULE** Mr. Johnson's objection to the M&R.

## I. LEGAL STANDARD

A district court may designate a magistrate judge to "submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain pretrial matters, including motions to dismiss. 28 U.S.C. § 636(b)(1). Any party may object to the magistrate judge's proposed findings and recommendations, and the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (italics supplied). Objections to the magistrate's proposed findings and recommendations must be made "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette,* 478 F.3d 616, 622 (4th Cir.), *cert. denied*, 551 U.S. 1157 (2007). However, the Court does not perform a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). After reviewing the record, the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is to expose deficient

allegations "at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A claim will not survive a motion to dismiss if it contains nothing more than "labels and conclusions, and a formulaic recitation of a cause of action's elements." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). That said, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* (internal citation and quotation marks omitted).

When deciding a motion to dismiss, "a court considers the pleadings and any materials 'attached or incorporated into the complaint.'" *Fitzgerald Fruit Farms LLC v. Aseptia, Inc.*, 527 F. Supp. 3d 790, 796 (E.D.N.C. 2019) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)). The Court, for the purposes of a Rule 12(b)(6) motion, takes all factual allegations as true. *See Ashcroft*, 556 U.S. at 678. However, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted).

## II.     FACTS AND PROCEDURAL HISTORY

G.A. is a child with autism spectrum disorder and an additional communication disability. He and his mother, R.A., assert federal and North Carolina state law claims against the Defendants

3

based on the alleged physical, verbal, and emotional abuse G.A. suffered at the hands of his special education teacher, Defendant Robin Johnson. At the time the alleged abuse began, G.A. was six or seven years old.

The Defendants relevant to this Order are all current or former Iredell-Statesville School District ("ISSD") and Cloverleaf Elementary Administrators: Brady Johnson was ISSD Superintendent, Alvera Lesane was Associate Superintendent for Human Resources, Rhonda McClenahan was Executive Director of Exceptional Children, and Alisha Cloer was Principal of Cloverleaf Elementary.[1]

Plaintiffs allege that Ms. Johnson repeatedly and seriously abused G.A. while he was in her class, beginning in the first grade. As just one example, Plaintiffs allege that Ms. Johnson put G.A. in a trash can from which he was unable to free himself (in part because she pushed him back in when he tried to get out) and told him that "if he acted like trash, [she] would treat him like trash." Doc. No. 94, at ¶¶ 64, 66. Further, on multiple occasions, Ms. Johnson allegedly physically restrained G.A. by pushing him down onto the floor and covering his mouth and nose so that he was unable to scream (supposedly to prevent him from "disturbing" the non-disabled students in the school). *Id.* at ¶ 65. The abuse was witnessed by another ISSD employee, who reported it to Ms. Cloer. *Id.* at ¶ 72. Ms. Cloer, in turn, reported it to Ms. Lesane, Ms. McClenahan, and Mr. Johnson. *Id.* at ¶ 74. None of the Defendant school officials took corrective action, investigated the allegations, or reported the abuse to the police or State Board of Education. *Id.* at ¶¶ 74-75.

---

[1] Because Robin Johnson and Superintendent Brady Johnson share a last name, the Court will refer to them as Ms. Johnson and Mr. Johnson, respectively. It will also refer to Defendants Mr. Johnson, Ms. Lesane, Ms. McClenahan, and Ms. Cloer collectively as "Defendant school officials." Ms. Johnson is still party to the lawsuit, but did not file a motion to dismiss. The claims against her are unaffected by this Order.

Despite the alleged abuse in first grade, G.A. was once again assigned to Ms. Johnson's classroom for second grade. The abuse allegedly continued, this time "[w]ith more frequency and intensity." *Id.* at ¶ 84. During that year, G.A., still only seven or eight years old, for the first time told his mother that Ms. Johnson had put her hands over his mouth, leaving him struggling to breathe. *Id.* at ¶ 90. When confronted by R.A., Ms. Johnson stated she had done so to stop G.A. from disturbing non-disabled students in the hallway. *Id.* R.A. reported the incident to the school principal, but nothing was done in response. *Id.* Plaintiff alleges that due to the ongoing lack of intervention, Ms. Johnson continued to mistreat G.A., including by spiling hot grease from her lunch on his head, scalding him, and requiring him to stand all day within a taped area on the floor when he broke part of his desk. *Id.* at ¶¶ 91, 94. A teacher's assistant is alleged to have witnessed some of this additional abuse. *Id.* at ¶ 96.

When G.A. entered third grade, his special education class was moved to a different school and Ms. Johnson was reassigned to teach a class of primarily non-verbal preschool students, who, according to R.A., "presumably were unable to verify the abuse." *Id.* at ¶ 101. However, during that year, G.A. told R.A. about Ms. Johnson's actions, including the trash can incident. *Id.* at ¶ 107. At the same time, another parent, whose child reported similar experiences in Ms. Johnson's classroom, consulted with a therapist, and that therapist questioned other students to confirm that the incidents occurred. *Id.* at ¶¶ 108, 109. The therapist then filed a report with the Iredell County Sheriff's Office and the police promptly opened an investigation. *Id.* at ¶ 110.

On September 13, 2019, Ms. Lesane spoke with a detective from the Iredell Sheriff's Department. *Id.* at ¶ 112. The detective then attempted to interview staff members but was informed staff members could not be made available due to short staffing. When the detective requested the contact information of staff and students, the school refused to provide the

information, directing the detective to Human Resources. *Id.* at ¶ 115. On September 23, 2019, less than two weeks after law enforcement spoke with Ms. Lesane, the Defendant School Board, through G.A.'s Individualized Education Program team, began restricting G.A.'s school attendance (allegedly because his maladaptive behaviors had intensified), limiting him to two, then one, hours per week. *Id.* at ¶¶ 117, 118.

During this time, Ms. Johnson was placed on 30 days of paid administrative leave then allowed to return to the classroom. According to then-newly appointed Principal Andrew Mehall, Ms. Johnson was only removed from the classroom indefinitely after the School Board and district level personnel, including Mr. Johnson, were tipped off that Ms. Johnson was about to be arrested. *Id.* at ¶ 21. Ms. Johnson subsequently pled guilty to two counts of assault on a handicapped person. *Id.* at ¶ 24.

In December 2020, G.A. and R.A. filed suit against the ISSD Board of Education and several individual defendants, including the Defendant school officials, alleging federal constitutional and statutory claims, as well as state law claims for negligence and negligent inflection of emotional distress. Doc. No. 1. In February 2021, Plaintiffs filed their first amended complaint. Doc. No. 3. In response, Defendant school officials filed motions for failure to state a claim. Doc. Nos. 24, 26. Agreeing with the recommendation of the Magistrate Judge, this Court granted their motions in part and dismissed all federal claims against the Defendant school officials. *See* Doc. No. 56. With respect to R.A.'s state law negligence claims, the Court denied the school officials' motion to dismiss. *Id.* It concluded that the Defendant school officials were not entitled to public official immunity for a breach of a ministerial duty to report child abuse. *Id.*

On appeal, the Fourth Circuit reversed that decision, holding that R.A. had not alleged an exception to public official immunity, such as malice or corruption, and further had "not

6

adequately pled that the school officials constructively intended to harm G.A." *R.A. v. Johnson*, 36 F.4th 537, 546 (4th Cir. 2022). However, in her concurring opinion, Judge Motz opined that on remand this Court "should consider rendering the dismissal of these negligence claims as without prejudice to allow R.A. a chance to amend her complaint to allege that an exception applies." *Id.* at 547 n.1. When the case returned to this Court, the parties neither sought dismissal of the Defendant school officials nor immediately sought leave to amend the Complaint.

The Court issued a Pretrial Order and Case Management Plan in September 2022, with a deadline to file an "Amendment of the Pleadings" by February 14, 2023. Doc. No. 76, at 1. Plaintiffs filed a Motion for Leave to Amend, together with a proposed Second Amended Complaint ("SAC"). Doc. Nos. 82, 82-1. R.A. informed the Court they were "not seeking to add any new causes of action. Rather, Plaintiffs seek to clarify allegations and add details about the claims for relief sought in this action based on newly discovered evidence." Doc. No. 83, at 3. In the proposed SAC, the Defendant school officials were again named as Defendants and they filed responses opposing the requested amendment. Doc. Nos. 84-86. The Magistrate Judge issued an order granting Plaintiffs' motion "[f]or the reasons stated in Plaintiffs' briefs" and ordered Plaintiffs to "file their Second Amended Complaint within five days of this Order." Plaintiffs then timely filed the SAC in March 2023. Doc. No. 94.

In the pending motions to dismiss, one filed by Mr. Johnson and one jointly filed by Ms. Cloer, Ms. Lesane, and Ms. McClenahan, the Defendant school officials again reassert that the state law claims against them are barred by public official immunity and ask this Court to dismiss Plaintiff's claims against them pursuant to Federal Rule of Procedure 12(b)(6). In the M&R, the Magistrate Judge recommends this Court grant the motions to dismiss on the grounds that R.A. has not sufficiently pled an exception to public official immunity. Doc. No. 118. R.A.

7

filed an objection to the recommendation that the motions be granted. Mr. Johnson in turn filed an objection asking the Court to also rule in his favor on his "procedural" arguments (which the Magistrate did not address because she noted they had been addressed, and denied, in previous orders). Doc. Nos. 119, 120.

### III. DISCUSSION

The motions to dismiss present two main arguments, one procedural and one substantive: (1) Plaintiffs cannot pursue their state court claims because their earlier claims were dismissed with prejudice by the Fourth Circuit and (2) the state law claims against the Defendant school officials are barred by the doctrine of public official immunity. As discussed below, the Court finds that Plaintiffs may amend their claims against the Defendant school officials and R.A. has sufficiently pled exceptions to public official immunity. Therefore, while the merits of R.A.'s claims will be determined through discovery and further proceedings, the Court finds that R.A. has alleged facts supporting plausible claims of negligence and negligent infliction of emotional distress so those claims must be allowed to go forward at this early stage of the litigation.

#### A. Mr. Johnson's "Procedural" Objection

Mr. Johnson objects only to the portion of the M&R declining to address and adopt his procedural argument that Plaintiffs should not have been permitted to pursue their state law claims following the decision of the Court of Appeals. In *R.A. v. Johnson*, the Fourth Circuit held that R.A. failed to allege that the Defendant school officials maliciously intended to cause G.A. harm. 36 F.4th at 546. Specifically, the Court stated that "[t]he state law claims against appellants must thus be dismissed, and the district court's decision to the contrary is reversed." *Id.* Mr. Johnson argues that the Fourth Circuit's holding constituted a dismissal with prejudice and so the

8

Magistrate Judge's decision not to address this argument was an error. (Doc. No. 119, at 3-4).[2] The Court finds that Mr. Johnson misreads the Fourth Circuit's mandate.

In her concurrence, Judge Motz expressly stated that "on remand the district court should consider rendering the dismissal of these negligence claims as without prejudice to allow R.A. a chance to amend her complaint to allege that an exception applies." 36 F.4th at 547 n.1 (Motz, J., concurring). If the majority opinion intended or operated to require a dismissal with prejudice, then Judge Motz's concurrence clearly suggesting the possibility of amending the pleadings would be nonsensical, a conclusion the Court should not lightly draw or infer. Also, had the two judges in the majority disagreed with Judge Motz, they would certainly have said so in rendering the majority opinion. *See Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 654 (4th Cir. 2020) ("Accordingly, we reverse the district court's order of May 2, 2019, denying the government's motion to dismiss the constitutional claims and remand with instructions to dismiss the plaintiffs'

---

[2] Following the remand of this case from the Fourth Circuit, the Court did not formally enter an order dismissing this case without prejudice. Rather, it directly considered R.A.'s motion for permission to file a Second Amended Complaint. The Court viewed the Defendant school officials as still putative parties to the action as suggested by Judge Motz and those Defendants opposed the motion to amend. As noted, the Court then exercised its discretion to allow R.A. to file another complaint.

Even if the Court erred in not entering a formal order of dismissal without prejudice prior to considering Plaintiffs' motion to amend, any error is harmless. "In assessing the effect of an involuntary dismissal of North Carolina State-law claims without prejudice, Federal courts sitting in diversity apply North Carolina Rule of Civil Procedure 41(b)." *Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 203 F. Supp. 3d 608, 611 (M.D.N.C. 2016) (citing *Haislip v. Riggs*, 534 F. Supp. 95, 98 (W.D.N.C.1981)). Rule 41(b) authorizes the Court to "specify in its order that a new action based on the same claim may be commenced within one year or less after such dismissal," if the original action was itself timely. N.C. R. Civ. P. 41(b). There are no allegations here that R.A.'s initial complaint was untimely, and so had the Court entered an order dismissing the Defendant school officials without prejudice, it would have expressly extended the period of limitations and authorized R.A. to file the second amended complaint under North Carolina Rule 41(b).

complaints with prejudice."); *Allen v. Cooper*, 895 F.3d 337, 358 (4th Cir. 2018) (similar); *France.com, Inc. v. French Republic*, 992 F.3d 248, 255 (4th Cir. 2021) (similar).

Further, dismissal with prejudice would be incongruent with the appellate briefs and the Fourth Circuit's specific holdings. Indeed, Mr. Johnson did not ask the Fourth Circuit to remand the case with instructions to dismiss the claims against him with prejudice. *See* USCA 4 Appeal: 21-1972; Doc. No. 20, at 73. Further, the Panel held that R.A. had not sufficiently alleged malice, rather than that no set of facts existed to support such a claim. *R.A.*, 36 F.4th at 546 ("R.A. has not adequately pled… R.A. has not alleged…"). Accordingly, Mr. Johnson did not "establish that is not merely *likely*, but 'clear and indisputable,' that the *entire action* cannot lie," and so construing the decision to require a dismissal with prejudice would be inappropriate. *See In re Trump*, 958 F.3d 274, 285 (4th Cir. 2020) (emphasis in original). Thus, the Court finds that the best reading of the opinion is that the Panel left this Court the discretion to dismiss the claims with or without prejudice as clearly permitted by Rule 41(b).

Therefore, the Court overrules Mr. Johnson's procedural objection to the M&R.

### B.  R.A.'s Objection on the Merits

In her objections to the M&R, R.A. contends that the Magistrate Judge erred in recommending that the SAC be dismissed based on her conclusion that Plaintiffs had not sufficiently pled the public official immunity piercing exceptions of corruption and malice.[3] Specifically, R.A. argues that the Magistrate Judge (1) incorrectly interpreted the Fourth Circuit's analysis of and pleading standard for public official immunity exceptions, (2) applied the incorrect

---

[3] R.A. did not object to the portion of the M&R recommending that this Court grant Mr. Johnson's Motion to Dismiss Claims for Punitive Damages and Attorneys' Fees. Therefore, the Court will adopt the Magistrate Judge's findings regarding this portion of the motion as its own and dismiss Plaintiffs' claims for punitive damages and attorneys' fees.

10

legal standard to Plaintiffs' pleading of the public official immunity exceptions, (3) erred in finding that R.A. insufficiently pleaded malice and corruption exceptions to public official immunity, and (4) improperly compared the First Amended Complaint to the Second Amended Complaint. As noted above, because these objections fully encompass the Magistrate Judge's reasoning, the Court reviews the entire holding *de novo*.

Under North Carolina law, "a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto." *Smith v. State*, 222 S.E.2d 412, 430 (N.C. 1976) (quoting *Smith v. Hefner*, 222 S.E.2d 783, 787 (N.C. 1952)). This immunity "precludes suits against public officials in their individual capacities and protects them from liability 'as long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption.'" *Hart v. Brienza*, 784 S.E.2d 211, 216 (N.C. Ct. App. 2016) (quoting *Smith*, 222 S.E.2d at 430 (alterations adopted)). The doctrine protects public officials in the "honest exercise of [their] judgment within [the official's] jurisdiction, however erroneous or misguided [their] judgment may be." *Templeton v. Beard*, 74 S.E. 735, 736 (1912). In North Carolina, courts "recognize[] that school officials such as superintendents and principals" are public officials because they "perform discretionary acts requiring personal deliberation, decision, and judgment." *Farrell v. Transylvania Cnty. Bd. of Educ.*, 625 S.E.2d 128, 133 (N.C. Ct. App. 2006) (citing *Gunter v. Anders*, 441 S.E.2d 167, 171 (N.C. Ct. App.1994)).

Public official immunity traditionally gives way where the public official's actions were "(1) outside the scope of official authority, (2) done with malice, or (3) corrupt." *Wilcox v. City of Asheville*, 730 S.E.2d 226, 288 (N.C. Ct. App. 2012). North Carolina courts have also expanded

11

the list of exceptions to include bad faith and willful and deliberate conduct. *See Doe v. Putney*, No. 3:18-cv-00586-RJC-DSC, 2022 WL 3335774, at *12 (W.D.N.C. Aug. 12, 2022) (quoting *Smith v. Jackson City Bd. of Educ.*, 608 S.E.2d 399, 411 (N.C. Ct. App. 2005)); *see also Epps v. Duke University, Inc.*, 468 S.E.2d 846, 851 (N.C. Ct. App. 1996) ("The exceptions to official immunity have expanded over the years, with bad faith and willful and deliberate conduct now operating as additional common law bases for liability." (citing *Reid v. Roberts*, 435 S.E.2d 116, 119 (N.C. Ct. App. 1993), *disc. review denied*, 439 S.E.2d 151 (1993))). Here, R.A. focuses on malice and corruption,[4] and so, in order to survive the motions to dismiss, the SAC must plausibly allege that the Defendant's conduct falls within one of those two exceptions. *See R.A.*, 36 F.4th at 544-45.

### 1. <u>Malice</u>

Under North Carolina law, a "defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Grad v. Kaasa*, 321 S.E.2d 888, 890 (N.C. 1984). Thus, malice has three elements: it is "(1) done wantonly, (2) contrary to the actor's duty, and (3) intended to be injurious to another." *Wilcox*, 730 S.E.2d at 230.

"An act is wanton when it is done of wicked purpose or when done needlessly, manifesting a reckless indifference to the rights of others." *Bartley v. City of High Point*, 873 S.E.2d 525, 534 (N.C. 2022) (quoting *Yancey v. Lea*, 550 S.E.2d 155, 157 (N.C. 2001)). "Gross violations of generally accepted [] practice and custom" may lead to a finding that the public official acted contrary to their duty. *Id.* (citing *Prior v Pruett*, 550 S.E.2d 166, 174 (N.C. 2001)). As for the final

---

[4] R.A. uses the term bad faith in the SAC but does not specifically allege it as an exception to public official immunity in the relevant portion of the complaint. *See* Doc. No. 94, at ¶¶ 55-56.

element, "[t]he intent to injure can either be 'actual' or 'constructive.'" *Knibbs v. Momphard*, 30 F.4th 200, 227 (4th Cir. 2022) (quoting *Wilcox*, 730 S.E.2d at 231). "[C]onstructive intent to injure exists where the actor's conduct 'is so reckless or so manifestly indifferent to the consequences, where the safety of life or limb is involved, as to justify a finding of willfulness and wantonness equivalent in spirit to an actual intent.'" *Wilcox,* 730 S.E.2d at 231 (quoting *Foster v. Hyman,* 148 S.E. 36, 38 (1929)) (alteration adopted). However, "a showing of mere reckless indifference is insufficient" to show a constructive intent to injure. *Id.* at 232. Because "North Carolina law 'presumes that public officials will discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law,' … evidence of malice 'must be sufficient by virtue of its reasonableness, not by mere supposition.'" *R.A.*, 36 F.4th at 545 (quoting *Knibbs*, 30 F.4th at 227).[5]

Relevant to this case, knowingly placing students in harm's way "warrant[s] the inference" of malice. *See Betts v. Jones*, 181 S.E. 334, 335 (N.C. 1935).[6] In *Betts*, the North Carolina Supreme Court pierced the Peachland School Committee members' public official immunity when evidence showed that the members knowingly hired a bus driver in spite of his reputation as a "reckless driver, dissipated, wild and rattling boy, rough and drinking"; ignored the protests of school

---

[5] Neither side objected to the M&R's decision to focus on intent to injure rather than the first two elements of malice. (*See* Doc. Nos. 119, 120). For completeness, the Court finds that the other two elements are met. Defendants alleged conduct clearly shows wanton behavior because it recklessly endangered students. Moreover, Defendants do not dispute that they had a statutory duty to report Ms. Johnson's abusive treatment and allegedly chose not to do. *See* N.C. Gen. Stat. § 115C-288(g) and ISSD Policy 4040.

[6] Although decided in 1935, *Betts* has been cited with approval more recently by North Carolina courts in cases involving common law immunities. *See Doe by and through Connolly v. Holt*, 418 S.E.2d 511, 514 (N.C. 1992) (parent-child immunity); *Needham v. Price*, 780 S.E.2d 549,551 (N.C. 2015) (same); *Givens v. Sellars*, 159 S.E.2d 530, 535 (N.C. 1968) (citing *Betts* and a prior N.C. Supreme Court decision involving the same case to define both malice and the public official immunity standard).

patrons; and did nothing to intervene despite evidence that the driver "had a habit of frightening the children" by driving dangerously. *Id.* Similarly, North Carolina courts have allowed lawsuits against public officials to proceed beyond the motion to dismiss stage in cases where the official willfully concealed that his employee had previously assaulted a minor and then that employee later failed to act when he became aware that a teacher was sexually abusing a student. *See Smith v. Jackson Cnty Bd. of Educ.*, 608 S.E.2d 399, 411 (N.C. Ct. App. 2005).

In Defendants' prior appeal, the Fourth Circuit noted that "[n]owhere has R.A. asserted that the school officials had any actual intent to harm G.A." *R.A.*, 36 F.4th at 545. The Court of Appeals then examined whether R.A. had sufficiently alleged constructive intent to harm G.A. *See id.* The Magistrate Judge, reviewing the SAC, similarly examined whether the Plaintiffs had alleged constructive intent. *See* Doc. No. 118, at 11 (Discussing the standard for constructive intent and noting that R.A. has not alleged direct infliction of force or injury by the Defendants). Plaintiffs object that the Magistrate Judge incorrectly applied the relevant standards because they have now alleged an actual intent to injure. *See* Doc. No. 120, at 10.

This Court finds that R.A., in the SAC, has sufficiently alleged that the Defendants acted maliciously and actually or constructively intended to harm G.A. *See, e.g.*, Doc. No. 94, at ¶ 98.[7] ("These Individual Defendants knew their failure to intervene would cause G.A. further harm and intended Ms. R. Johnson's abusive treatment of G.A. to continue."). The SAC describes how Defendant school officials allegedly had knowledge of the abuse. The District Attorney prosecuting Ms. Johnson allegedly informed R.A. that an ISSD official witnessed Ms. Johnson

---

[7] The Court, over the Plaintiff's objections, will compare the first and second amended complaints. That is necessary to ensure that the SAC is not merely a regurgitation of the first amended complaint. *See Rodman v. Maryland Dept. of Human Resources*, No. 12-cv-3218-JKB, 2013 WL 2325139 (D. Md. May 24, 2013) ("The Court has closely compared the second amended complaint to the first amended complaint, and the documents are almost identical.").

abuse G.A. and reported it to Principal Cloer (while G.A. was in the first grade). Doc. No. 94, at ¶ 7 n.2. Principal Cloer in turn discussed Ms. Johnson's abusive behavior with higher-level district personnel, including Superintendent Johnson. *Id.* at ¶ 74. Ms. Lesane herself admitted, once the police investigation had begun, that there had been previous reports that Ms. Johnson abused her students. *Id.* at ¶ 10. Despite their knowledge of the specific harm to G.A. during first grade, Defendants again assigned G.A. to Ms. Johnson's classroom, this time for second grade. *Id.* at ¶ 12. Knowingly assigning a disabled student to a teacher who has previously abused him is (at a minimum) akin to knowingly subjecting children to an unsafe bus driver. *See Betts*, 181 S.E. at 335. Moreover, the choice to maintain a teacher with a history of abusing students and then to allegedly conceal her subsequent criminal convictions from the State Board of Education and parents alike both plausibly suggest that the choice to put G.A. in harm's way was deliberate and so Defendants' actions were not "at least one step removed from the incidents in question." *R.A*, 36 F.4th at 546. Therefore, the Court finds that R.A. has plausibly alleged that the malice exception to public official immunity applies.

### 2. <u>Corruption</u>

To pierce public official immunity with allegations of corruption, a plaintiff must establish that the public official "acted for his own benefit." *Pritchard v. Mobley*, 595 F. Supp. 3d 438, 452 (E.D.N.C. 2022). "An act is corrupt when it is done with 'a wrongful design to acquire some pecuniary profit or other advantage.'" *Green v. Howell*, 851 S.E.2d 673, 679 (N.C. Ct. App. 2020) (quoting *State v. Hair*, 442 S.E.2d 163, 165 (N.C. Ct. App. 1994)). "The simple fact that defendant is paid for his services is insufficient to show that he acted with malice or corruption." *Grad v. Kaasa*, 321 S.E.2d 888, 892 (N.C. 1984). However, a school board may act corruptly when it knowingly makes hiring decisions based on an improper purpose. *See Betts*, 181 S.E. at 335 ("They

knew, too, that they were practicing nepotism [by hiring the son of a member of the board], which goes to the bona fides of their action . . . Let a jury of the vicinage say how it is.").

In the SAC, R.A. alleges that the Defendants failed to intervene or investigate as part of a corrupt intent to cover up wrongdoing and prevent lawsuits against themselves and the school district. *See e.g.*, Doc. No. 94, at ¶ 80. R.A.'s factual allegations plausibly support such an assertion. R.A. contends that Defendants continued to employ Ms. Johnson to work with disabled students for eight months after her convictions, chose not to inform the State Board of Education of Ms. Johnson's convictions in order to prevent her from losing her license, and only removed Ms. Johnson from the classroom after they were "tipped off that charges were likely." *Id.* at ¶¶ 27, 123, 131. R.A. further alleges that Defendants were uncooperative with the law enforcement investigation. When an Iredell County Sheriff's detective sought to interview staff members, the detective was informed staff members could not be interviewed due to staffing shortages. *Id.* at ¶ 115. R.A. also alleges that Ms. Lesane "corruptly attempted to obfuscate the similarities of these previous reports [of abuse] to avoid liability and evidence the ISSD was on notice of Ms. R. Johnson's abusive treatment of her students." *Id.* at ¶ 113.

Failure to act in order to cover up wrongdoing can be a corrupt act. *See Doe*, 2022 WL 3335774, at *13 (evaluating whether allegations that Defendant failed to report a sexual assault to cover up his wrongdoing rose to the level of malice, corruption, and bad faith). The Defendant school officials' pattern of obfuscation and concealment plausibly extended beyond the abuse G.A. himself suffered. For example, Defendants allowed Ms. Johnson to return to teaching disabled students in a different school without informing the parents of her guilty plea or the crime for which she had pled guilty. *Id.* at ¶ 130. The Court therefore finds, at this time and without the

16

benefit of discovery, that Plaintiff has plausibly alleged that Defendants corruptly failed to protect G.A. in order to prevent lawsuits.

In summary, the SAC does not offer mere "conclusory allegation[s] that a public official acted willfully and wantonly" as Defendants contend, but instead offers specific facts to support that conclusion. *See Farrell v. Transylvania Cnty. Bd. of Educ.*, 625 S.E.2d 128, 134 (N.C. Ct. App. 2006). Accordingly, the Court finds that R.A. has plausibly alleged both the malice and corruption exceptions to public official immunity.

### C. Failure to State a Claim

Because the Magistrate Judge recommended this Court find that R.A.'s claims were barred by public official immunity, she did not have cause to examine whether R.A. sufficiently alleged the elements of negligence and negligent infliction of emotional distress. *See generally* Doc. No. 118. Further, Ms. Lesane, Ms. McClenahan, and Ms. Cloer have not argued in connection with the pending motions that their actions were not negligent, instead resting their arguments solely on public official immunity. *See generally* Doc. No. 111-1. Mr. Johnson contends that there are no factual allegations that he had any knowledge of Ms. Johnson's alleged abuse toward G.A. or any other students before G.A. left Ms. Johnson's class. Doc. No. 109-1, at 14. Thus, the Court will briefly address the sufficiency of the allegations in the complaint.

#### 1. Negligence

In North Carolina, negligence has three essential elements: "(1) a legal duty owed by the defendant to the plaintiff, (2) a breach of that legal duty, and (3) injury proximately caused by the breach." *Keith v. Health-Pro Home Care Services, Inc.*, 873 S.E.2d 567, 574 (N.C. 2022) (citing *Stein v. Asheville City Bd. of Educ.*, 626 S.E.2d 263, 267 (2006)). The plaintiff must also allege

"actual loss or damage." *Demarco v. Charlotte-Mecklenburg Hospital Authority*, 836 S.E.2d 322, 326 (N.C. Ct. App. 2019).

In the second amended complaint, R.A. alleges that Defendants had, and breached, an ordinary and reasonable duty of care to protect G.A. and other disabled students in their charge. (*See* Doc. No. 94, at ¶ 164). R.A. further alleges that the Defendants had a duty to report Ms. Johnson's abuse to law enforcement and the State Board of Education under N.C. Gen. Stat. § 115C-288(g), the North Carolina Administrative Code, and Board Policy 4040. *Id.* at ¶ 166. The complaint also states that the Defendants proximately caused the breach by their failure to supervise Ms. Johnson and take action when presented with evidence of her abuse. *Id.* at ¶¶ 168, 171. Those failures allegedly led to G.A.'s lost instructional time, emotional harm, ongoing medical issues, and damages in excess of over twenty-five thousand dollars. *Id.* ¶¶ 170-172.

Mr. Johnson's protest that there are no allegations that he was aware of the abuse G.A. allegedly suffered at the time G.A. was in Ms. Johnson's class is unpersuasive. Plaintiffs clearly and specifically allege that Mr. Johnson was aware of the abuse in the first grade and took no action in response. *See* Doc. No. 94, ¶¶ 7 n.2, 10, 74, 76. Therefore, in light of the earlier discussed specific allegations, such as Defendants' knowledge of the abuse, the statutory requirement to report abuse, and the choice to reassign G.A. to Ms. Johnson's classroom knowing that continued abuse was likely, the Court finds that R.A. has stated a plausible negligence claim.

### 2. <u>Negligent Infliction of Emotional Distress</u>

To sufficiently allege negligent infliction of emotional distress, "a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as 'mental anguish'), and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Doe v. Diocese of*

*Raleigh*, 776 S.E.2d 29, 40 (N.C. Ct. App. 2015) (citing *Johnson v. Ruark Obstetrics and Gynecology Assocs., P.A.,* 395 S.E.2d 85, 97 (N.C. 1990)).

In Count IV of the second amended complaint, R.A. incorporates the negligence allegations and alleges that it was reasonably foreseeable that such conduct, including the Defendants' failure to intervene on behalf of G.A., would cause G.A. severe emotional distress. *See* Doc. No. 94, at ¶ 175. Moreover, Plaintiffs allege that the conduct did cause G.A. severe emotional distress. They allege that Defendants' conduct led to distress such as G.A.'s aversion to school, a post-traumatic stress disorder diagnosis, increased maladaptive behaviors, engagement in more violent behavior, emotional instability, and hospitalization for acute short-term care. *Id.* at ¶ 180(a)-(f). At this stage of the proceedings,[8] the Court finds that R.A. has plausibly alleged that Defendant's conduct reasonably and foreseeably caused G.A. to suffer from severe emotional distress. It is plausible that repeated abuse would cause any child, let alone one with autism, to suffer from this type of emotional distress. Accordingly, the Court finds that Plaintiff has met its burden and plausibly alleged negligent infliction of emotional distress.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Plaintiffs' Objections to the M&R are **SUSTAINED**;
2. Brady Johnson's Objection to the M&R is **OVERRULED**;

---

[8] To be clear, by this ruling the Court expresses no view as to the ultimate merits of Plaintiffs claims. Defendants will have a full opportunity to answer the SAC and discovery, further proceedings and trial will reveal the extent to which Plaintiffs can prove their allegations of Defendants' wrongful conduct.

3. Brady Johnson's Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. No. 109) is **GRANTED** as it relates to Plaintiffs' claims for punitive damages and attorneys' fees, but is otherwise **DENIED**;

4. Defendants Alisha Cloer, Alvera Lesane, and Rhonda McClenahan's Motion to Dismiss Plaintiffs' Second Amended Complaint in Lieu of an Answer (Doc. No. 111) is **DENIED**; and

5. This case shall **proceed towards a trial on the merits on the remaining claims** in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED, ADJUDGED AND DECREED**.

Signed: December 5, 2023

Kenneth D. Bell
United States District Judge